## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**PATRICIA YOUNG,**             **:**      **No. 3:07cv854**
**WILLIAM YOUNG, and**        **:**
**PATRICIA YOUNG, on behalf**    **:**      **(Judge Munley)**
**of her minor daughter,**       **:**
              **Plaintiffs**     **:**
                               **:**
        **v.**                   **:**
                               **:**
**PLEASANT VALLEY SCHOOL**    **:**
**DISTRICT,**                       **:**
**PLEASANT VALLEY SCHOOL**    **:**
**BOARD,**                         **:**
**JOHN J. GRESS, Principal, in his**   **:**
**individual capacity,**          **:**
**DR. FRANK A. PULLO,**       **:**
**Superintendent, in his individual**   **:**
**capacity, and**                 **:**
**BRUCE H. SMITH, JR.,**       **:**
              **Defendants**    **:**

## MEMORANDUM

Before the court is defendants' motion to dismiss the instant complaint.

Having been fully briefed and argued, the matter is ripe for disposition.

### I. Background

This case arises from plaintiffs' conflicts with the defendant school district over

events in the United States history classroom of Defendant Bruce H. Smith at the

Pleasant Valley, Pennsylvania high school.  According to plaintiffs' complaint, their

daughter was a student in Defendant Smith's classroom.  During her time in that

classroom, Smith exposed their daughter and other sixteen and seventeen year olds

to "sexually explicit and offensive material" in violation of school district rules. (Amended Complaint (hereinafter "Amended Complt.") (Doc. 17) at ¶ 9).  Smith allegedly showed the students photographs of naked and dismembered women who had been murdered.  (Id. at ¶ 10).  He also asked female students about how they were dressed during a pillow fight, discussed with them push-up bras and averred that he had skipped classes in college to "'bang the cheerleader.'" (Id.).  Students were also exposed by Smith to an unpublished, autobiographical tract entitled "Memoirs of a Class President."  (Id. at ¶ 11).  This document included a great deal of sexually explicit material, including graphic depictions of sexual encounters related in first-person by the author.  (Id.).  Plaintiffs complained about this material to Defendants Gress and Pullo, the principal and superintendent of the school district.  (Id. at ¶ 11-12).  They allege that raising concerns about the presence of this "graphic, disturbing" material in a classroom populated by minors addressed "a matter of social, educational and safety concerns" in the Pleasant Valley school community.  (Id. at ¶ 12).

On May 9, 2005, plaintiffs filed a complaint in this court alleging violations of their First Amendment rights in the school district's reaction to their complaints.  (See Doc. 1).  Plaintiffs filed this complaint anonymously.  Defendants responded with a motion to dismiss that complaint, because plaintiffs had not provided their real names and had not sought the court's permission to file the complaint anonymously. (See Doc. 5).  Plaintiff then filed a motion for permission to proceed anonymously

2

due to safety concerns for the plaintiffs (See Doc. 9).  In addition to responding to that motion, defendants filed a motion to stay discovery pending the outcome of our decision on those motions.  (See Docs. 11-12).  On August 1, 2007, the court issued a memorandum and order denying plaintiff's motion to proceed anonymously and the defendants' motion to stay discovery.  (See Doc. 16).  We also ordered the plaintiff to file an amended complaint that provided the plaintiffs' real names.

The amended complaint, filed August 10, 2007, raises four causes of action. Count I alleges that all of the defendants except Defendant Smith retaliated against the plaintiffs for engaging in protected speech by publicly disclosing the plaintiffs' identities and directing Defendant Smith to contact plaintiffs at home, despite knowledge of plaintiffs' desire for privacy in the matter.  (Complt. at ¶ 13).  Count II raises a failure to train claim against all of the defendants except Defendant Smith. That count alleges that the school district failed to train employees not to retaliate against citizens who petition the government for redress.  (Id. at ¶ 16).  The count also contends that the defendants were "deliberately indifferent to plaintiffs' rights and intentionally failed to train its employees adequately."  (Id. at ¶ 17).  Count III alleges that Defendant Smith created a hostile environment in his classroom by presenting graphic sexual materials and the sexually-charged personal memoir.  (Id. at ¶ 20).  Defendant Smith allegedly taught his courses with the classroom lights turned off, had three of the four classroom walls painted black, and lit the room only with Christmas lights.  (Id. at ¶ 21).  He also "had a Swastika in his classroom" and

3

showed students home videos of his high school "keg parties." (Id. at ¶¶ 22-23).

Plaintiffs allege that defendants retaliated against their daughter when they reported

this environment to administrators. (Id. at ¶¶ 24-26). The defendants "singl[ed] out"

the minor plaintiff, leading other students to "ostracize" her. (Id. at ¶ 27). Some

students threatened the minor plaintiff for her complaints, and Defendant Gress

encouraged such activity. (Id. at ¶¶ 29-30). Count IV is a negligent supervision

complaint against the Pleasant Valley defendants, alleging that the district failed to

follow its own policy in supervising Defendant Smith. (Id. at ¶¶ 32-33).

On August 20, 2007 defendants filed the instant motion to dismiss the

amended complaint. (See Doc. 18). Both sides briefed the issue. We then held

oral argument on the matter, bringing the case to its present posture.

## II.  Jurisdiction

As this case is brought pursuant to 42 U.S.C. § 1983, we have jurisdiction

pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States.").

We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28

U.S.C. § 1367.

## III.  Legal Standard

When analyzing a 12(b)(6) motion to dismiss, all well-pleaded allegations of

the complainant must be viewed as true and in the light most favorable to the non-

movant to determine whether "under any reasonable reading of the pleadings, the

4

plaintiff may be entitled to relief." <u>Colburn v. Upper Darby Township</u>, 838 F.2d 663, 665-666 (3d Cir. 1988) (citing <u>Estate of Bailey by Oare v. County of York</u>, 768 F.3d 503, 506 (3d Cir. 1985), (quoting <u>Helstoski v. Goldstein</u>, 552 F.2d 564, 565 (3d Cir. 1977) (per curiam)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994)(citations omitted).  The court need not accept legal conclusions or unwarranted factual inferences.  <u>See</u> <u>Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.</u>, 450 F.3d 130, 133 (3d Cir. 2006) (citing <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)).  The complaint is properly dismissed "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Haines v. Kerner</u>, 404 U.S. 519, 520-521 (1972)(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

## IV. Discussion

Defendants raise several grounds for granting their motion to dismiss.  We will address each in turn.

### a.  Free Speech and Petition Rights

Defendants contend that plaintiffs cannot state a claim for violation of their free speech and petition rights.  They argue that plaintiffs' claims that their privacy was violated are unavailing because the interest plaintiffs claim was invaded by defendants' behavior is not a protected one.  Defendants contend that they neither

compelled plaintiffs to reveal any protected personal matters nor coerced plaintiffs

into making any decision affecting their personal lives.  Accordingly, no claim could

lie for invading plaintiffs' privacy right.  Defendants also claim that plaintiffs have not

stated a retaliation claim because they have not claimed they engaged in any

constitutionally protected activity or that the district engaged in activity that could be

considered retaliatory.  Plaintiffs came forward voluntarily with their concerns about

Defendant Smith's teaching methods and thus cannot complain that the school

district did not protect their privacy as retaliation.  Similarly, defendants argue, the

school district's failure to protect the minor plaintiff from mistreatment by her

classmates does not constitute a constitutional violation.  Moreover, plaintiffs' true

complaint is with the curriculum provided by the school district, and such complaints

are not within the province of the federal courts.

We do not read plaintiffs' complaint to allege that defendants' actions

somehow violated their First Amendment privacy rights by revealing their names.[1]

---

[1]If we did we would adopt defendants' position that plaintiffs have not alleged that defendants violated any privacy right guaranteed plaintiffs under the United States Constitution.  Plaintiffs complain that defendants revealed their names as the source of the complaint against Defendant Smith's teaching methods.  We do not find, as a matter of law, that revealing the names of the plaintiffs as complainants against defendant Smith implicates the sort of privacy interest protected by the Constitution, that is one impinging "a realm of personal liberty which the government may not enter." Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997) (quoting Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 847 (1992)).  Plaintiffs' names and identities as complainants do not "involve 'the most intimate and personal choices' a person can make in his or her lifetime." Id. (quoting Casey, 505 U.S. at 851).  We also would find that this disclosure of plaintiffs' names would not interfere with plaintiffs' constitutional right to be free from interference with family relations, since there is no allegation that the disclosure disrupted the choices that plaintiffs could make in raising their children.  See Paul P. V.

6

Plaintiffs disclaim any such intention.  Instead, they argue that this claim amounts to a retaliation claim against the district for taking inappropriate action in response to plaintiffs' complaints about a matter of public concern.  We read this claim to be a First Amendment retaliation claim, and will apply standards related to such actions to disposing of the motion.

A plaintiff seeking to recover on a First Amendment retaliation claim "must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory actions."  Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

Defendants contend that the plaintiffs did not engage in speech that would entitle them to First Amendment protection.  They cite to Pennsylvania cases like Aubrey v. School District of Pennsylvania, where parents raised various causes of action in tort and under the Pennsylvania Constitution when their daughter was not permitted to graduate with her high school after she refused to participate in a health education course that included information on sex.  Aubrey v. Sch. Dist. of Philadelphia, 437 A.2d 1306, 1306-1307 (Pa. Commw. Ct. 1981).  Citing to cases that affirmed the responsibility of school administrative agencies to control curricula and practices within the schools, the court concluded that "[t]he courtroom is not the

---

Verniero, 170 F.3d 396, 405 (3d Cir. 1998) (finding that a notification law related to child predators "did not restrict [the person subject to the law's] freedom of action with respect to their families and therefore does not intrude upon any aspect of the right of privacy.").

proper forum for resolution of personal conflicts arising from the State Board of Education's 1969 decision to include sex education in the public school curriculum, the district's program to comply with that decision, nor the pupil's failing grade on a test of that subject matter." Id. at 1308.  Those cases certainly do establish that "'a court is not a super Board of directors with superior knowledge of the administration of business, finance, or the science of pedagogics.  It would be presumptuous to superimpose judicial control upon the exercise of discretion by trained educators." Regan v. Stoddard, 65 A.2d 240, 242 (Pa. 1949) (internal quotations omitted).

If the plaintiffs had brought a cause of action seeking damages in tort from defendants' choice of curricula or exercise of school policies, we could therefore find that they are entitled to no relief under Pennsylvania law.  The question here, however, is not whether plaintiffs can bring an action in tort but whether they have properly stated a retaliation claim under the First Amendment to the United States Constitution.  We presume defendants' argument to be that because plaintiffs could not prevail on a state-law tort claim they cannot argue that they engaged in any protected activity.  The cases cited by the plaintiff do not address any issues under the First Amendment, and are inapposite to this question.  Instead, to determine whether plaintiffs–in particularly the two parents named as plaintiffs–engaged in constitutionally protected conduct we simply ask whether plaintiffs engaged in protected activity, here speech.  The Third Circuit Court of Appeals has held that "except for certain narrow categories deemed unworthy of full First Amendment

protection–such as obscenity, 'fighting words' and libel–all speech is protected by the First Amendment." Eichenlaub v. Twp. of Indian, 385 F.3d 274, 283 (3d Cir. 2004) (citing R.A.V. v. St. Paul, 505 U.S. 377, 382-90 (1982)).  Such "protection includes private expression not related to matters of public concern." Id.  Thus, "'speech unrelated to a matter of public concern is not, like obscenity, entirely outside the protection of the First Amendment.  While the government as employer may discharge a public employee for such speech, the government as sovereign may not sanction the same individual when she engages in speech as a citizen, outside the employment context.'" Id. at 284 (quoting Azzaro v. County of Allegheny, 110 F.3d 968, 976 n.3 (3d Cir. 1997)).  In complaining to the school district about the content of Defendant Bruce's instruction, then, the plaintiffs engaged in a protected activity.

The defendants responded to this protected activity by publically disclosing the plaintiffs' names, an action to which plaintiffs had clearly objected when making their complaint.  Plaintiffs allege that they feared such exposure because of the response of others in the community, and because they feared fellow students would retaliate against their daughter.  Plaintiffs allege that the exposure has resulted in threats and intimidation from some angered by their lawsuit.  The Third Circuit has declared in the context of workplace retaliation that "the key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from

exercising his First Amendment rights.'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir.

2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  The sort of

conduct that would count as retaliatory "'need not be great in order to be actionable,'

but it must be more than de minimis."  Id. (quoting Suppan, 203 F.3d at 235).  Here,

the defendants' alleged retaliatory conduct was more than de minimis: they allegedly

exposed plaintiffs' identities despite requests to respect their anonymity, and this

conduct caused plaintiffs to suffer public scorn and perhaps threats.  Such conduct

could surely cause the plaintiffs to refrain from exercising their First Amendment

speech rights in the future.  Plaintiffs have also alleged that the retaliatory

action–exposing plaintiffs' identities–was related to their exercise of their rights.  The

defendants allegedly exposed plaintiffs' identities in response to their speech.  We

will therefore deny the motion to dismiss on plaintiff's First Amendment retaliation

claim.

### b.  Failure to Train

Defendants argue that plaintiffs cannot maintain their failure-to-train claim

against the school district and school board.  They contend that plaintiff has not

alleged that the defendants' policies were the cause of any unconstitutional conduct

and thus cannot give rise to liability for the defendants.  Defendants also argue that

plaintiffs have not pointed to any specific failures in training that led to constitutional

violations, and that they have thus failed to state a claim on the matter.

 As a general matter, torts committed by employees do not make a

municipality liable under Section 1983 and "a local governing body can be held liable only for an official policy or custom." <u>San Filippo v. Bongiovanni</u>, 30 F. 3d 424, 445 (3d Cir. 1994).  Under the standard first articulated in <u>Monell v. Dept. of Soc. Servs.</u>, "local governing bodies . . . can be sued directly under §1983 . . . where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. Dept. of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978). Thus, "[a] public entity . . . may be held liable for the violation of a constitutional right under 42 U.S.C. § 1983 only when the alleged unconstitutional action executes or implements policy or a decision officially adopted or promulgated by those whose acts may fairly be said to represent official policy." <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 144 (3d Cir. 1997).  Liability exists when "'there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" <u>Brown v. Muhlenberg Twp.</u>, 269 F.3d 205, 214 (3d Cir. 2001) (quoting <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989)).

Here, plaintiffs claim that the defendants failed properly to train employees to avoid violating students' rights.  The Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." <u>City of Canton v. Harris</u>, 489 U.S. 378, 389, (1989).  Further, "[w]hen a plaintiff alleges

11

that a municipality has not directly inflicted an injury, but has caused an employee to do so, stringent standards of culpability and causation must be applied to ensure that the municipality in a § 1983 suit is not held liable solely for the conduct of its employee." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).  These strict standards exist because "in enacting § 1983, Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Bd. of the County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 399 (1997).

Plaintiffs' complaint, as we have found *supra*, states a claim that defendants' conduct violated their constitutional rights.  They also allege that defendants failed to engage in training that would have prevented such violations, and that these failures, were the result of defendants' deliberate indifference.  (See Amended Complt at ¶¶ 16-17).  While these complaints are cursory, and we are sympathetic to defendants' argument that plaintiffs' have offered a tautological argument that contends that since plaintiffs' rights were violated defendants must have failed in training their employees not to cause such injury, we find that under the generous standards required to survive a motion to dismiss the plaintiffs have stated a claim.  We will therefore deny the defendants' motion on this point as it relates to the School District.

### c.  Title IX Hostile Environment and Retaliation

Defendants argue that plaintiff cannot raise claims against the individual defendants for creating a hostile environment and retaliation pursuant to Title IX of the Education Amendments of 1972 (Title IX), 20 U.S.C. § 1681, *et seq*.  Such liability, they insist, is not available under the statute.  We agree.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Federal courts have found that Title IX is aimed at preventing institutional discrimination on the basis of sex, not on regulating individual behavior.  As a result, persons acting in their individual capacities cannot be liable for discrimination under Title IX.  See, e.g., Nelson v. Temple University, 920 F. Supp. 633, 635 (E.D Pa. 1996) (concluding that "[a] majority of the few cases explicitly addressing the issue have concluded that Title IX does not authorize a cause of action against individuals.");  Bougher v. University of Pittsburgh, 713 F. Supp. 139, 143 (W.D. Pa. 1989) (finding that because individual defendants did not receive funds under Title IX, "no Title IX claim can be stated against them.");  Lipsett v. University of Puerto Rico, 864 F.2d 881, 901 (1st Cir. 1988) (finding that officials of a university were liable, "if at all, under section 1983, rather than under Title IX).  We will therefore grant defendants' motion as it relates to claims against the individual defendants under Title IX.  Since this is the only count raised by the plaintiffs against Defendant

Smith, our decision effectively removes him from potential liability in this case.[2]

In addition, the defendants claim that plaintiffs lack standing to bring a Title IX claim in their own names.  We agree here as well.  Courts have concluded that parents in most cases cannot bring a claim for sexual harassment in their own names.  See, e.g., Haines v. Metropolitan Gov't of Davidson County, 32 F. Supp. 2d 991, 1000 (M.D. Tenn. 1998) (finding that "typically, a parent may not bring a claim under Title IX."); Rowinsky v. Bryan Indp. Sch. Dist., 80 F.3d 1006, 1010 n.4 (5th Cir. 1996) (finding that a parent lacked standing "to assert a personal claim under Title IX.").  Here, the plaintiffs are not students who were exposed to the alleged harassment and they are not the direct beneficiaries of programs covered by Title IX.  To the extent that plaintiffs attempt to bring any claims on their behalf under Title IX, therefore, we will dismiss those claims.  We will not dismiss, however, the claims plaintiffs bring on behalf of their minor daughter.  Courts have concluded that parents can bring claims for minor children under Title IX, and plaintiffs do so here.  See, e.g., Rowinsky, 80 F.3d at 1010 n. 4 (holding that plaintiff "has standing, as next friend, to assert the claims of her daughters.").

Defendants also contend that plaintiffs' Title IX claims based on Smith's alleged sexual harassment of his students should be dismissed.  They insist that under that statute school administrators are liable for a teacher's misconduct only

---

[2]In their brief and at oral argument, plaintiffs averred that they intend to file an amended complaint to raise a cause of action under Pennsylvania law against Defendant Smith.  Our decision will allow them to do so.

14

when they have actual notice of and were deliberately indifferent to the conduct. Defendants point out that they were unaware of any misconduct before plaintiffs reported it, and therefore cannot be liable for any harassment that occurred prior to that reporting.  They also contend that plaintiffs' allegations do not constitute harassment so severe and persuasive that they could recover against the defendants.  In addition, since both boys and girls populated the minor plaintiff's class, defendants allege that she could not have been the victim of any harassment aimed specifically at females.

Under Title IX, a school district can be liable for money damages to a private plaintiff who suffers sexual harassment.  See Gebser v. Lago Vista Ind. Sch. Dist., 524 U.S. 274, 283-284 (1998).  The Supreme Court has concluded, however, that such liability is not unlimited, and thus "in cases . . . that do not involve official policy of the recipient entity . . .  a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."  Id. at 290.  Liability for a school district therefore occurs only when an "appropriate person" has "actual knowledge" of the prohibited activity.  Bostic v. Smyrna School Dist., 418 F.3d 355, 361 (3d Cir. 2005).  In most cases, "a school principal who is entrusted with the responsibility and authority normally associated with that position will ordinarily be 'an appropriate person' under Title IX."  Warren v. Reading Sch. Dist.,

15

278 F.3d 163, 171 (3d Cir. 2002); see also Chancellor v. Pottsgrove Sch. Dist., 501

F. Supp. 2d 695, 704 (E.D. Pa. 2007) (holding that "a school district may be liable for

a teacher's sexual relationship with a student if (1) the school district received

federal financial assistance, (2) the student was subjected to discrimination on the

basis of sex, and (3) an 'appropriate person' (4) had actual notice of, and was

deliberately indifferent to, the discrimination.").  Even when an appropriate person

has actual knowledge of discrimination, the school district escapes liability unless its

"response . . . amount[s] to deliberate indifference to discrimination." Id.  The Court

found this standard to amount to "an official decision by the recipient not to remedy

the violation." Id.

Defendants argue that this standard requires that liability can only exist if "the

Defendants were aware of any sexual harassment **at the time it was occurring**,"

and that no liability can exist for any sexual harassment that occurred before

plaintiffs reported it.  (Defendants' Brief in Support of Motion to Dismiss (Doc. 19)

(hereinafter "Defendants' Brief") at 13) (emphasis in original).  We reject this

argument, as liability for harassment under Title IX is premised on the response of

school officials to reports of harassment.  In Gebser, for example, the Supreme

Court found that a school district could not be liable for the sexual harassment of an

English teacher who had an ongoing sexual relationship with one of his students.

Though the officials had received complaints about inappropriate conduct by the

teacher, they had not been told of any sexual relationships with students, and

16

therefore could not be liable for deliberate indifference to the harassing relationship between the student and teacher.  Presumably, the school district would have been liable for the harassment if they had knowledge of the teacher's activities and did nothing to alter the situation.  The plaintiffs' allegations here represent exactly that scenario: when told of Smith's alleged harassment, the school district did not attempt to rectify the situation.  Such facts, if proved, would allow plaintiffs to recover for the harassment.  Put more simply, defendants were aware of the harassment when plaintiffs told them about it.  If they did nothing to rectify the situation, and they would be liable under the standards articulated in <u>Gebser</u>.  We will deny the motion to dismiss on these grounds.

Defendants also argue that the harassment alleged by plaintiffs was not so severe, pervasive and objectively offensive as to subject defendants to liability.  Here, the alleged harassment constituted inappropriate sexual banter between the teacher and girls in the class, as well as exposure to inappropriate pictures of naked or nearly naked women and to an unpublished memoir that purported to describe Smith's earliest sexual experiences.  We take this claim for sexual harassment to be one alleging "hostile environment," since plaintiffs do not claim that their minor child was the object of unwelcome sexual advances from Defendant Smith.  Unwelcome advances are the type of behavior that constitutes direct sexual harassment.  <u>See</u> <u>Chancellor</u>, 504 F. Supp. 2d at 708 (finding that "[u]nwelcome sexual conduct constitutes a sexually hostile educational environment, a form of sexual harassment.

17

And sexual harassment constitutes discrimination on the basis of sex."). Courts have found that a student can bring a "hostile environment" sexual harassment claim under Title IX. See Saxe v. State College Area Sch. Dist., 240 F.3d 200, 205 (3d Cir. 2001) (finding that "the Supreme Court has recognized that a public school student may bring suit against a school under Title IX for so-called 'hostile environment' harassment."). The parties agree that a Title IX hostile environment claim requires an allegation that the plaintiff suffered harassment "so severe, pervasive and objectively offensive and that so undermines and detracts from the student's educational experience, that the student is effectively denied equal access to the school's educational opportunities or benefits." (Defendants' Brief at 14); see Davis, 526 U.S. at 650 (holding that "in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect.").

We find that plaintiff has stated here a claim for hostile environment sexual harassment. She contends that Smith's classroom was filed with inappropriate and offensive material, that Smith singled out girls in the classroom for inappropriate sexual banter, and that this conduct led to an environment that left plaintiffs' minor daughter felt singled out and barred from access to the education that Smith provided. While ultimately a jury might conclude that plaintiffs have not provided sufficient evidence to indicate the existence of an environment that was severely and

pervasively offensive, we find that at this stage of the litigation dismissal of the claim would be inappropriate.

Defendants also argue that this material cannot be seen as salacious or as the product of gender discrimination because only the plaintiffs objected and because boys in the class were exposed to the same material.  Since the material was aimed at both boys and girls, defendants contend, the material cannot constitute discrimination on the basis of gender and no harassment claim can lie.  We reject this argument; there are allegations that Defendant Smith singled out girls for offensive conduct.  In any case, defendants offer no legal authority for the position that conduct viewed by students of both genders must be aimed specifically at one gender to create a hostile environment claim.  Nor do defendants offer authority for the proposition that action for harassment lies only where complaints about behavior come from numerous sources.   Without authority to direct us otherwise, we reject those arguments.  The nature of harassment based on gender means that harassment often occurs when people are forced to participate in activities or programs that demean one sex while elevating another.  Indeed, the discomfort on account of gender that constitutes such harassment probably occurs most often in mixed settings, where one gender feels constrained from protesting because of the presence of the other.  Similarly, the fact that people feel unable to protest can often be evidence of the powerlessness that accompanies harassment.  Thus, the fact that few allegedly protested could as easily support a claim of harassment as undermine

one.  We will therefore deny the motion to dismiss as it relates to liability for the district under Title IX.

### d. Negligent Supervision

Defendants argue that they are immune from any claims for negligent supervision under Section 8542 of Pennsylvania's Political Subdivision Tort Claims Act ("PTSCA"), 42 Pa. C.S. § 8542.  That act waives sovereign immunity for certain negligent acts of an agency or its employees.  The acts listed in the provision include those related to: vehicle liability; care, custody or control of personal property; real property, including traffic signs, streets and sidewalks; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; and the care, custody or control of animals.  42 Pa. C.S. §§ (b)(1-8).   Defendants contend, therefore, that the waiver of sovereign immunity under the PTSCA is limited to specific areas, and negligent supervision is not one of them.

Pennsylvania courts have emphasized that the exceptions to governmental immunity contained in the PTSCA are aimed largely at negligence in maintaining property, and do not apply to allegations such as "negligence in training employees, negligence in [assigning special-needs children to particular schools], and negligence in supervising [a student] at school."  Houston v. Central Bucks School Authority, 546 A.2d 1286, 1290 (Pa. Cmmwlth. Ct. 1988).  Since the allegation here is that the district negligently supervised Defendant Smith in his teaching, the immunity provided the district by the PTSCA is not waived, and plaintiffs may not

20

bring this claim.  We will grant the motion to dismiss on this point.

### e.  Individual Defendants Should be Dismissed

Defendants contend that all of the individual defendants are entitled to qualified immunity and should be dismissed from the case.  They argue that plaintiffs have plead no facts that indicate that the individual defendants acted unreasonably to violate plaintiffs' rights, and they are therefore entitled to qualified immunity in the matter.  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Determining whether qualified immunity applies is a two-step process: "First, the court must determine whether the facts alleged show that the defendant's conduct violated a constitutional or statutory right."  Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006).   If a court finds that a defendant violated a constitutional or statutory right, then "the court must determine whether the constitutional or statutory right allegedly violated by the defendant was 'clearly established.'"  Id.; see also Doe v. County of Centre, 242 F.3d 437, 454 (3d Cir. 2001) (defining test as "(1) whether the plaintiffs alleged a violation of their statutory or constitutional rights; (2) whether the right alleged to have been violated was clearly established in the existing law at the time of the violation; and (3) whether a reasonable official should have known that the alleged action violated the plaintiff's rights.").  A right is clearly established when its

21

meaning is "sufficiently clear that a reasonable official would understand what he is doing violates that right."  Saucier v. Katz, 533 U.S. 194, 202 (2001).

We find that plaintiff has sufficiently alleged that defendants were aware of their responsibility not to retaliate against plaintiffs for engaging in protected conduct, and will deny the motion on these grounds without prejudice to defendant raising the issue after discovery, if appropriate.

### f.  Pleasant Valley School Board

Defendants also argue that the Pleasant Valley School Board should be dismissed.  First, they contend that the School Board cannot be sued in its own right; the proper party in this type of action is the School District, not the school board. Second, defendants argue that the complaint does not point to any actions by the School Board which would expose it to liability.  No allegations exist, defendants point out, that the School Board participated in any of the decisions or acts of which the plaintiffs complain.  In any case, they argue, School Board officials are entitled to absolute immunity for actions taken in their official capacities.

We note that plaintiffs have not sued any members of the School Board, either in their individual or official capacities.  Rather, plaintiffs have sued two school administrators in their individual capacities, but have not indicated that they are school board members in any capacity.  Immunity for individual school board members, therefore, is not at issue in this case.  The question remaining on this issue, therefore, is whether the School Board is a proper party.  The authority

defendants cite for the proposition that only a school district can be sued, the Pennsylvania School Code of 1949, states only that "each school district shall have the right to sue and be sued in its corporate name."  24 P.S. § 2-213.  Defendants offer no other authority for this proposition.  At least one federal court in Pennsylvania has found, however, that a suit against both a school district and a school board is improper, since state law allows suits against school districts as political subdivisions, but not school boards.  See Glickstein v. Neshaminy Sch. Dist., No. Civ. A. 96-6236, 1997 WL 660636 (E.D. Pa. October 22, 1997) (holding that a school board could not be sued in its own name, because Pennsylvania Rules of Civil Procedure 2102(b) and 76 do "not include a board of school directors among the political subdivisions that may be sued.").  We will adopt this view because there are no individual claims against the School Board and plaintiffs' rights can therefore be adjudicated through a lawsuit against the District.  Accordingly, we will grant defendants' motion on this point.

### g.  Punitive Damages

Finally, defendants dispute plaintiffs' claims to punitive damages.  They argue that school districts are municipal entities and punitive damages therefore cannot be recovered from them.  Plaintiffs concede this point, and we will grant the motion to dismiss as it pertains to punitive damages against the municipal defendants.  As for the individual defendants, defendants assert that, while plaintiffs could raise a claim for punitive damages against those defendants in their individual capacities, none of

the allegations indicate that their behavior was either reckless or in callous disregard of plaintiffs' known rights, entitling them to damages on the First Amendment Claim. To obtain punitive damages on a Section 1983 claim, "defendant's conduct [must be] shown to be motivated by evil motive or intent, or . . . [involve] reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  According to the Third Circuit Court of Appeals, punitive damages require that "the defendant's conduct must be, at a minimum, reckless or callous.  Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 885 F.2d 1194, 1204 (3d Cir. 1989).  Here, if a jury were to believe plaintiffs' allegations that the individual defendants deliberately retaliated against them for exercising their free speech rights, and thereby exposed them to harsh disapprobation, that jury could find against the individual defendants on this claim. While the facts may prove out defendants' denials, plaintiffs have stated a claim against the individual defendants.  We will deny the motion to dismiss on this point as well.

**V.  Conclusion**

For the foregoing reasons, we will grant the defendants' motion to dismiss in part and deny it in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA YOUNG,** | : | **No. 3:07cv854** |
| **WILLIAM YOUNG, and** | : | |
| **PATRICIA YOUNG, on behalf** | : | **(Judge Munley)** |
| **of her minor daughter,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **PLEASANT VALLEY SCHOOL** | : | |
| **DISTRICT,** | : | |
| **PLEASANT VALLEY SCHOOL** | : | |
| **BOARD,** | : | |
| **JOHN J. GRESS, Principal, in his** | : | |
| **individual capacity,** | : | |
| **DR. FRANK A. PULLO,** | : | |
| **Superintendent, in his individual** | : | |
| **capacity, and** | : | |
| **BRUCE H. SMITH, JR.,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 13th day of February 2008, the defendants' motion to

dismiss the amended complaint (Doc. 18) is hereby **GRANTED** in part and **DENIED**

in part, as follows:

1) The motion to dismiss plaintiffs' First Amendment retaliation complaint is

hereby **DENIED**;

2) The motion to dismiss plaintiffs' failure-to-train complaint pursuant to 42

U.S.C. § 1983 is **DENIED**;

25

3) The motion to dismiss plaintiffs' Title IX claim is **GRANTED** with prejudice with respect to Defendants Smith, Pullo and Gress and **DENIED** with respect to all other defendants.  Defendant Smith is therefore dismissed from the case.  The motion is **GRANTED** with respect to Plaintiffs William and Patricia Young, and all Title IX claims brought in their names are dismissed. To the extent that the Title IX claim is brought on behalf of their minor daughter and directed at the School District, the motion is **DENIED**;

4) The motion to dismiss plaintiffs' negligent supervision claim is **GRANTED** with prejudice;

5) The motion to dismiss all claims against Defendant Pleasant Valley School Board is **GRANTED**, and the School Board is dismissed from the case;

6) The motion to dismiss plaintiffs' punitive damages claim is **GRANTED** with respect to Defendant Pleasant Valley School District and **DENIED** with respect to Defendants Gress and Pullo; and

7) Plaintiff is directed to file a second amended complaint within ten (10) days, eliminating therein all the claims dismissed by this order and including any other amendments that are appropriate pursuant to this memorandum.

**BY THE COURT:**

**s/ James M. Munley**
**JAMES M. MUNLEY**
**UNITED STATES DISTRICT JUDGE**