**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEAGAN YOUNG, | : | No. 3:07-cv-00854 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BRUCE H. SMITH, JR., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**June 28, 2016**

## I.    BACKGROUND[1]

Among this Court's highest priorities is the equitable administration

of justice. To that end, my preference will always be to minimize

interference with zealous advocacy, to avoid placing a thumb on the scale

in either party's favor, and to otherwise make my involvement in a trial as

unmemorable as possible. For many of the reasons that follow, this case

has required exacting judicial oversight to ensure that both parties are

---

[1]    A comprehensive discussion of the facts of this case may be found in the
Court's prior summary judgment memorandum at ECF No. 484.

afforded the fair trial that the Constitution of the United States guarantees them.

Specifically, that this case has seen significant pretrial motions practice is quite understandable, as the verdict from the matter's first trial was vacated by the Honorable Yvette Kane of this Court in response to Defendant's motion for a new trial. That was the case despite the well-established precedent that "[a] trial judge should only rarely and reluctantly disturb a jury's finding."[2] Of course, the grant of a Rule 59 motion for a new trial is an exceptional measure, reserved only for the instance of an outlandish verdict untethered from the facts and law. Thus, "[a] court considering a Rule 59 motion for a new trial must bear in mind [ ] that the court should only grant such a motion when the jury's verdict is 'egregious.'"[3] Nevertheless, Judge Kane's determination was later affirmed by the United States Court of Appeals for the Third Circuit.[4]

---

[2] Rhoades, Inc. v. United Air Lines, Inc., 224 F. Supp. 341, 346 (W.D. Pa. 1963), aff'd, 340 F.2d 481 (3d Cir. 1965).

[3] DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998).

[4] Young v. Pleasant Valley Sch. Dist., 601 F. App'x 132, 135 (3d Cir. 2015) ("Judge Kane cataloged an extensive record of misconduct by the Youngs'

Judge Kane based her decision in part on what she termed counsel for Plaintiff's "improper conduct."[5]  Such misconduct included disrupting "the course of trial by persistently asking questions that had been ruled improper for the purpose of characterizing, or mischaracterizing, evidence."[6] Judge Kane explained that Plaintiff "employed this tactic" with several witnesses.[7] Judge Kane summarized:

> That Plaintiff's counsel's conduct was improper is obvious. Throughout the course of trial counsel alternatively asked about evidence that had been ruled inadmissible, asked for lay opinion testimony, and asked for testimony without foundation. The purpose of this tactic was apparently to inflame the jurors by repeating outrageous conduct that is alleged to have occurred as fact enough times so the jurors would believe it did occur—even if no evidence was introduced that would support such a finding.[8]

Understandably, in reaction to this conduct, counsel for Defendant, in a once-bitten, twice shy fashion, has filed ten motions in limine to

---

counsel throughout the First Trial, finding that the counsel attempted to inflame the jury by repeatedly asking improper questions and characterizing the evidence. . . . We conclude, therefore, that the District Court did not abuse its discretion by granting a new trial on this basis.").

[5]   ECF No. 333 at 54.

[6]   Id.

[7]   Id. at 57.

[8]   Id. at 58.

- 3 -

properly define the bounds of the upcoming trial. Those motions give the Court the opportunity to clarify the scope of the only remaining triable issue and to remind counsel and the parties that improper conduct will not be tolerated. The sole remaining claim, creation of a hostile educational environment based upon sex, is an exceedingly narrow one. That recognition has guided my disposition of the pending motions and shall direct counsel's presentation of evidence at trial. To the extent that any attempts to contravene the Court's pretrial rulings are made, the Court will not hesitate to remove the jury and sanction the offending counsel or party immediately for realized or attempted misconduct.

The pending motions <u>in limine</u>, the punitive damages issue, and the adverse inference instruction request are disposed of in accordance with the following discussion.

## II.    LAW

"A motion <u>in limine</u> is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving

party that a timely motion to strike or an instruction by the court to the

jury to disregard the offending matter cannot overcome its prejudicial

influence on the jurors' minds."[9] "The standard of review for the

admission or exclusion of evidence is generally abuse of discretion. If a

party fails to preserve an evidentiary ruling, this Court reviews for plain

error."[10]

"In a trial by jury in a federal court, the judge is not a mere

moderator, but is the governor of the trial for the purpose of assuring its

proper conduct and of determining questions of law."[11] Accordingly, "[a]n

abuse of discretion occurs only where the district court's decision is

'arbitrary, fanciful, or clearly unreasonable'—in short, where 'no

reasonable person would adopt the district court's view.'"[12] The United

States Court of Appeals for the Third Circuit "will not remand or reverse if

---

[9]   O'Rear v. Fruehauf Corp., 554 F.2d 1304, 1306 (5th Cir. 1977).

[10]   Tourtellotte v. Eli Lilly & Co., No. 15-1090, 2016 WL 146455, at *16 (3d Cir. Jan. 13, 2016).

[11]   Quercia v. United States, 289 U.S. 466, 469 (1933) (Hughes, C.J.).

[12]   Green, 617 F.3d at 239 (quoting United States v. Starnes, 583 F.3d 196, 214 (3d Cir.2009)).

the admission or exclusion of evidence constituted harmless error."[13] "An error is harmless only if it is highly probable that the error[ ] did not affect the outcome of the case."[14] "It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is 'off the scale,' his discretion is not abused."[15]

## III.   ANALYSIS

**A.   Plaintiff's Motion in Limine to Preclude Defendant from Claiming that This Case Should Have Resolved on the School Steps and Not in a Courtroom, It's All about Money and/or Attorney [sic] Fees, ECF No. 556, is DENIED.**

In her sole motion in limine, Plaintiff seeks to preclude Defendant from making two arguments at trial: first, that this dispute should have resolved through the school district rather than by resort to this legal action; and second, that the driving force behind this lawsuit is money and/or attorney's fees. Plaintiff's motion will be denied as premature. The motion also lacks a basis in fact or law.

---

[13] Id.

[14] Id. (internal quotations omitted).

[15] United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005).

First, Plaintiff's objection is prematurely lodged. Defendant accurately notes that there is "no basis" for Plaintiff to anticipate that defense counsel will make any of the above contentions. Further, to preclude the Defendant from arguing "that this case should have resolved on the school steps" or that "it's all about money and/or attorney['s] fees" would be an exceedingly broad dictate at the pretrial stage. Moreover, the motion is entirely unclear and unspecific as to the particular conduct or lines of argument that Plaintiff seeks to preclude. Because the motion is overly broad and premature, it should be denied.

Moreover, Plaintiff makes no citation to the transcript of the first trial indicating that the Defendant has ever raised an inappropriate defense as to monetary motivation for this lawsuit. Reference to the initial trial transcript reveals only sporadic references to the term "money," references as it turns out, which were made by counsel for both parties. For instance, Michael I. Levin, Esquire, counsel for the Pleasant Valley School District, commented during his closing argument at the first trial as follows:

> If the answers were honest, because the answers weren't honest, the honest answer would be I'm here because I want the jury to give me money. . . . Well, she has a reason here. She wants you to give her money.[16]

In rebuttal, counsel for Plaintiff replied:

> And then they need—I can't tell you how much money to award them. That's only for you to decide. We ask that you make sure that you send a message to the defendants; you don't do this to a 16 year old. You don't do this to her parents when they did nothing wrong.[17]

The Court does not find anything particularly prejudicial about the above-statements, particularly when viewed in light of the authorities cited by Plaintiff in her supporting brief. Those cases involved claims by opposing counsel that the plaintiff was "unchristian" for seeking monetary gain or otherwise acted out of "greed . . . unadulterated greed."[18] Indeed, the Court believes these citations exemplify courtroom antics that are misleading and improper but still a far cry from the discussion of monetary aspirations that transpired during the first trial.

---

[16]   ECF No. 535 at 675–76.

[17]   Id. at 682.

[18]   See Corwin v. Dickey, 91 N.C. App. 725 (N.C. Ct. App. 1988); Szterling by Szterling v. Hintz, 93 C 5877, 1995 WL 491501 (N.D. Ill. Aug. 11, 1995).

Accordingly, because Plaintiff's motion is premature and lacks any basis it will be denied. Nevertheless and for the sake of efficiency, the Court encourages counsel for both parties to confine their arguments to the narrow merits of the case and to otherwise avoid unnecessary detours at trial.

**B.     Defendant' First Motion _in Limine_ to Exclude Documents and Images that Plaintiff Never Saw, ECF No. 558, is GRANTED.**

In his first motion _in limine_, Defendant seeks to exclude from evidence documents and images that Plaintiff never saw. Because items that Plaintiff never saw could not causally contribute the subjective hostility of the educational environment she perceived, such evidence is properly excluded.

"To violate Title VII of the Civil Rights Act of 1964, the environment must be 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's

employment.'"[19] The environment must be "both objectively and

subjectively offensive."[20]

Specifically, "Logic requires that if Plaintiff did not hear a comment,

it could not have contributed to Plaintiff experiencing a hostile work

environment."[21] The analogous observation must also be true: If Plaintiff

did not see a pedagogical tool or classroom demonstration, it could not

have contributed to Plaintiff experiencing a hostile educational

environment.

Defendant points to three evidentiary items: (1) <u>Memoirs of a Class

President</u>; (2) <u>Dark Horse</u>; and (3) the Naked News clip.[22] To the extent

that Plaintiff did not read or view all or a portion of each of these items,

the unread or unviewed portions of those items are excluded and may not

introduced or referenced in any manner.

---

[19]  <u>Young</u>, 601 F. App'x at 136 (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (internal quotation marks omitted).

[20]  <u>Young</u>, 601 F. App'x at 136 (quoting <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[21]  <u>Hayward v. Thuge</u>, No. 07-10622-BC, 2009 WL 1086765, at *30 (E.D. Mich. Apr. 22, 2009) (quoting <u>Mazur v. Wal–Mart Stores, Inc.</u>, 250 Fed. App'x 120, 128 (6th Cir.2007)).

[22]  ECF No. 559 at 3.

According to the record, Plaintiff admits that she read no more than the first one hundred pages of <u>Memoirs of a Class President</u>, but did not read or view <u>Dark Horse</u> or the Naked News clip.[23] <u>Dark Horse</u> and the Naked News clip are both excluded in whole. However, Plaintiff may introduce that portion of <u>Memoirs of a Class President</u> that she read (namely, no more than the first 100 pages).

This decision finds support in then-Chief Judge Kane's memorandum granting Defendants a new trial. In that memorandum, Judge Kane explained that "the Court finds that the award of damages was the result of passion or prejudice."[24] The determination is also consistent with Judge Kane's finding as to the inadmissibility of those portions of <u>Memoir of a Class President</u> that Plaintiff did not read, as well as that of <u>Dark Horse</u> and the Naked News clip.[25]

Exclusion of this evidence necessarily means that said evidence is excluded in any derivative form, including but not limited to, introduction

---

[23]   <u>See</u> ECF 559 (providing complete citations to the record).

[24]   ECF No. 333 at 35.

[25]   <u>See id.</u> at 45–46.

through trial or deposition transcripts, hearsay statements, or stray comments by counsel.

## C.  Defendant's Second Motion <u>in Limine</u> to Exclude Evidence of Retaliation, ECF No. 560, is GRANTED.

In its second motion <u>in limine</u>, Defendant seeks to exclude evidence of any retaliation carried out by the school district or its officials against Plaintiff's family. Because Plaintiff failed to assert a retaliation claim against the present Defendant, and because retaliatory evidence is irrelevant to the surviving claim, Defendant's motion is granted.

Plaintiff brought her First Amendment retaliation claim against only the School District and its Principal, John J. Gress. The sole remaining claim against the present Defendant is for that of the creation of a hostile educational environment based on sex, brought pursuant to § 1983. Because Plaintiff alleges no claim of retaliation against this Defendant, I agree that, under Federal Rules of Evidence 401, 402, and 403, evidence of the already-tried retaliation claim must be excluded from this trial. Such evidence is not only irrelevant to the hostile educational environment claim, but it also risks prejudicing the jury and confusing the issues.

Plaintiff's primary justification for not excluding the evidence is that "Plaintiff states in her complaint the actions of retaliation was part of the harassment Plaintiff was subjected to." Specifically, counsel for Plaintiff suggests that the Defendant purportedly showed a movie in a class about whistleblowing and the Whitewater scandal with the supposed intent of retaliating against Plaintiff.[26]

To that end, counsel for Plaintiff would do well to keep straight the allegations in this matter. Just because an event occurred in Defendant's classroom does not mean that the event was motivated by sex. Relatedly, just because some event involving her school or classmates occurred to Plaintiff outside of the classroom does not necessarily mean that the event was any way relevant to the educational environment.

Accordingly, because evidence of retaliation is irrelevant to the underlying claims and risks unduly prejudicing the jury and confusing the issues, such evidence will be excluded in full.

---

[26]   ECF 561 at 5; ECF 586 at 2 ("The DVD of the Ellsberg [sic] was shown in class.").

- 13 -

**D.**   **Defendant's Third Motion <u>in Limine</u> to Exclude Evidence of Educational Harm, ECF No. 562, is DENIED.**

In this motion <u>in limine</u>, Defendant seeks to exclude evidence of Plaintiff's alleged "educational harm" because the Pleasant Valley School District is no longer a party. I cannot agree with what would amount to a premature and sweeping exclusion of relevant evidence, and the motion will therefore be denied.

First, defendant's notion of "educational harm" is necessarily broad and ill-defined. Though Defendant fails to precisely explain what it seeks to exclude when referring to "educational harm," for the purposes of this motion, I will assume that Defendant means the academic harms that Plaintiff purports to have suffered as a result of the alleged hostile educational environment. Not only is that too broad a concept to strike at this stage, but such evidence is likely probative when viewed in light of the applicable case law.

Defendant's primary argument is that Title IX and § 1983 equal protection sex-based harassment claims employ distinct legal elements. That is technically an accurate statement. However, based upon the way

law has previously been applied to this case, the distinction is largely

irrelevant. The three jurists now having been assigned this case have

applied a Title VII framework to Plaintiff's § 1983. That is because,

according to the the Honorable James M. Munley, of this Court, who first

deemed Plaintiff's claim viable and sanctioned the application of Title VII

principles:

> Because of prior holdings on the relationship between the two statutes, the Third Circuit Court of Appeals has not examined the relationship between harassment claims brought pursuant to Title IX and claims brought under Section 1983. Circuit courts that have allowed plaintiffs to bring sexual harassment claims under these circumstances, however, have adopted Title VII standards for determining whether a sexually harassing environment existed. Moreover, the Third Circuit Court of Appeals applies a Title VII analysis to a determination of whether a hostile environment exists for Title IX purposes. Thus, the court will apply Title VII analysis to plaintiff's hostile environment claim.[27]

Afterwards, Judge Kane, to whom the matter was next assigned,

wrote in her memorandum granting Defendants a new trial that such

reasoning was potentially problematic as applied to the Defendant here,

"because Section 1983 claims premised under Title VII may not proceed

---

[27]   Young v. Pleasant Valley Sch. Dist., No. 3:07CV854, 2010 WL 55711, at *13 (M.D. Pa. Jan. 4, 2010) (internal citations omitted).

against individuals."[28] Nevertheless, Judge Kane conceded, "it appears that the law of the case doctrine bars this Court from revisiting this decision."[29]

The matter was then reassigned to the undersigned, who granted judgment in favor of the present Defendant at the summary judgment stage. Upon conclusion of a second trial that therefore did not include the present Defendant, the jury returned a defense verdict, and the matter was appealed.

The United States Court of Appeals for the Third Circuit, in a 2-1 decision written by the Honorable D. Michael Fisher, reversed this Court's grant of summary judgment in the Defendant's favor but chose not to address: (1) whether the elements of a Title VII or Title IX claim should apply to a hostile educational environment action based upon sex; and (2) whether, if Title VII law does apply, a claim may be nevertheless be maintained against an individual defendant. Instead, the Third Circuit

---

[28] <u>Young v. Pleasant Valley Sch. Dist.</u>, No. 3:07-CV-00854, 2012 WL 1827194, at *9 (M.D. Pa. May 18, 2012).

[29] <u>Id.</u>

noted the following, in a footnote: "The District Court adopted Title VII 'hostile environment' standards for determining whether a hostile educational environment exists under § 1983. We assume for purposes of this appeal that Title VII standards govern in this case."[30] Judge Fisher explained, "Applying these standards to the educational context, and considering the circumstances in totality, a reasonable jury could have found that Smith created a hostile educational environment."[31]

The Honorable Thomas M. Hardiman authored the dissenting opinion in which he explained that he would have upheld the District Court's grant of summary judgment.[32] According to Judge Hardiman, the majority "correctly describes the demanding standard to establish a sexually hostile environment," but "backslides when applying that standard."[33] The evidence Plaintiff presented was "not enough, as the District Court's thorough analysis makes clear," Hardiman wrote.[34] "I find

---

[30]   <u>Young v. Pleasant Valley Sch. Dist.</u>, 601 F. App'x 132, 136 n.3 (3d Cir. 2015).

[31]   <u>Id.</u>

[32]   <u>Id.</u> at 137.

[33]   <u>Id.</u> at 138.

[34]   <u>Id.</u>

no error in the District Court's opinion, and the majority has not explained

where the District Court went astray. Accordingly, I would affirm the

judgment in its entirety."[35]

With that background in mind, and applying Title VII law found in

the Third Circuit's decision to the instant claim, "To violate Title VII of the

Civil Rights Act of 1964, the environment must be 'permeated with

discriminatory intimidation, ridicule, and insult that is sufficiently severe

or pervasive to alter the conditions of the victim's employment.'"[36] "This is

determined 'only by looking at all the circumstances,' with an 'appropriate

sensitivity to social context.'"[37] The environment must be "both objectively

and subjectively offensive."[38]

In light of the above substantive law, it is apparent that testimony

and evidence probative of Plaintiff's educational harms is presumptively

---

[35]  Id.

[36]  Young, 601 F. App'x at 136 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (internal quotation marks omitted).

[37]  Young, 601 F. App'x at 136 (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)).

[38]  Young, 601 F. App'x at 136 (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

relevant to the surviving claim. Necessarily, proof of Plaintiff's case depends upon showing that the classroom environment at issue was so hostile that it deprived her, both objectively and subjectively, of her fundamental educational rights.

Moreover, Defendant has made clear that it will attempt to discredit any evidence purporting to show "educational harm" with the very fact that the Plaintiff has thus-far enjoyed what might appropriately be described as a strong academic and professional career. Because such evidence will be admissible, it would not be appropriate for this Court to exclude the underlying evidence it is designed to rebut.

Needless to say, Plaintiff's counsel should be fully aware that presentation of irrelevant or prejudicial evidence bearing only upon non-party school district actors will not be permitted, but that does not exclude evidence of educational harms allegedly brought upon Plaintiff by Defendant's purportedly hostile classroom environment. Defendant will, of course, be entitled to challenge any evidence of causation, as well as damages, given the Plaintiff's positive academic and career trajectory.

**E.     Defendant's Fourth Motion <u>in Limine</u> to Exclude the Testimony of Plaintiff's Witnesses Polanzke, Pedone, Serfass, and Keller, ECF No. 564, is GRANTED.**

In this motion <u>in limine</u>, Defendant seeks to exclude the testimony of certain collateral witnesses whose statements at trial would either be irrelevant or unnecessarily duplicative of Plaintiff's. Defendant is correct, and the following witnesses will be excluded as detailed more completely below: Pastor Jim Polanzke, Dr. Amy Pedone, Detective Wendy Bentzoni Serfass, and Chrissy Keller.

The first witness Defendant seeks to exclude is Pastor Jim Polanzke. Prior to the second trial, the undersigned held that the testimony of Pastor Polanzke was excluded to the extent that it was irrelevant and prejudicial.[39] Pastor Polanzke testified briefly during the second trial, and what he offered was relevant only to Plaintiff's parents, not Plaintiff herself.[40] In addition, he inappropriately testified to the lawfulness of

---

[39]   ECF No. 481.

[40]   ECF No. 304 at 493–500.

Defendant's teaching methodologies.[41] As such, Pastor Polanzke's
testimony will be fully excluded for the third trial.

   Plaintiff explains that she intends to offer Pastor Polanzke solely to
corroborate her claims of emotional distress.[42] At the second trial, counsel
for Plaintiff stated, "emotional distress can never be cumulative."[43] That is
incorrect under prevailing law. As the Honorable Max Rosenn, writing for
the Third Circuit in United States v. Dalfonso, commented, "in view of
extensive testimony offered concerning" a particular issue, further
testimony on that issue was "merely cumulative" and "its exclusion was
within the broad discretion of the trial court."[44] Exclusion was appropriate
in Dalfonso because, like the instant dispute, the trial court could not
"believe that such cumulative testimony could have substantially
influenced the jury's assessment."[45] The aggrieved party "must at least
show a substantial danger of prejudice flowing from the absence of

---

[41]  Id.

[42]  ECF 589 at 5.

[43]  ECF No. 493 at 140.

[44]  707 F.2d 757, 762 (3d Cir. 1983).

[45]  Id.

such testimony."[46] However, Judge Rosenn wrote, "[w]e see no such

danger of prejudice here in light of the cumulative nature of the proposed

collateral inquiry."[47]

Moreover, Pastor Polanzke spoke only about his counseling of

Plaintiff's parents after they relocated, and rarely (if at all) mentioned his

interaction with Plaintiff or her classroom experiences. This leads the

Court to believe that not only would any testimony by Pastor Polanzke be

duplicative, but it was also be comparatively unreliable, given the time

that has passed since the first trial, as well as Plaintiff's ability to testify to

her emotional distress based upon her own experiences.

Further, Pastor Polanzke's first testimony was littered with

judgmental remarks, premised upon his own personal background and

belief system, as to the appropriateness of Defendant's teaching style. That

---

[46]   Id.

[47]   Id. See also United States v. Somers, 496 F.2d 723, 736 (3d Cir. 1974) ("[A]s the
Court had a firm basis for assuming that the testimony would be cumulative,
and given the actual cumulative nature of the evidence, we find no abuse of
discretion in the District Court's not requiring Frank Nugent to testify."). U.S.
Fire Ins. Co. v. Kelman Bottles LLC, No. 11CV0891, 2014 WL 3890355, at *7
(W.D. Pa. Aug. 8, 2014) ("[I]f the testimony does become cumulative or causes
undue delay, the Court will not hesitate to limit the testimony.").

is not his domain to judge. Accordingly, to also avoid wrongfully

prejudicing the jury or invading the jury's province, Pastor Polanzke will

be excluded in full.[48]

The second witness Defendant seeks to exclude is Dr. Amy Pedone.

Plaintiff concedes that she "will not be calling Dr. Amy Pedone."[49] The

Court would have excluded her on the merits, regardless. Accordingly, Dr.

Amy Pedone's testimony is excluded in full.

The third witness Defendant seeks to exclude is Detective Wendy

Bentzoni Serfass. According to Plaintiff, Detective Serfass allegedly

conducted an investigation of the materials used in Defendant's classroom

and determined that although there was no evidence of abuse, the

Memoirs of a Class President manuscript was, in her opinion,

"inappropriate." Counsel for Defendant contends that Detective Serfass's

investigation was based on secondhand information and is unduly

prejudicial to its client. I agree.

---

[48]   See Matthew 7:1–2 ("Do not judge, or you too will be judged. For in the same
       way you judge others, you will be judged, and with the measure you use, it
       will be measured to you.").

[49]   ECF No. 589 at 2.

First, and most glaring, this Court has serious misgivings as to the idea of permitting a sex crimes investigator to testify about her criminally-based investigation into Defendant (which yielded no formal charges), during the course of a civil action against that individual. Such testimony would be blatantly prejudicial in a number of ways. Most obviously, it would afford Detective Serfass a heightened sense of credibility based upon her credentials and occupation, where such credibility is unwarranted and irrelevant in the civil context.

Relatedly, testimony by a police detective as to a criminal sex abuse investigation in a civil hostile environment case has the unfortunate and unavoidable effect of confusing the issues and applicable standards of proof for the jury. Specifically, the Court must guard against the numerous legal and factual misconceptions as to whether the Defendant is criminally or civilly charged were Detective Serfass to testify. I must also be mindful about avoiding creation of the erroneous impression that Defendant was ever in any way criminally charged or that his classroom environment was ever deemed unlawful by judicial or law-enforcement authorities. The

potential confusion of the jury, prejudice to the Defendant, and erroneous creation of an air of impropriety engendered by Detective Serfass's testimony is sufficient to justify her exclusion in this narrowly-focused trial.

Counsel for Plaintiff is correct that it is her burden to show harm and that she may present the witnesses of her choosing to so establish that alleged fact. However, where Plaintiff's method of proof inappropriately exceeds what is permitted by law, by introducing evidence that is meant to confuse the jury, that invites false inferences, or that is otherwise prejudicial to the Defendant's right to a fair trial, it is this Court's province under Federal Rule of Evidence 403 to put an end to such tactics. Accordingly, the testimony of Detective Serfass is excluded in full.

The final witness that Defendant seeks to exclude is Chrissy Keller, a friend of Plaintiff's, who Plaintiff suggests will testify to her mental state. During the second trial, counsel for Plaintiff represented to the Court that Ms. Keller was capable of describing emotive changes in Plaintiff before and after the alleged incident. Supposedly, Ms. Keller could testify as to

"the difference" she saw in Plaintiff.[50] "It happens all the time," counsel for

Plaintiff stated. "People call witnesses that are personal friends and they

testify to, what have you seen? What's the difference?"[51] The Court asked

Plaintiff's counsel, "Is she going to testify that she observed changes?"[52]

"Yes, absolutely," counsel replied.[53]

Unfortunately, the first sequence of direct examination revealed that

Ms. Keller did not know the Plaintiff at all prior (or during) the allegedly

hostile environment.[54] Ms. Keller, as counsel for Defendant put it, was "not

able to establish any baseline."[55] I now agree.

Moreover, a fair reading of Ms. Keller's testimony from the second

trial reveals it to be based almost entirely on inadmissible hearsay spoken

by Plaintiff or her parents, as well as inadmissible hearsay-within-hearsay

spoken by others and repeated by Plaintiff or on social media. As such, this

---

[50]   ECF No. 296 at 112.

[51]   Id.

[52]   Id. at 113.

[53]   Id.

[54]   Id. at 114.

[55]   Id.

confirms that the evidence Plaintiff may attempt to submit through Ms.

Keller's testimony is more appropriately advanced by Plaintiff herself.

In addition, the focus of Ms. Keller's testimony was not on the

impact of the sexually hostile environment that Plaintiff alleges, but rather

on how the purported retaliatory conduct had affected her. Ms. Keller, for

instance, was not a classmate of Plaintiff's at the time of the purported

conduct and did not witness the classroom environment firsthand. The

Court reminds counsel and the parties that it will narrowly focus this trial

on the remaining claim (that of an allegedly hostile educational

environment based on sex) and exclude evidence that fails to bear upon

that claim or that attempts to confuse the jury by reintroducing a claim

that has already been disposed of.

For the foregoing reasons, Chrissy Keller, and the other above-

named witnesses are excluded in full from testify at the third trial.

Exclusion of the above-named live witnesses also necessarily means that

said testimony is excluded in any derivative form, including but not

limited to: trial or deposition transcripts, hearsay statements, or stray

comments by counsel.

**F.      Defendant's Fifth Motion in Limine to Exclude Reference to the First Verdict, ECF No. 566, is GRANTED.**

In Coleman Motor Co. v. Chrysler Corp., the Honorable Max

Rosenn, writing for the Third Circuit held that references to a prior verdict

were "improper[ ]" and "unduly prejudicial."[56] In so holding, Judge

Rosenn reasoned that "[a] jury is likely to give a prior verdict against the

same defendant more weight than it warrants. The admission of a prior

verdict creates the possibility that the jury will defer to the earlier result

and thus will, effectively, decide a case on evidence not before it."[57] As

Judge Rosenn explained:

> The statement made by counsel of the plaintiff in his argument to the jury as to what had been done by other juries in former trials of this case . . . are in a federal court deemed so improper as to warrant opposing counsel to request, and courts of their own motion to direct, the withdrawal of a juror and the continuance of a cause.[58]

---

[56]   525 F.2d 1338, 1351 (3d Cir. 1975).

[57]   Id.

[58]   Id.

Applying <u>Coleman</u>, this Court, by its July 3, 2013 Order, previously

granted Defendants' motion to preclude the prior verdict from evidence.[59]

Likewise, for purposes of this third trial, the Court will again prohibit

Plaintiff from referring to or offering evidence regarding the prior verdict

at any time throughout the course of jury selection and trial.

**G. Defendant's Sixth Motion <u>in Limine</u> to Exclude Evidence that Plaintiff Was Harassed or Threatened outside of the Educational Environment, ECF No. 568, is GRANTED.**

In this motion <u>in limine</u>, Defendant seeks to exclude any references

to purported harassment Plaintiff suffered or was threatened with outside

of the educational environment. Because progression of this trial will hew

closely to the legal elements of the only remaining claim (that for a hostile

educational environment), the motion will be granted.

Specifically, Defendant seeks to exclude evidence of alleged threats

made by the public via social media regarding Plaintiff's parents.

Defendant correctly notes that Judge Kane in her 2012 new trial

memorandum clarified that such external incidences were not relevant to

the § 1983 hostile educational environment claim. As Judge Kane wrote,

---

[59]  ECF No. 481.

"While the comments were undoubtedly upsetting and at times disturbing, Plaintiff points to no authority for the proposition that the failure of school administrators to police anonymous comments made on a newspaper's website is actionable."[60]

Accordingly, because "failures to act cannot form the basis of a valid Section 1983 claim," Judge Kane held that such external incidents were irrelevant to Plaintiff's § 1983 claims, including those based on a hostile educational environment.[61] Thus, not only is the decision to exclude such evidence correct as a matter of law, it also remains faithful to the law of the case doctrine. "The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[62]

Moreover, the applicable law makes clear that non-educational actors and incidents have little to no bearing as to the surviving claim. "To

---

[60]  Young v. Pleasant Valley Sch. Dist., No. 3:07-CV-00854, 2012 WL 1827194, at *6 (M.D. Pa. May 18, 2012).

[61]  Id.

[62]  Farina v. Nokia Inc., 625 F.3d 97, 117 n.21 (3d Cir. 2010) (Scirica, J.).

violate Title VII of the Civil Rights Act of 1964, the environment must be 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'"[63] For these reasons, and viewing the applicable law in the classroom context, exclusion of these external communications and events is appropriate.

**H.      Defendant's Seventh Motion in Limine to Exclude from Evidence Defendant's Stray Comments and the Manson and Gein Photographs, or Alternatively, to Limit Their Exposure, ECF No. 570, is DENIED.**

In its seventh motion in limine, Defendant seeks to exclude or alternatively, to limit, evidence of stray comments as well as certain photographs. According to Defendant, the evidence addressed in this motion in limine is irrelevant, incapable of establishing a sexually hostile educational environment, and exceedingly prejudicial. Although the Court is not unsympathetic to Defendant's argument, the law as set forth by the Third Circuit appears to require presentation of such evidence to the jury for its ultimate determination. Accordingly, Defendant's motion is denied.

---

[63]   Young, 601 F. App'x at 136 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)) (internal quotation marks omitted).

As to the photographs at issue, Judge Kane, as a matter of law, observed that "[w]hile the Court agrees with Plaintiff that they are unpleasant to look at, the Court cannot find that they create a hostile environment based on sex."[64] "Further," Judge Kane wrote, "these images had historical value."[65] Thereafter, in a renewed summary judgment decision authored by the undersigned, I granted judgment in Defendant's favor, noting that "the totality of the allegations, even viewed out of context and in a light most favorable to Plaintiff, do not reasonably support [Plaintiff's] § 1983 claim against Smith."[66]

Thereafter, the Third Circuit reversed the determination shared by the undersigned and Judge Kane, and explained that "Smith was not entitled to judgment as a matter of law on the Youngs' hostile educational environment claim."[67] The Third Circuit continued, "Applying these standards to the educational context, and considering the circumstances in

---

[64]   ECF No. 333 at 26.

[65]   Id.

[66]   ECF No. 484 at 30–31.

[67]   <u>Young v. Pleasant Valley Sch. Dist.</u>, 601 F. App'x 132, 136 (3d Cir. 2015).

- 32 -

totality, a reasonable jury could have found that Smith created a hostile educational environment."[68]

Accordingly, this Court is understandably reluctant to take from the jury a determination that the Third Circuit has explicitly instructed is within its province. Of course, presentation of the enumerated exhibits covered by this motion will still need to conform to basic evidentiary principles of relevance and prejudicial value as set forth in Federal Rules of Evidence 401, 402, and 403. However, the Court deems it improper to exclude this evidence at this stage, given the Third Circuit's clear instruction. As a consequence, this motion is denied.

## I.  Defendant's Eighth Motion in Limine to Exclude the Testimony of Former School Board President Susan Kresge, ECF No. 572, is GRANTED.

This motion in limine seeks to exclude testimony of former Pleasant Valley High School Board President Susan Kresge. Ms. Kresge's testimony was already excluded by this Court after it was determined that she lacked any personal knowledge or involvement in the relevant matters.[69] The

---

[68]  Id.

[69]  See Tr. of Second Trial at 485–86.

Third Circuit affirmed the decision to exclude, writing that "it was reasonable for the District Court to find that the School Board President's testimony was irrelevant, given that she had no knowledge of the Youngs' complaint, Smith's suspension, or personnel matters at the high school."[70]

Plaintiff contends that the motion should not be granted because the second trial dealt only with retaliation, whereas the hostile education environment claim is now at issue. While true, Plaintiff's comment has no reasonable bearing on the outcome of the motion. For instance, Plaintiff contends that her mother reported certain incidents to Ms. Kresge, and that Ms. Kresge would be able to testify to the school district's policies— both are matters irrelevant to the narrow hostile educational environment claim. Because Ms. Kresge has no firsthand knowledge as to the alleged classroom environment, her testimony is still appropriately excluded.

**J.     Defendant's Ninth Motion in Limine to Exclude the Report and Testimony of Judith A. Reisman, Ph.D., ECF No. 574, is GRANTED.**

Defendant seeks to exclude the report and testimony of Dr. Judith A. Reisman, which report and testimony were already expressly excluded in

---

[70]   Young v. Pleasant Valley Sch. Dist., 601 F. App'x 132, 137 (3d Cir. 2015).

full by Judge Munley for their lack of relevance and risk of prejudice.

Because the law of the case doctrine again applies and because this Court

would nevertheless reach the same conclusion as to admissibility as that

reached by Judge Munley, the report and testimony are properly excluded.

In 1993, the Supreme Court of the United States set out the standard

for admissibility of expert testimony in federal court in Daubert v. Merrell

Dow Pharm., Inc.[71] The Court in Daubert delegated to district courts a

"gatekeeping responsibility" under Rule 702, which requires them to

"determine at the outset" whether an expert witness can "testify to

(1) scientific knowledge that (2) will assist the trier of fact."[72] That gate-

keeping function demands an assessment of "whether the reasoning or

methodology underlying the testimony is scientifically valid" as well as

"whether that reasoning or methodology properly can be applied to the

---

[71]   509 U.S. 579 (1993).

[72]   Daubert, 509 U.S. at 592.

facts in issue."[73] <u>Daubert</u> also clarified that the proponents of the expert

must establish admissibility by a preponderance of the evidence.[74]

Though it recognized that "many factors" are relevant to this

inquiry and that "a definitive checklist or test" does not exist, the <u>Daubert</u>

Court enumerated four relevant questions for district courts to consider

when making the Rule 702 determination: (1) whether the disputed

methodology is testable; (2) whether the disputed methodology has been

peer-reviewed; (3) the methodology's known or potential rate of error; and

(4) whether the methodology is generally accepted in the relevant scientific

community.[75]

<u>Daubert</u> explained that district courts should conduct this inquiry in

addition to that already mandated by Federal Rules of Evidence 703,

---

[73]   Daubert, 509 U.S. at 592–93.

[74]   <u>Daubert</u>, 509 U.S. at 592 n.10 (citing <u>Bourjaily v. United States</u>, 483 U.S. 171, 175–76 (1987)). <u>See also</u> <u>In re Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 744 (3d Cir. 1994) (Becker, J.) ("This does not mean that plaintiffs have to prove their case twice—they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are <u>correct</u>, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.").

[75]   <u>Daubert</u>, 509 U.S. at 593–94.

which governs admission of expert testimony using data reasonably relied

upon by experts in a particular field, and Federal Rule of Evidence 403,

which permits exclusion of relevant evidence whose "probative value is

substantially outweighed by a danger of . . . unfair prejudice, confusing the

issues, misleading the jury, undue delay, wasting time, or needlessly

presenting cumulative evidence."[76] A district court "exercises more control

over experts than over lay witnesses," the Supreme Court observed, since

"[e]xpert evidence can be both powerful and quite misleading because of

the difficulty in evaluating it."[77] Six years later, in <u>Kumho Tire Co. v.

Carmichael</u>, the Supreme Court extended <u>Daubert's</u> holding as well as the

district court's gate-keeping role beyond scientific expert testimony to all

expert testimony based on "technical" or "other specialized knowledge."[78]

    In 1994, the United States Court of Appeals for the Third Circuit

issued its interpretation of <u>Daubert</u> in <u>In re Paoli R.R. Yard PCB Litig.</u>, a

---

[76]  Fed. R. Evid. 403.

[77]  <u>Daubert</u>, 509 U.S. at 595 (quoting Hon. Jack B. Weinstein, <u>Rule 702 of the Federal Rules of Evidence is Sound; It Should Not Be Amended</u>, 138 F.R.D. 631, 632 (1991)).

[78]  526 U.S. 137 (1999)

decision known as <u>Paoli II</u>.[79] <u>Paoli II</u> cast the expert admissibility

determination in light of three requirements: (1) qualification;

(2) reliability; and (3) fit.[80] The qualification prong demands that the

proffered expert possess sufficient "specialized knowledge" to testify as an

expert.[81] The Third Circuit has interpreted this requirement broadly.[82] In

this Court's view, the requirement that does the most work is naturally

that of reliability. To satisfy the reliability prong, an expert's opinion "must

be based on the 'methods and procedures of science' rather than on

'subjective belief or unsupported speculation.'"[83] <u>Paoli II</u> set forth an

additional four factors to those provided in <u>Daubert</u>. That list of factors,

which "a district court should take into account," reads as follows:

(1)     whether a method consists of a testable hypothesis;

(2)     whether the method has been subject to peer review;

(3)     the known or potential rate of error;

---

[79]   35 F.3d 717, 730 (3d Cir. 1994).

[80]   <u>Id.</u> at 741–43.

[81]   <u>Id.</u> at 741.

[82]   See id.

[83]   <u>See</u> <u>id.</u> at 742 (quoting <u>Daubert</u>, 509 U.S. at 589).

> (4)     the existence and maintenance of standards controlling the technique's operation;

> (5)     whether the method is generally accepted;

> (6)     the relationship of the technique to methods which have been established to be reliable;

> (7)     the qualifications of the expert witness testifying based on the methodology; and

> (8)     the non-judicial uses to which the method has been put.[84]

With regard to the third prong, fit, the <u>Paoli II</u> Court explained that admissibility "depends . . . on 'the proffered connection between the scientific research or test result . . . and [the] particular disputed factual issues.'"[85] In recognition then of <u>Paoli II's</u> interpretation of <u>Daubert,</u> Third Circuit courts confronting expert witness issues have recognized that admissibility requires a proffered expert to surpass "a trilogy of restrictions": qualification, reliability and fit.[86]

---

[84]    <u>See</u> <u>Paoli II,</u> 35 F.3d at 742 n.8.

[85]    <u>See</u> <u>id.</u> at 743 (quoting <u>United States v. Downing,</u> 753 F.2d 1224, 1237 (3d Cir. 1985)).

[86]    See Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003).

Applying these principles to the present matter, Judge Munley commented of Dr. Reisman's report that "it will not assist the trier of fact to answer any important factual questions, as required by Rule 702."[87] I agree. Plaintiff offers Dr. Reisman, and Dr. Reisman's report focuses on, the effects that pornographic material and other sexually charged conduct have upon minors.[88] As Judge Munley explained, "The issue of what effect showing pornography in the classroom has on minors is not an issue in this case; the issue here is whether the images Smith showed and the assignments he gave created a hostile environment."[89]

Plaintiff offers no persuasive justification to abandon Judge Munley's prior ruling. At bottom, the contested report remains unchanged since the time that Judge Munley struck it. Instead, Plaintiff contended in her briefs and during the pretrial conference that the outcome should be different "because Smith is a defendant now." The Court finds that

---

[87]   ECF No. 148 at 9.

[88]   See ECF 122 at 37–93 (Dr. Reisman's Report). See also ECF No. 148 (Judge Munley's Memorandum Opinion excluding Dr. Reisman's Report and Testimony).

[89]   ECF No. 148 at 9.

counterargument unpersuasive, as Smith was also defendant when Judge

Munley excluded Dr. Reisman's report in anticipation of the first trial.

Moreover, Dr. Reisman's report is inflammatory and poses a

significant risk of undue prejudice. As Judge Munley observed, "A

discussion of whether Smith's methods of teaching are akin to those used

by the Nazis or served as a means of promoting pornography and

transgressive adolescent sexuality do not help to answer" the disputed

issues.[90] As Judge Munley held, "The report does not address those issues,

but instead reads as an attack on contemporary sexual morality, as

represented by the images and materials Smith presented to the class."[91]

"The report also contains dozens of pages describing sexual abuse

by teachers, at least implying that Smith is a sexual predator interested in

abusing children. Indeed, the first pages of the report link Smith's behavior

to the 'grooming' often associated with child molesters."[92] It should be

---

[90]   Id. at 9–10.

[91]   Id.

[92]   Id. at 10.

noted for the record that Judge Munley found Dr. Reisman's report so inflammatory that he required it and any related motions to be sealed.

Having seen its fair share of admissible (and inadmissible) reports, this Court agrees with Judge Munley and notes that Dr. Reisman's report reads more like generalized policy advocacy than a targeted assessment of the instant dispute. The Superior Court of Pennsylvania , applying the less demanding <u>Frye</u> standard, has already excluded one of Dr. Reisman's reports on similar grounds.[93] The Superior Court wrote that "since Dr. Reisman is not a physician, psychiatrist, or even a psychologist, her qualifications were limited to general human responses to pornography and academic sexuality."[94] The Superior Court excluded Dr. Reisman's opinion as irrelevant, explaining that "[w]hile Dr. Reisman clearly was qualified to present her expert opinion regarding pornography in mass media, erotic media, academic human sexuality, and pornography's effect

---

[93]   <u>A.J.B. v. M.P.B.</u>, 2008 PA Super 39, ¶ 14, 945 A.2d 744, 749 (2008) ("The <u>Frye</u> standard is simply whether the party proffering the novel scientific evidence has demonstrated that the principles and methodology the scientist employed has gained general acceptance in the relevant medical community.").

[94]   <u>Id.</u> at ¶ 16.

on society generally, those concerns were not relevant to the trial court's determination."[95]

Plaintiff also argues that the Court should admit Dr. Reisman's report and testimony and thereafter subject it to a thorough cross-examination by Defendant. That alternative is inadequate, where, as here, a report is so fundamentally flawed that threshold attacks by opposing counsel go to the essence of the report rather than to a tertiary credibility determination. As this Court wrote in Bruno v. Bozzuto's, Inc., "[C]ourts considering the weight-admissibility distinction must determine whether the contested flaws are tertiary or central the evidence."[96] Where the "flaws go to the core body of the proffered evidence," the report simply does not "lend [itself] to minor correction by the factfinder on the basis of some credibility determination."[97] Here, the disputed report is so fundamentally flawed as to warrant its complete exclusion.

---

[95]   Id. at ¶ 17.

[96]   311 F.R.D. 124, 140 (M.D. Pa. 2015).

[97]   Id.

In addition, the report and testimony of Dr. Reisman should be excluded because they would inappropriately invade the province of the jury. The Third Circuit has explained that a restrictive approach to expert opinions on an ultimate issue guards against an expert "usurp[ing] the District Court's pivotal role in explaining the law to the jury," prevents a witness from "invad[ing] the province of the jury," and avoids a party's "attempting to introduce law as evidence."[98] Moreover, district courts have been instructed to "exclude opinions phrased in terms of inadequately explored legal criteria."[99] Dr. Reisman's report is rife with examples of such usurpation, including the provision of model jury instructions, discussion of the legal standards for "unlawful harassment," and a review of the criminal elements of child sexual abuse—none of which are relevant to the pending action, and all of which would only serve to further prejudice the jury and cloud the narrow issue to be tried.

---

[98] Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006); United States v. Downing, 753 F.2d 1224, 1229 (3d Cir. 1985); United States v. Leo, 941 F.2d 181, 197 (3d Cir. 1991).

[99] Advisory Committee Notes to Fed. R. Evid. 704.

Accordingly, for the foregoing reasons, because the contested report is unreliable, irrelevant, prejudicial, invades the province of the jury, and has already been excluded, the report and testimony of Dr. Reisman are again excluded in full.

## K.      Defendant's Tenth Motion in Limine to Exclude the Testimony of William and Patricia Young, ECF No. 576, is GRANTED.

Defendant also seeks to exclude the testimony of Plaintiff's parents as irrelevant and unnecessarily cumulative, particularly now that Plaintiff's parents are no longer parties to this action. In response, Plaintiff suggests that certain of the contested evidence, "which was personally viewed by both Patricia and William Young, can be attested to because it is based on their perception of the material and it will help the jury determine whether the material presented by Smith was hostile."[100] Such a justification runs perilously close to permitting a lay witness to invade the province of the jury. "Under our system of justice, the role of the jury is to find the facts of the case based on the evidence presented in the trial.  That is, from the evidence seen and heard in court, the jury decides what the

---

[100]   ECF No. 595 at 4.

facts are, and then applies to those facts the law that I will give in my instructions to the jury."[101]

Plaintiff also contends that "the family moved because of the harassment, and clearly that is relevant to Plaintiff's emotional suffering."[102] For support, Plaintiff relies on a number of circuit-level authorities standing for the proposition that incidents occurring outside of the purportedly hostile environment may nevertheless be relevant to a hostile environment claim. For instance, Plaintiff cites cases, which provide that "the fact that a plaintiff learns second-hand of a racially derogatory comment or joke by a fellow employee or supervisor also can impact the work environment" and "[g]iven that the plaintiff experienced harassment at the work site and the incident at the bar may have formed part of a pattern of such harassment, the bar incident may well be relevant to the issue of whether the plaintiff experienced a hostile environment at her place of work."[103]

---

[101]  Third Circuit Model Civil Jury Instruction 1.01.

[102]  ECF No. 595 at 4.

[103]  ECF No. 595 at 5.

In offering these counter-examples, Plaintiff has conflated external

harms suffered outside of the workplace or classroom that nevertheless

bear upon the contested environment with external manifestations by a

plaintiff of alleged harms that she purportedly suffered within the

contested environment. The first are simply not at issue and are irrelevant

to the pending motion. Plaintiff here is presumably of sound mind and

recollection and may attest to any damages she suffered as a result of the

allegedly hostile environment in her own words and based upon her own

experiences. Unfiltered by derivative sources, such testimony is a truer

measure of those damages.

Accordingly, Defendant is correct that the Youngs' testimony

"would be either entirely irrelevant to the hostile environment standard, [ ]

or would be cumulative of testimony given by Plaintiff."[104] For that reason,

the Court will exclude in full William and Patricia Young from testifying at

trial. The Court will necessarily also forbid the introduction of testimony

from the Youngs in any derivative form, including but not limited to: trial

---

[104]   ECF No. 577 at 4–5.

or deposition transcripts, hearsay statements, or stray comments by

counsel.

**L.     Plaintiff is barred from seeking additional discovery or presenting any evidence as to punitive damages, and the jury will not be charged with a punitive damages instruction, because this Court has already determined, as a matter of law, that punitive damages are inappropriate as to this Defendant.**

"Whether there is sufficient evidence to support a punitive damages

award is a question of law."[105] "A jury may award punitive damages when

it finds reckless, callous, intentional or malicious conduct."[106] "The

defendant's conduct must be, at a minimum, reckless or callous. Punitive

damages might also be allowed if the conduct is intentional or motivated

by evil motive, but the defendant's action need not necessarily meet this

higher standard."[107]

---

[105]  Alexander v. Riga, 208 F.3d 419, 430 (3d Cir. 2000).

[106]  Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006) (citing Smith v. Wade, 461 U.S. 30, 54-56 (1983); Alexander, 208 F.3d at 430–31 (3d Cir. 2000)).

[107]  Springer, 435 F.3d at 281 (quoting Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989)).

After hearing all the evidence presented against the instant

Defendant as to punitive damages, Judge Kane, in her memorandum

granting Defendant's new trial, commented as follows:

> [A] thorough review of the record reveals no evidence that
> Defendant Smith acted recklessly, callously, intentionally, or
> maliciously in creating a sexually hostile educational
> environment. At worst, Defendant Smith's conduct would
> support a finding that he was careless. This is insufficient as a
> matter of law to support an award of punitive damages.[108]

Judge Kane ultimately concluded that a punitive damages award

would be "clearly against the weight of the evidence."[109] "No evidence has

been introduced that Defendant Smith ever directed any offending

conduct specifically at Plaintiff, that Defendant Smith acted with an intent

to harm, or that Defendant Smith ever engaged in any offending conduct

in his classroom after the complaints were made," Judge Kane wrote.[110]

"Further, as detailed, supra, the alleged offending conduct had at least an

arguable legitimate pedagogical purpose and nearly all of the alleged

inflammatory remarks made by Defendant Smith, when placed in the

---

[108]   ECF No. 333 at 39.

[109]   Id.

[110]   Id. at 37–38.

proper context, actually conveyed the precise opposite meaning from what Plaintiff suggested."[111]

Just as Plaintiff used the law of the case doctrine to sustain her hostile educational environment claim, so too should the law of the case doctrine forbid discussion of punitive damages. The appropriateness of adhering to the law of the case doctrine on this particular issue hinges on the following question: To what extent will Plaintiff's presentation exceed that which she put forth in the first trial on the punitive damages issue? According to the trial transcript and Judge Kane's summation of the proffered evidence, much of Plaintiff's punitive claim rested upon the presentation of allegedly inflammatory videos, photos, or stray comments. Because Plaintiff will necessarily put forth a lesser portion of that evidence during this trial as a consequence of my ruling on these motions in limine, I deem it appropriate to adhere to Judge Kane's prior ruling that punitive damages should not be available in this matter.

---

[111] Id. at 38.

Moreover, I would note for the record that even were I to revisit the issue of punitive damages, as a matter of law, my determination would align with that of Judge Kane's. There is simply no evidence in the record that the Defendant acted with the requisite mindset to award punitive damages, and finding as such would create a dangerous precedent for the academic setting. At some point, a trial court must sheer away collateral issues so as to promote efficiency and focus the jury on the core claims. In my view, a prayer for punitive damages is inappropriate here.

Accordingly, consistent with the above reasoning, Plaintiff will not be permitted to request additional discovery from Defendant going to the issue of punitive damages, evidence of punitive damages shall not be presented, and the jury will not be charged with a punitive damages instruction.

## M.    Plaintiff's Motion for an Adverse Inference Instruction, ECF No. 607, is DENIED.

On June 9, 2016, Plaintiff filed a motion requesting that this Court enter an adverse inference instruction relating to Defendant's

nonproduction of certain video clips and webpage testimonials.[112] On

November 9, 2009, Judge Munley previously denied that exact motion.

Plaintiff's motion now fails for a second time.

In his memorandum denying Plaintiff's request, Judge Munley

explained as follows regarding each of the same items Plaintiff's renewed

motion addresses:

> [The] testimony makes clear that Smith did not have the
> materials requested by the plaintiffs when they asked for
> them, nor did he have them at the time plaintiffs filed suit. . . .
> Smith did not destroy the material in response to litigation,
> nor did he fail to turn over material in his possession. The
> court is forced to conclude here that the material is no longer
> available. If plaintiffs feel the videos are relevant, they will
> have to find other means of introducing the material they
> reference to a jury. Plaintiff's motion to compel discovery will
> be denied on this point.[113]

Judge Munley further rejected Plaintiff's request that the Court

charge the jury with an adverse inference instruction. He explained:

> The court finds that an adverse inference should not apply to
> this material. While the evidence in question was at one time
> within Smith's control, there is no evidence of any
> suppression or withholding of evidence that still exists.

---

[112]  ECF No. 607.

[113]  ECF No. 113 at 5–6.

> Though the material is no longer available, that loss of that information occurred before the filing of the lawsuit. No evidence indicates that Smith attempted to hide the testimonials from the plaintiffs. Indeed, Smith offered to assist in finding the material from other sources. In any case, the loss of the material has been accounted for properly. The court will deny the motion for an adverse inference as well.[114]

In my view, application of the law of the case doctrine is appropriate here to preclude Plaintiff's request. Specifically, Plaintiff has put forth no argument suggesting that the circumstances relating to this previously unobtainable evidence have changed. Neither has Plaintiff shown that Defendant was deficient in his duty of supplementation. Moreover, even if I were to reach the merits of this motion for a second time, it is apparent on the facts that the result determined by Judge Munley was appropriate.

I am uncertain, therefore, as to why counsel would make the same filing and expect a different result. Thus, the Court will emphasize again: I will look highly unfavorably on any attempt at trial to circumvent the Court's prior rulings. Plaintiff's request for an adverse inference instruction is inappropriate and denied.

---

[114] Id. at 6–7.

## IV.    CONCLUSION

The pending motions <u>in limine</u>, the punitive damages issue, and the adverse inference instruction request are disposed of in accordance with the preceding discussion. Counsel and the parties are forewarned that the Court will look unfavorably on any attempt to circumvent its pretrial trial rulings, particularly given the narrow scope of this trial. Counsel and the parties are advised to read the Court's Form Motion <u>in Limine</u> Notice, which begins on the next page, in full.

An appropriate Order follows.

BY THE COURT:

<u>s/ Matthew W. Brann</u>
Matthew W. Brann
United States District Judge

### FORM MOTION IN LIMINE NOTICE

**THE COURT PRESUMES THAT COUNSEL AND THE PARTIES WILL HAVE READ THIS NOTICE AND THE ACCOMPANYING MEMORANDUM AND ORDER IN THEIR ENTIRETY AND WILL COMPLY WITH THEM AT TRIAL.**

In light of the district court's power to make pretrial evidentiary rulings on motions in limine, it has been sad that "[i]n a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law."[115] "It is the province of the trial judge to weigh any materiality against any prejudice and, unless the judge's reading is 'off the scale,' his discretion is not abused."[116]

It necessarily follows that a violation of a district court's motion in limine ruling is "highly improper" and often risks inappropriately "affect[ing] the jury's verdict."[117] For obvious reasons, counsel and the parties are hereby on notice that this Court looks unfavorably on attempt

---

[115] Quercia v. United States, 289 U.S. 466, 469 (1933) (Hughes, C.J.).

[116] United States v. Shelley, 405 F.3d 1195, 1201 (11th Cir. 2005).

[117] McWhorter v. City of Birmingham, 906 F.2d 674, 677 (11th Cir. 1990).

to circumvent pretrial rulings and will not hesitate to impose sanctions on any offending counsel or party accordingly for an attempted or realized violation. A district court's determination as to whether a motion <u>in limine</u> has been violated, like other evidentiary rulings, is reviewed for abuse of discretion.[118]

One commentator has summarized that if a party violates a court's ruling on a motion <u>in limine</u>, the trial judge may pursue any number of remedies, including but not limited to:

(1)    Instructing the jury to disregard the statement or question;

(2)    Declaring a mistrial on motion by any prejudiced party and charging the entirety of the aggrieved party's fees and costs to the offending party; and

(3)    Imposing any other sanctions deemed appropriate on the offending party or lawyer.[119]

"The type of sanction or sanctions imposed will usually depend on the gravity of the violation and whether it is found to be innocent or

---

[118]    <u>United States v. Avery</u>, 295 F.3d 1158, 1181 (10th Cir. 2002).

[119]    Robert E. Larsen, <u>Navigating the Federal Trial</u> § 4:12 (2016 ed.).

deliberate."[120] "The inherent powers of federal courts are those which are

necessary to the exercise of all others."[121]  "A trial court's inherent powers

unquestionably include the power to assess attorney's fees against any

counsel who willfully abuses judicial process or otherwise conducts

litigation in bad faith."[122] "Assessment of attorney's fees and other costs . . .

serve[s] to protect the trial court's control of the trial process by deterring

similar conduct in the future, and [ ] promote[s] the just, speedy, and

inexpensive determination of actions consistent with Federal Rule of Civil

Procedure 1. The sanctions also [ ] partially remedy the prejudice to [the

aggrieved] and punish (and hopefully reform) [the offender]."[123]

    The legal proposition that a district court may impose sanctions,

such as the assessment of fees and costs or the granting of a new trial as a

consequence of counsel or a party violating a motion in limine ruling holds

true whether such violation occurs during the presentation of substantive

---

[120]  Id.

[121]  Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (internal citation omitted).

[122]  Barnd v. City of Tacoma, 664 F.2d 1339, 1342 (9th Cir. 1982).

[123]  Id. (internal citation omitted).

evidence or in the advocate's opening statements, closing arguments, rebuttals, or through stray comments during trial.[124] A violation also occurs if counsel or a party attempts to introduce excluded evidence or testimony in any derivative form, including but not limited to: trial or deposition transcripts, hearsay statements, or stray comments by counsel, the parties, or a party's witness.

"An objection is required to preserve error when an opponent, or the court itself, is claimed to have violated a motion <u>in limine</u> that was granted."[125] "The policy behind this rule is to discourage counsel from refraining from making an objection at trial in order to reserve the opportunity to assert reversible error on appeal."[126]

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

---

[124]   <u>McWhorter</u>, 906 F.2d at 676.

[125]   <u>Wilson v. Vermont Castings, Inc.</u>, 170 F.3d 391, 395 n.7 (3d Cir. 1999).

[126]   <u>United States v. Roenigk</u>, 810 F.2d 809, 815 (8th Cir. 1987).