**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MEAGAN YOUNG, | : | No. 3:07-CV-00854 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BRUCE H. SMITH, JR., | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**SEPTEMBER 6, 2017**

## I.    BACKGROUND

This civil rights action has come to be known for all of the wrong reasons.

Sad to say, after ten years of protracted and unnecessarily contentious litigation, it

appears that all Plaintiff's counsel, Cynthia L. Pollick, Esquire, has managed to

accomplish is disrespecting this Court as an institution and embarrassing herself in

the eyes of many of its constituents.

The instant chapter in this litigation stems from a fee petition submitted by

Ms. Pollick for nearly three-quarters of a million dollars, a fee petition that at

times, felt more like an attempted bank robbery than a genuine effort to recover a

reasonable fee bill. Indeed, Ms. Pollick "prevailed" on only one claim against one

defendant in this odyssey of a litigation—and I use the term "prevailed"

exceptionally loosely. In fact, opposing counsel, after having offered settlements as

high as $150,000.00 that Ms. Pollick rejected, made this case go away for a nuisance value of $25,000.00. That settlement was made as against one defendant on one claim in a litigation that previously involved teachers, principals, school administrators, and a barrage of educational and civil rights claims. Because of that $25,000.00 nuisance settlement, effected pursuant to a Federal Rule of Civil Procedure 68 offer of judgment, Ms. Pollick now contends that she is entitled to $727,000.00 in fees. That mindset is equal parts brazen and delusional.

As the late Honorable Max Rosenn, writing for the United States Court of Appeals for the Third Circuit explained, counsel "are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court . . . [they] must exercise care, judgment, and ethical sensitivity in the delicate task of billing time and excluding hours that are [vague, redundant, excessive or] unnecessary."[1] "If, after following the proper procedures, the Court remains convinced that [the] hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all."[2] In submitting the instant fee petition, Ms. Pollick, whose practice, I note, is based in the very same county that Judge Rosenn called home,

---

[1]   *Hall v. Borough of Roselle*, 747 F.2d 838, 842 (3d Cir. 1984).

[2]   *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010) (Hardiman, J.).

has not only failed to live up to her duty as an officer of this Court—she has, as on numerous prior occasions, thumbed her nose at it. Such defiance ceases today.

Ms. Pollick's fee petition is "mind boggling" and "outrageously excessive."[3] In fact, it is more than that. The vast majority of Ms. Pollick's entries are larded with excreta unbecoming of any attorney in this District (and certainly unbillable to a client under any stretch of the imagination). For example, in the portions of her fee bill that I reviewed before striking it in full, Ms. Pollick submitted upwards of 350 time entries with descriptions like "Correspondence with Patti [her client's mother]"; "Correspondence from Patti"; "Correspondence with Patti about issue"; "Correspondence from Patti about issue"; "Correspondence with Patti thanking her for update"; "Correspondence with Patti thanking her for information"; "Correspondence with Patti checking in on Meagan [client's daughter]"; "Correspondence from Patti advising she is putting stuff behind her"; "Correspondence with Patti telling her glad she's giving herself a break" and so on, *ad nauseum*.[4]

---

[3] *Clemens v. New York Central Mutual Fire Ins. Co.*, No. CV 3:13-2447, 2017 WL 3724236, at *27 (M.D. Pa. Aug. 29, 2017) (Mannion, J.) (denying and referring for disciplinary action a vague and excessive fee petition that sought $1 million on a $125,000.00 settlement/punitive damages verdict).

[4] Oddly, although Ms. Pollick billed excessive hours for administrative and clerical tasks, she remarkably devoted no more than two to three hours each time she actually engaged in substantive legal work, such as for brief writing.

These raw, unprocessed entries, which appear at Appendix A of this Memorandum Opinion, are inconsiderately supplied in what appears to be size 8-point font or smaller, comprise 44 separate pages, and frankly should sicken both bench and bar. This is not, I note, Ms. Pollick's first foray into sanctions hearings over questionable litigation practices and excessive billing in particular. Quite the opposite, Ms. Pollick has previously managed to resolve Rule 11 motions levied against her through extrajudicial means in a 2005 case before the Honorable A. Richard Caputo of this Court,[5] and both the United States Court of Appeals for the Third Circuit and the judges of this Court have penned what only can be described as a worn jurisprudence on Ms. Pollick's vexatious litigation conduct and outlandish fee petitions. In a number of those cases, courts have had to weed through pages of improper entries, reduce Ms. Pollick's submissions by several hundred thousand dollars, and warn Ms. Pollick repeatedly. "Suffice it to say, [Ms. Pollick] is simply not getting the message."[6]

Without a doubt, billable descriptions of this nature, accompanied with a glut of other administrative entries not properly billable as attorney time and

---

[5]   *Kosciolek v. Local 104 International Association of Fire Fighters*, 3:04-cv-01920, at ECF No. 31 (requesting that the Court impose Rule 11 sanctions against Ms. Pollick for "plung[ing] headlong into the pursuit of this legally baseless Motion" with arguments that were "totally nonsensical" and had "absolutely no factual basis in the record").

[6]   *Keister v. PPL Corp.*, 318 F.R.D. 247, 254 (M.D. Pa. 2015) (imposing $116,000.00 sanction for Rule 11 violation), *aff'd*, *Keister v. PPL Corp.*, 677 F. App'x 63 (3d Cir. 2017) (Fisher, J.).

entries that lack any detail whatsoever, are frustrating and improper on their face.

So too does it appear, however, that Ms. Pollick has edged precariously close the

operative ethical boundaries by billing every incoming and outgoing

correspondence in separate 6-minute entries (or more). Thus, even if it took Ms.

Pollick one minute to read an email and one minute to respond back (two minutes

total), she has billed all of those communications (hundreds of times over) in two

separate 6-minute increments. Such practice essentially pads her time in ten-minute

increments (12 minutes versus 2 minutes) and reeks both of impropriety and lack

of judgment. All of these details will be included in my submission of this matter

to the Disciplinary Board of the Supreme Court of Pennsylvania for that regulatory

body's review.

It would be enough to deny Ms. Pollick's petition in whole if it alone was

comprised of entries of irrelevant correspondence, administrative tasks not billable

as attorney time, hours spent reading blogs, and discussions with local reporters,

but my frustration with the instant fee petition does not stop there. Instead, Ms.

Pollick's conduct is ripe for sanctioning because she submitted the instant fee bill

no less than five months after Judge Caputo wrote a thorough dissertation on the

improprieties of such fee bills in a case litigated by Ms. Pollick herself.[7] In that

---

[7]   *See Souryavong v. Lackawanna Cty.,* 159 F. Supp. 3d 514, 520 (M.D. Pa. 2016) ("[T]he Rule 68 offer must be considered in determining whether the lodestar calculation of a reasonable

decision, Judge Caputo set forth thorough examples of improper and excessive entries, before also trimming the reasonable hourly rate. So too does it follow on the heels of a decision by my colleague the Honorable Malachy E. Mannion that was affirmed by the Third Circuit, in which he denied one of Ms. Pollick's excessive fee bills altogether.[8]

What was Ms. Pollick's response to these unequivocal rebukes? Unfortunately, she did not choose to do things the right way. Instead, she immediately submitted another, arguably more questionable, petition to me within months of those decisions. This misconduct and this utter waste of our District's resources must stop. Fee motions are not meant to spawn parallel litigations, and civil rights cases are not get-rich-quick tickets. To the extent that Ms. Pollick or any other attorney in this District misperceives either of those facts, I have no qualms joining the chorus that seeks to set such behavior straight.

If that was not enough, perhaps the most repugnant of all aspects of Ms. Pollick's fee petition is that she asks to be compensated for time necessitated by her own earlier misconduct. Strikingly, the Defendants here were granted a new trial, a remarkably rare remedy, in light of a tainted jury verdict attributable Ms.

---

attorney fee is excessive and whether a downward departure from the lodestar is warranted.").

[8] *Carroll v. Clifford Twp.*, 625 F. App'x 43 (3d Cir. 2015) (Vanaskie, J.).

Pollick's inflammatory conduct in open court. She has now billed not only for the time associated with that trial but also for additional time and preparation necessitated by what can only be described as willful, bad faith, and vexatious behavior. So too has she billed for the subsequent trial and all of its attendant time. Not only was that trial a do-over of her own making, but it also resulted in a complete defense verdict.

To provide some context as to why Ms. Pollick's billing for such time is exceedingly shameless, I note that my colleague the Honorable Yvette Kane presided over the first trial in this action and granted the attendant new trial motion, all before I came on the bench. She described Ms. Pollick's behavior as follows, in what has become an oft-quoted passage in the history of this case:

> The Court finds that Plaintiff's counsel did engage in improper conduct during the course of trial by persistently asking questions that had been ruled improper for the purpose of characterizing, or mischaracterizing, evidence.
>
> . . .
>
> [For example,] unprompted and in the presence of the jury, Plaintiff's counsel exclaimed:
>
> MS. POLLICK:   I'm going to show his nakednews.com, what he showed the children, which absolutely goes to hostile educational atmosphere because of the fact that these girls had thongs, and he shows this to children that are 16 years old—
>
> THE COURT:   Counsel.

MS. POLLICK:     —in their bras and thongs.

. . .

That Plaintiff's counsel's conduct was improper is obvious. Throughout the course of trial counsel alternatively asked about evidence that had been ruled inadmissible, asked for lay opinion testimony, and asked for testimony without foundation. The purpose of this tactic was apparently to inflame the jurors by repeating outrageous conduct that is alleged to have occurred as fact enough times so the jurors would believe it did occur—even if no evidence was introduced that would support such a finding. To cite just one example, the Court notes that counsel asked various witnesses about Defendant Smith discussing "masturbation" a total of seven times during trial in addition to mentioning it in her closing argument. However, there is no evidence in the record that Defendant Smith ever even used the word in Plaintiff's presence. The effect of counsel's conduct is obvious: the jury was inflamed and misled into believing there was evidence that Defendant Smith discussed masturbation with Plaintiff.[9]

On appeal, the Third Circuit affirmed Judge Kane's decision, noting that she "cataloged an extensive record of misconduct by the Young's counsel throughout the First Trial."[10] Indeed, the panel noted that by engaging such misconduct, Ms. Pollick "attempted to inflame the jury by repeatedly asking improper questions and characterizing the evidence."[11] "We agree that such misconduct permeated the

---

[9]     *Young v. Pleasant Valley Sch. Dist.*, 2012 WL 1827194, at *27–29 (M.D. Pa. May 18, 2012) (internal footnotes omitted), *aff'd*, 601 F. App'x 132 (3d Cir. 2015) (Fisher, J.).

[10]    *Young v. Pleasant Valley Sch. Dist.*, 601 F. App'x 132, 135 (3d Cir. 2015) (Fisher, J.).

[11]    *Id.*

trial," the panel wrote, "making it 'reasonably probable' that the misconduct prejudicially influenced the verdict.[12]

So that the record is clear up-front, I also note that this case was originally assigned to the Honorable James M. Munley prior to Judge Kane. As defense counsel characterizes it, Ms. Pollick's "obdurate behavior" commenced here when she filed a motion asking that Judge Munley recuse himself because he was biased against her.[13] In fact, that was not even the first time in which Ms. Pollick moved to recuse a sitting judge of this District. To the contrary, in a 2006 matter captioned *Hill v. City of Scranton*, the Honorable John E. Jones III denied a motion to recuse in which Ms. Pollick "[a]t bottom . . . argue[d] that because we have in her view, been 'mean' to her, we should now depart the case *sub judice,* as well as presumably any other case in which she is involved that lands on our docket."[14] "[I]ndeed," Judge Jones observed, "we have never imposed any manner of sanctions against [Ms. Pollick] despite our warnings."[15] Judge Jones advised Ms. Pollick to "endeavor to be more appropriate in her interactions with this Court,

---

[12]   *Id.* (quoting *United States v. Riley,* 621 F.3d 312, 339 (3d Cir.2010)).

[13]   *See* ECF No. 185.

[14]   No. 4:CV 01-744, 2006 WL 401801, at *2 (M.D. Pa. Feb. 21, 2006).

[15]   *Id.* at *4.

since doing so would immeasurably enhance her advocacy skills, and thus serve her clients better."[16]

Some say that engaging in the same improper conduct time and time again while expecting a different result is indicative of mental instability—and that may be. But if Ms. Pollick is dumb, she is dumb like a fox. Indeed, in connection with Ms. Pollick's questionable fee petition, I was forced to conduct what devolved into the perhaps the strangest show cause hearing in my tenure with this Court. On July 13, 2017, I invited Ms. Pollick, along with defense counsel, to speak to the propriety of sanctions in this matter as punishment for Ms. Pollick's vexatious conduct and legally unsupported fee request.[17] What happened next was remarkable.

For half a day, I was transported to a universe devoid of logical principles and fundamental notions of relevance. Ms. Pollick's strange and obstreperous conduct at the hearing also flaunted any semblance of propriety and decorum in

---

[16] *Id.* During oral argument in this case in July 2017, Ms. Pollick raised the notion for the first time that I also harbored some form of bias against her or her case. Quite the contrary, I will discipline Ms. Pollick herein on account of her vexatious and excessive fee petition. I have not considered the validity of her underlying civil rights action, except and to the extent that her not prevailing on the majority of her claims should impact her request. Further, Ms. Pollick has appeared on my docket on only one other occasion before this case. In that other matter, *Tayoun v. City of Pittston*, 39 F. Supp. 3d 572 (M.D. Pa. 2014), I denied a motion for summary judgment, ruling in favor of Ms. Pollick's client.

[17] Although Ms. Pollick objected to my holding the hearing, *see* ECF No. 653, I believed that it was in conformity with prevailing Third Circuit law and accordingly overruled her objection. *See, e.g.*, *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010) (Hardiman, J.) ("We have held that if reasonable market rates are in dispute, a hearing *must* be conducted.").

federal court, sadly harkening back to the time I previously endured a week-long trial in this matter. During the hearing, I requested the presence of additional court security guards and an Assistant United States Marshal, as it appeared that Ms. Pollick was on the verge of a breakdown on no less than two separate occasions.

Ms. Pollick's edginess was palpable: she refused to agree, for instance, that five months' time separates February from July. And when I confronted her with all of the previous authorities deeming her very same submissions as non-compensable (indeed, most using the same exact words as these present here), she rebuffed my invitation to submit an amended motion, reasoning instead that amendment would make it appear that she had done something wrong. Considering the frequency with which we permit and encourage amendment in the federal system, I was entirely at a loss to have heard that response. Presumably, permissive amendment beats monetary sanctions.

Further, I asked Ms. Pollick at the show cause hearing why she billed in the manner that she did and why she failed to revise her billing entries before submitting them. Rather remarkably, she suggested that it is her right to submit whatever billed entries she so pleases (valid or not), and that it is opposing counsel's and the Court's job to parse through her fee bill, challenging those that may be invalid. That is an astonishing misperception or perhaps a blatantly dishonest response.

Make no mistake: it is also wholly inaccurate. Prevailing plaintiffs have "a duty to make some reasonable effort to weed out the fees relating to the unsuccessful claims."[18] "The petitioning attorney has an obligation to weed out hours that are excessive, redundant, or otherwise unnecessary from his or her fee request and bears the burden of proving that the number of hours expended was reasonable."[19] "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."[20] "This restriction is designed to encourage a prevailing party requesting attorneys' fees to exercise the same billing judgment that would have been exercised in the ordinary course of private practice."[21] Accordingly, "[t]he lawyer must not abandon self-restraint or careful billing judgment because of the expectation that the obligation to pay the fee will be statutorily shifted to the losing party."[22]

That Ms. Pollick submitted her fee bill without weeding out improper entries is grounds alone to deny it and impose sanctions. That shortcoming here is not one that can be ameliorated by careful, line-by-line revisions. I attempted to give Ms. Pollick the benefit of the doubt and pursue such an approach at first. However, I

---

[18]  *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 98 (4th Cir. 1993).

[19]  *Gunasekera v. Irwin*, 774 F. Supp. 2d 882, 887 (S.D. Ohio 2011) (internal citation omitted).

[20]  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[21]  *Local Union No. 1992 of Int'l Bhd. of Elec. Workers v. Okonite Co.*, 34 F. Supp. 2d 230, 236 (D.N.J. 1998).

[22]  *Hall v. Borough of Roselle*, 747 F.2d 838, 841 (3d Cir. 1984).

soon discovered that this method was fool's errand: Ms. Pollick's entries are so inappropriate, vague, and duplicative that nearly every one of her thousands of entries needs to be eliminated or refined. Anecdotally, defense counsel, after attempting to strike individual entries with a pen, gave up after billing approximately one hundred hours on the task and simply began crossing out entire pages. His proposed edits appear at Appendix B. My experience was the same. Improprieties in Ms. Pollick's billing methodologies have rotted the very core of her fee petition, and line-by-line elimination is wasteful, fruitless, and not warranted by her conduct.

In perhaps the second-strangest portion of the show cause hearing, Ms. Pollick called opposing counsel John E. Freund, III, Esquire as a witness as if on cross examination (a tactic that she repeats endlessly and ineffectively at trial) and proceeded to pepper him with argumentative questions, which he unsurprisingly handled with impugnable professionalism. Nothing in Ms. Pollick's cross examination of Mr. Freund gave me pause. To the contrary, Ms. Pollick's questioning of her adversary, which I viewed as largely inappropriate from the outset, went over like the descent of the Hindenburg. It was a show cause hearing turned circus under the big top, much like Ms. Pollick's prior trial performance.

Oddly, none of Ms. Pollick's fee affiants showed up to testify on her behalf. Even her clients were notably absent.[23] In addition, I was prepared to and did ask Ms. Pollick's sole affiant at the show cause hearing whether he had ever known Ms. Pollick in a personal capacity, as it came to my attention that just last year, one of Ms. Pollick's affiants in a Luzerne County case, Carlo Sabatini, Esquire, had apparently engaged in a romantic relationship with her in the past:

> THE WITNESS: Your Honor, if I may? I have a duty to the Court, and I don't know to the extent that you consider this relevant, but I'm surprised that it wasn't brought out. I had a prior relationship with Attorney Pollick shortly after I passed the bar for a period of time.[24]

Finally, the most troubling portion of the hearing occurred at its conclusion, when Anthony P. Trozzolillo, Esquire, an attorney who purportedly is engaged in a romantic relationship with Ms. Pollick and who had been seated in the gallery to presumably show his support for her, sprang from his seat as I left the bench, approached opposing counsel's table, and cursed at Mr. Freund for "jumping on

---

[23] Unfortunately, the extent to which Ms. Pollick's clients even continue to be aware of this action or simultaneously sanction its continuance has been unclear to me for at least the past year. Whether they were aware of the $150,000.00 offer and turned it down on a knowing and informed basis is also unclear to me. Instead, in recent memory and perhaps since its inception in truth, Ms. Pollick has cannibalized her client's lawsuit so that it serves one end: collection of what she believed would be a fat fee bill.

[24] *Souryavong v. Lackawanna Cty.*, Tr. of January 26, 2016 Oral Arg., at 27:05–14.

the Rule 11 bandwagon."[25] After Mr. Trozzolillo directed a few "bullshits" and "Goddamns" in Mr. Freund's direction and began to invade his physical space, Court staff asked the security guards to separate Mr. Trozzolillo from opposing counsel before he and Ms. Pollick were directed out of the building. At my direction, an Assistant United States Marshal was asked to escort Mr. Freund and his paralegal to their vehicle.[26]

All of that nonsense aside, this motion is about the impropriety of Ms. Pollick's present fee petition, the waste of public and private resources it has engendered, and her persistent refusal to heed prior warnings of this Court and the Third Circuit. To what have all of those reprimands led? In perhaps her grand finale, Ms. Pollick has asked to be paid three-quarters of a million dollars for time that she purportedly expended to secure a $25,000.00 settlement. The entries supporting that request are so vague, duplicative, and improper, that it must be denied in full.

---

[25] Curiously, Mr. Freund's paralegal was correct when she observed that Mr. Freund had included an entire section devoted to sanctions in his opposition brief to Ms. Pollick's fee petition. Perhaps Mr. Trozzolillo should read the operative papers more closely next time before denigrating this Court and embarrassing himself for no reason.

[26] I am told that my experiences with Ms. Pollick are not unique. In fact, it appears that she experienced a brief hiatus in her legal practice in the summer of 2015 when she was reported missing by her mother and charged with trespassing at a local hospital. http://wnep.com/2015/07/19/state-police-investigating-missing-woman/; http://thetimes-tribune.com/news/lawyer-was-charged-with-trespassing-at-hospital-1.1915273.

In sum, because Ms. Pollick's fee petition in the amount of $727,000.00 is unreasonable in light of the outcome that she achieved in this litigation on behalf of her client, was excessive and wholly unsupported by the billing records and the applicable law, and vexatiously multiplied this case's proceedings. I will deny Ms. Pollick's motion for fees in full. Moreover, Ms. Pollick's conduct will be referred the Disciplinary Board of the Supreme Court of Pennsylvania. In addition, because Ms. Pollick's submissions simultaneously violated 28 U.S.C. § 1927 and Federal Rule of Civil Procedure 11, I will impose sanctions in the amount of $25,000.00 under each provision, to run concurrently. Monetary sanctions are the minimum appropriate remedial measure because Ms. Pollick's conduct follows a number of detailed decisions that instructed her to cease filing such excessive petitions. Last, I will encourage my colleagues to consider whether the Board of Judges should revoke the general admission of practitioners who take advantage of the submissions of fee petitions in civil rights cases in this District.

## II.    LAW

Title 42, United States Code, Section 1988(b) provides that "[i]n any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." "The Supreme Court has given a 'generous formulation' to the term 'prevailing party,' stating that 'plaintiffs may be considered prevailing

parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"[27] As the Supreme Court of the United States has further emphasized, "Section 1988 serves an important public purpose by making it possible for persons without means to bring suit to vindicate their rights. But unjustified enhancements that serve only to enrich attorneys are not consistent with the statute's aim."[28]

Fee disputes hinge upon "the 'lodestar' formula," which requires multiplying the number of hours reasonably expended by a reasonable hourly rate."[29] In determining a reasonable fee, district courts in this Circuit have been instructed to apply "a burden-shifting type of procedure."[30] "A fee applicant bears the burden of documenting the applicable hourly rate."[31] A reasonable rate is "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity."[32] "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are

---

[27] *Truesdell v. Philadelphia Hous. Authority*, 290 F.3d 159, 163 (3d Cir. 2002) (Alito, J.) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433(1984)) (internal quotation marks omitted).

[28] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 559 (2010).

[29] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (Rosenn, J.) (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

[30] *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012) (Fisher, J.).

[31] *Evans v. Port Auth. of N.Y. & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001).

[32] *Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988) (Becker, J.).

in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[33]

"Once the plaintiff has established her prima facie case, the defendant may contest the reasonableness of the rate with 'appropriate record evidence.'"[34] Importantly, hourly rates previously set for the movant may be considered if those rates "were set for the same attorney and for the same type of work over a contemporaneous time period."[35]

Next, the court considers the number of hours reasonably expended on the litigation. Similar to its review of the reasonable rate, the court may exclude hours that were "excessive, redundant, or otherwise unnecessary."[36] Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed."[37] "[I]t is appropriate for the Court to treat the fees in the manner in which the clients would be treated if the clients were paying the fees directly."[38]

---

[33]  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

[34]  *Carey*, 496 F. App'x at 237 (quoting *Evans*, 273 F.3d at 361).

[35]  *Carey*, 496 F. App'x at 237. *See also Dee v. Borough of Dunmore*, 548 F. App'x 58, 63 (3d Cir. 2013) (Hardiman, J.).

[36]  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[37]  *Id.*

[38]  *Smith v. Borough of Dunmore*, No. CIV A 3:05-CV-1343, 2008 WL 4542246, at *4 (M.D. Pa. Oct. 9, 2008) (Caputo, J.), *aff'd*, 633 F.3d 176 (3d Cir. 2011) (Jordan, J.).

"That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."[39] Thus, "[f]ollowing an objection to a fee request, district courts have discretion to adjust the hours and rates and to increase or decrease the lodestar based on other considerations raised by the respondent."[40] The court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."[41]

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."[42] "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"[43] "We have already observed that if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'"[44]

---

[39] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[40] *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013) (Hardiman, J.).

[41] *Hensley*, 461 U.S. at 436–37.

[42] *Id.* at 440.

[43] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley,* 461 U.S. at 436).

[44] *Farrar*, 506 U.S. at 114 (quoting *Hensley,* 461 U.S. at 436).

A fee award is appropriate "unless special circumstances would render such an award unjust."[45] "Courts that find special circumstances justifying the denial of attorney's fees to prevailing plaintiffs usually point to some conduct by plaintiffs which unnecessarily caused or lengthened the litigation."[46]

To that end, it is worth repeating Judge Rosenn's admonition noted at the beginning of this opinion:  attorneys "are quasi-officers of the court and they are expected to be careful and scrupulously honest in their representations to the court . . . [they] must exercise care, judgment, and ethical sensitivity in the delicate task of billing time and excluding hours that are [vague, redundant, excessive or] unnecessary."[47] Thus, "[i]f, after following the proper procedures, the Court remains convinced that [the] hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all."[48]

---

[45] *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968); *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 417 (1978) (observing that "a prevailing plaintiff ordinarily is to be awarded attorney's fees in all but special circumstances").

[46] *Com. v. Local 542, Int'l Union of Operating Engineers*, No. CIV. A. 71-2698, 1999 WL 54922, at *2 (E.D. Pa. Jan. 19, 1999).

[47] *Hall v. Borough of Roselle*, 747 F.2d 838, 842 (3d Cir. 1984).

[48] *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010) (Hardiman, J.).

## III.   ANALYSIS

Ms. Pollick's proposed hourly rate and billable expenditures are so excessive and disconnected from the circumstances of this case that her fee bill will be denied in its entirety. The following sections explain why her hourly rate is unrealistic, illustrate the excessiveness of her entries, and explain why sanctions under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927 are proper here.

### A.   Ms. Pollick's Requested Hourly Rate Of $400.00, Which She Has Never Before Been Awarded In Federal Court, Is Inflated, Unreasonable, And Not Reflective Of Her Performance.

"To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[49]   That prima facie burden has not been met here.

Fundamentally, the determination of a reasonable rate is dictated by "the prevailing market rates in the relevant community."[50] Moreover, "in the ordinary case," the district court's rate-setting determination should "focus on the

---

[49]   *Blum*, 465 U.S. at 896.

[50]   *Rode*, 892 F.2d at 1183.

community in which the case was litigated," not the community from which the attorney hails.[51]

To that end and to facilitate future fee disputes, in *Beattie v. Line Mountain School District*, a sex-based civil rights action, I reset the standard forum rates for attorneys in the Williamsport division of this Court to range from $150 to $325 per hour, depending on the attorney's experience, the complexity of the litigation, and the quality of the submitted work product.[52] Ms. Pollick's fee petition ignores *Beattie*.

With that background in mind, I now turn to Ms. Pollick's proposed $400.00 hourly rate and the historical rates she has been awarded in this District. In 2011, the Honorable Sylvia H. Rambo of the Harrisburg division of this Court reduced counsel for Plaintiff's requested fee of $300.00 per hour to $225.00 per hour in a lengthy first amendment retaliation case.[53] Judge Rambo cited to *Lohman v. Duryea Borough*, a 2008 decision in which the Judge Caputo had reduced Plaintiff's hourly rate of $215.00. As here, Judge Rambo contrasted counsel for Plaintiff's qualifications with those of Barry Dyller, Esquire who had also supplied

---

[51]  *Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). The Middle District of Pennsylvania is comprised of three divisions: one each in Williamsport, Harrisburg and Scranton/Wilkes-Barre. The bulk of this action and the portions primarily comprising this motion occurred in the Williamsport division.

[52]  No. 4:13-CV-02655, 2014 WL 3400975, at *10 (M.D. Pa. July 10, 2014).

[53]  *Carey v. City of Wilkes-Barre*, 2011 WL 1900169, at *2 (M.D. Pa. May 19, 2011), *aff'd*, 496 F. App'x 234 (3d Cir. 2012) (Fisher, J.).

an affidavit in that case.[54] "It is this court's opinion," Judge Rambo concluded, "that Pollick's length of practice and experience does not entitle her to a $300.00 per hour rate."[55] On appeal, the Third Circuit reasoned that "[b]ecause reasonable finders of fact could differ as to whether Pollick established that her hourly rate was reasonable," Judge Rambo's decision to reduce the effective hourly rate to $225.00 would be affirmed.[56]

In *Lohman v. Duryea Borough*, Judge Caputo, of the Scranton/Wilkes-Barre division of this Court, reduced a requested fee of $300.00 per hour by counsel for Plaintiff to $215.00 per hour.[57] Importantly, Judge Caputo rejected Plaintiff counsel's argument that "the Court should only consider the service of other attorneys in the plaintiffs' bar in the community."[58] That was unpersuasive, as a fee-setting court is "not limited to the defense bar or the plaintiffs' bar."[59] Rather, it "must consider the attorney's experience and skill, and compare it to rates for

---

[54]   *Carey*, 2011 WL 2011 WL 1900169, at *2 ("Throughout the briefing on this issue, contrasts have been made between Barry Dyller and Plaintiff's counsel, Cynthia L. Pollick. Dyller is reported to have been in practice for more than fifteen (15) years longer than Pollick, has tried ninety cases, and has represented clients in over one hundred civil rights cases. Dyller has been on the executive board of the Civil Rights section of the American Association for Justice, chair-elect of its Civil Rights section, and chairman in July 2009. Attorney fee rates for Dyller have been approved in amounts ranging from $300.00 to $375.00 per hour.").

[55]   *Id.*

[56]   *Carey*, 496 F. App'x at 238.

[57]   2008 WL 2951070, at *8 (M.D. Pa. July 30, 2008), *aff'd sub nom. Lohman v. Duryea Borough*, 574 F.3d 163 (3d Cir. 2009).

[58]   *Id.*

[59]   *Id.*

similar services by attorneys with similar skill, experience, and reputation."[60] In

that vein, Judge Caputo held that an hourly rate of $300.00 was "not appropriate"

in light of "Ms. Pollick's skill, reputation, and experience in the community."[61]

Instead, in line with several other practitioners bearing qualifications similar to

Plaintiff counsel, Judge Caputo reduced her fee request to $215.00 per hour.[62] On

appeal, the Third Circuit concluded that "there was ample evidence to support the

Court's lower rate" and the district court "did not clearly err in choosing the rate

that it did."[63]

 Little has changed since *Lohman* and *Carey*. In fact, as recently as 2016,

Judge Caputo reduced Ms. Pollick's requested fee of $400.00 per hour to $250.00

per hour. In *Souryavong v. Lackawanna County*, Plaintiff's counsel presented

Judge Caputo with substantially the same set of affidavits that she did here.[64] The

Court in *Souryavong* noted several critical discrepancies between the attributes of

Ms. Pollick's practice and that of her proposed comparators. For instance, Judge

Caputo found that "Attorney Pollick fails to demonstrate how her 'skill,

experience, and reputation' are comparable to that of Attorney Vito, who has over

---

[60]  *Id.*

[61]  *Id.*

[62]  *See id.*

[63]  *Lohman*, 574 F.3d at 164.

[64]  159 F. Supp. 3d 514, 529 (M.D. Pa. 2016).

fifteen (15) years more experience practicing law than she does."[65]

"Notwithstanding the fact that Attorney Vito has been practicing law for approximately twice as long as Attorney Pollick, Plaintiffs request an hourly rate that is $25.00 higher than that requested by Attorney Vito."[66] Importantly, Judge Caputo emphasized that "the Third Circuit Court of Appeals has affirmed my previous explanation that comparing Attorney Dyller's rates to Attorney Pollick's 'actually tended to show that Pollick's rate was too high, because Dyller ha[s] at least fifteen years more experience than Pollick.'"[67] Moreover, having had the benefit of firsthand experiences with both Mr. Dyller and Ms. Pollick since I entered on duty, my perspective aligns with Judge Caputo's to the extent that Mr. Dyller's experience and emphasis on efficient resolution of matters have tended to yield him more profitable outcomes in a more streamlined fashion.[68]

Remaining faithful to the Third Circuit's burden-shifting framework as outlined in *Carey*, I hold that counsel for Plaintiff has failed to establish *prima facie* reasonableness. Regardless, even assuming that her rates are facially reasonable, the Defendants have submitted a mountain of evidence and applicable case law that render her request entirely suspect.

---

[65] *Id.* at 527.

[66] *Id.*

[67] *Id.* at 528 (quoting *See Carey v. City of Wilkes–Barre*, 496 Fed.Appx. 234, 238 (3d Cir.2012)).

[68] *See, e.g.*, *Giamboi v. Prison Health Services, Inc. et al.*, No. 3:11-cv-00159.

Counsel for Plaintiff's fee affidavit recites that she is a 2007 graduate of Gerry Spence's Trial Lawyers College and a 2002 graduate, having obtained her "Law degree" from the University of Pittsburgh in 1999.[69] She states that she has practiced law for seventeen years.[70] According to Ms. Pollick, she should receive $400.00 per hour because she has "been approved the $400 per hour rate by opposing counsel in the matter of *Vito DePietro v. USDOJ*, USM-2013-00357," and because she "received $400 per hour in connection with payment of attorney fees in the matter of *Harris v. City of Scranton*, 13-2282, that was resolved with counsel; however opposing counsel did not specifically agree to that hourly rate, yet that was the rate paid."[71]

Both *Vito DePietro* and *Harris* have previously been deemed insufficient to support a $400.00 hourly rate. In *Souryavong*, Judge Caputo wrote that counsel had failed to "provide any information about *Vitro* [*sic*] so that I can assess whether Attorney Pollick's legal services in *Vitro* [*sic*] were similar to her legal services provided here."[72] The same holds true here. I have searched the national PACER

---

[69]   ECF No. 635, Ex.3, at ¶ 2.

[70]   *Id.* ¶ 9.

[71]   *Id.* ¶¶ 21–22. Ms. Pollick's fee petition also emphasizes that a number of her cases have reached the Third Circuit and one has even reached the Supreme Court. I fail to see the relevance of these statistics as the instant fee petition. To the contrary, they seem to suggest that Ms. Pollick has failed to prevail before district courts and has engaged in significantly more appeals than other counsel over the long run.

[72]   159 F. Supp. 3d at 526.

case locator database and no results other than a 2012 bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Pennsylvania are returned for a litigant named "Vito DePietro." To what court Ms. Pollick refers when she cites to a docket number beginning "USM" is unclear. No further details about the *DePietro* proceeding are supplied. Therefore, I cannot rely upon it in setting Ms. Pollick's hourly rate.

In addition, I note that Ms. Pollick's motion for attorney fees was withdrawn, and therefore was not approved by Order of this Court. *Harris* is ineffective, because "[i]n such cases, the court has no discretion to reduce the requested rate, even if it is unreasonable."[73]

I have reviewed the supporting affidavits that Ms. Pollick submitted, and several are identical to those from *Sourvayong*.[74] In fact, two of the affidavits still bear the wrong caption and were originally submitted in a 2009 case entitled *Rose v. Barrett Township, et al.* before the Honorable Robert D. Mariani. *Rose* was a section 1983 action asserting claims for false arrest, false imprisonment, and malicious prosecution.[75] Another was submitted in connection with a 2004 case

---

[73]  *Souryavong*, 159 F. Supp. 3d at 526.

[74]  *See* ECF No 650, Exs. 1–3.

[75]  *See generally Rose v. Barret Twp. et al.*, No. 3:09–cv–1561, 2013 WL 246640 (M.D.Pa. Jan. 18, 2013).

before Judge Caputo.[76] Of course, the outdated nature of these submissions calls into question their sustained validity.

In addition, I echo Judge Caputo's very same observation from *Sourvayong* regarding the applicability of the substance of these affidavits: "Plaintiffs do not demonstrate how the services provided by Attorney Vito and Attorney Dyller in *Rose* would be comparable to the services provided by Attorney Pollick in this FLSA action, since the two (2) cases do not involve similar claims, and therefore do not involve similar services."[77] "Moreover, the motion for attorney fees in *Rose* was ultimately withdrawn, and therefore the requested rates were never ruled upon or approved by any court."[78]

The remaining affidavits do not nudge Ms. Pollick's petition beyond the line of reasonableness. One affiant, Ralph E. Lamar, Esquire, has practiced in Colorado while maintaining his Pennsylvania license since 2010.[79] Unlike Ms. Pollick, Mr. Lamar has been a member of the bar for nearly 30 years, has specialized in employment law since 1992, has tried cases to verdicts in excess of $3.4 million,

---

[76]   *See* ECF No. 650, Ex. 3.

[77]   *Souryavong*, 159 F. Supp. 3d at 527 (M.D. Pa. 2016) (citing *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (Rosenn, J.) (explaining that fee-setting courts must "assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for *similar services*").

[78]   *Souryavong*, 159 F. Supp. 3d at 528.

[79]   *See* ECF No. 635, Ex. 4.

$2.3 million, $1.3 million, $850,000.00 and $200,000.00.[80] Mr. Lamar has also written *amicus curiae* briefs for the United States Courts of Appeal for the Sixth and Eleventh Circuits.[81]

Ms. Pollick's remaining affidavit in support was filed by Jonathan S. Comitz, Esquire.[82] Mr. Comitz does not state his hourly rate, but throughout the affidavit suggests that $400.00 per hour is a reasonable rate for Ms. Pollick. According to Mr. Comitz, his "basis for this opinion is that the federal courts have adopted the community legal services ("CLS") rate standard with this type of litigation."[83] Again, borrowing directly from Judge Caputo's analysis in *Souryavong*: "Attorney Comitz's reliance on rates in the Eastern District of Pennsylvania do not support his assertion that these rates are reasonable for Attorney Pollick's work here in the *Middle* District of Pennsylvania. The law is clear that I should be guided by the prevailing rates in the forum of the litigation, which is the Middle District of Pennsylvania, not the Eastern District."[84]

Further, as Defendant points out, "Community Legal Service ("CLS") is funded by the Philadelphia Bar Association and provides free civil legal assistance to low income Philadelphians. Here, there is no evidence that Plaintiffs' were

---

[80]   *Id.* at ¶ 4.

[81]   *Id.*

[82]   ECF No. 635, Ex. 5.

[83]   *See id.* at ¶ 15.

[84]   *Souryavong*, 159 F. Supp. 3d at 526.

either residents of Philadelphia or had a low income that would have qualified

them for the assistance of the Philadelphia Bar Association."[85] I agree.[86]

I also note that none of Ms. Pollick's fee affiants appeared to testify on her

behalf at the evidentiary/show cause hearing in July 2017. Ms. Pollick attempted to

subpoena two local plaintiff's attorneys, Clifford A. Rieders, Esquire, and Michael

J. Zicolello, Esquire. I granted a motion by Mr. Rieders to quash Ms. Pollick's

subpoena, as he lacked any familiarity with the instant matter or with Ms. Pollick's

abilities. To the contrary, Mr. Zicolello, who also was entirely unfamiliar with this

matter and with Ms. Pollick, agreed to testify in order to opine upon certain of my

previous fee rulings in *Beattie* and *Keister*. Not only was Mr. Zicolello's testimony

irrelevant, but it also undermined his position. Indeed, when Mr. Freund, cross-

examined Mr. Zicolello, the latter admitted that he had never once been awarded

his purported hourly by a federal court. Accordingly, after *Beattie*, *Keister*, and

*Young*, it is clear that the forum rates for attorneys in the Williamsport division of

this Court to range from $150 to $325 per hour, depending on the attorney's

experience, the complexity of the litigation, and the quality of the submitted work

product. Importantly, the rates at the upper end of the range necessarily are

---

[85]  *See* ECF No. 642 at 25.

[86]  *See also Evans v. Philadelphia Hous. Auth.*, No. CIV. A. 93-5547, 1995 WL 154872, at *3 (E.D. Pa. Mar. 31, 1995) (Gawthrop, J.), *aff'd sub nom. Smith v. Philadelphia Hous. Auth.*, 79 F.3d 1139 (3d Cir. 1996) ("CLS views lawyers as fungible. That is, a lawyer with fifteen years of experience is a lawyer with fifteen years of experience. Period. . . . To CLS there is no difference among these various practitioners within our concededly eclectic profession.").

reserved for those counsel with the most extensive experience and credentials who exhibit the highest performance in federal court.[87]

Last, I note that that there is often no better gauge of an attorney's skill and expertise, and consequently, their deserved hourly rate, than observing their performance first hand. I have had the opportunity to observe Ms. Pollick and a number of her affiants, including Mr. Dyller and Mr. Comitz, in hearings or conferences and have had numerous occasions to review their written work. Of course, I even had the opportunity to observe Ms. Pollick in a trial in this matter. Without reservation, I would find for the record that Ms. Pollick's written and oral abilities fall well below those of her affiants; indeed, her presentations cannot be placed in the same category as that of Mr. Dyller or even Mr. Comitz.

In response to Ms. Pollick's submissions, Defendant offers the affidavit of Robin B. Snyder, Esquire. Ms. Snyder is an experienced civil rights litigator with over seventeen years of experience.[88] Although she primarily represents defendants in civil rights cases, she avers that she is familiar with the rates charged by skilled

---

[87] Although this action originated in the Scranton division of this Court, the Williamsport venire is the appropriate benchmark to fees in this action. This is an important observation, as this District exhibits a rather sweeping geography with variations in fees throughout. I note that the pertinent summary judgment motions, the second and third trials, and the fee petition and related proceedings were all conducted in the Williamsport division of this Court. Further, it appears that the fees schedule I have set for this division is nevertheless marginally more generous on the higher end of the range than that which might be awarded in the Scranton division of this Court or in the Eastern District of Pennsylvania's Allentown division.

[88] *See id.*, Ex. 4.

federal court litigators in this venire, and the most commonly hourly rate is

$250.00 per hour.[89] Ms. Pollick offers nothing to contradict Ms. Snyder's

testimony.

Clearly then, the appropriate hourly rate that Ms. Pollick deserves has

converged in recent years to the $200.00–$250.00 range for similar work

performed at a similar level in similar forums. Moreover, I have taken into account

"the attorney's experience, the complexity of the litigation, and the quality of the

submitted work product," all of which were subpar, in my view, when compared to

similar litigation.[90] The bulk of the litigation also occurred, as detailed more fully

throughout, between 2007 and 2013, which time period largely overlaps with those

at issue in *Souryavong* ($250.00), *Dee* ($250.00), *Carey* ($225.00), *Smith*

($215.00), and *Lohman* ($215.00). Taking all of the above factors into

consideration, it is my determination that $215.00 to $225.00 would have been a

reasonable hourly rate based upon Ms. Pollick's performance during the time

period for the Williamsport venire of this Court. To that end, her request for a

$400.00 hourly rate was highly improper and called her entire fee bill into question

---

[89]  *See id.*

[90]  *Keister v. PPL Corp.*, No. 4:13-CV-00118, 2016 WL 688031, at *5 (M.D. Pa. Feb. 19, 2016) (setting $275.00 hourly rate in the Williamsport venire for attorneys with exceptionally high "quality" in "research and submissions"), *aff'd*, No. 16-1552, 2017 WL 383366 (3d Cir. Jan. 27, 2017) (Fisher, J.).

from the outset. When combined with her excessive entries as detailed in the next section, it has affirmed in my mind that her motion for fees must be denied in full.

**B.      Without Revising Her Time Entries In Any Way, Ms. Pollick Has Billed For Time That Was Necessitated By Her Own Vexatious And Obstreperous Conduct, Resulted In A New Trial, And Unnecessarily Prolonged Resolution Of This Action.**

It is apparent that Ms. Pollick has done nothing to "weed out" improper or inapplicable time entries. To the contrary, she has submitted an unprocessed fee bill, requesting to be compensated for every billable increment that she apparently has ever entered in this matter. She has done so even though her misconduct conditioned a new trial, she did not prevail whatsoever at the second trial, and several of those entries have no connection whatsoever to the instant defendant or claim. This is an independent reason why Ms. Pollick's motion will be denied in full and why sanctions are appropriate.

The Third Circuit has reiterated the following admonition of the Supreme Court several times: "A plaintiff who prevails in a civil rights action is ordinarily entitled to recover an attorney's fee unless 'special circumstances' would render such an award unjust."[91] For instance, when a plaintiff's counsel submits a claim that is "so intolerably inflated," district courts may "depart[ ] from the usual

---

[91]  *Ashley v. Atl. Richfield Co.*, 794 F.2d 128, 131 (3d Cir. 1986) (quoting *Newman v. Piggie Park Enters,* 390 U.S. 400, 402 (1968) (per curiam)).

practice" and "react vigorously to prevent such abuse."[92] Several courts of appeals have recognized that district courts may deny a fee request *in toto* if the amount requested is so excessive that it "shocks the conscience" of the court.[93] Moreover, courts have found the requisite special circumstances in cases where a party exhibited "obstructive behavior" at trial;[94] and where a party "burdened" defense counsel and "disregarded the court's instruction."[95]

A leading decision is that of the United States Court of Appeals for the Seventh Circuit in *Shott v. Rush-Presbyterian-St. Luke's Medical Center*.[96] *Shott* stands for the proposition that "when a plaintiff's unreasonable arguments at the first trial force the parties to participate in a second proceeding, the plaintiff should not be allowed compensation for both proceedings."[97] In a line that could be copied verbatim and applied here, the district court in *Shott* granted the defendant's motion for a new trial because, during the first trial, "the plaintiff had presented her

---

[92] *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

[93] *See Brown*, 612 F.2d at 1057; *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir.1991); *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993). Our Court of Appeals has noted that although it has applied this rule in prior cases, it recently explained that it has not had occasionally to formally adopt it. *See M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 n.2 (3d Cir. 2010) (Hardiman, J.) (citing *Hall v. Borough of Roselle*, 747 F.2d 838 (3d Cir.1984)).

[94] *Wiercinski v. Mangia 57, Inc.*, 125 F. Supp. 3d 445, 447 (E.D.N.Y. 2015) ("If there ever was a plaintiff who deserved no attorney's fees at all that plaintiff is Adam Wiercinski.") (citing *Farrar v. Hobby*, 506 U.S. 103, 120 (1992) ("Just as a Pyrrhic victor would be denied costs under Rule 54(d), so too should it be denied fees under § 1988.").

[95] *Mahoney v. Kesery*, 778 F. Supp. 1002, 1004 (E.D. Wis. 1991).

[96] 338 F.3d 736 (7th Cir. 2003).

[97] *Id.* at 739.

case to the jury in an unreasonable manner that likely confused the jury and prejudiced [the defendant]."[98]

Thus, because the conduct of plaintiff's counsel in *Shott* necessitated the new trial, it denied any fees for the first trial.[99] Again, in a passage that could be copied word-for-word here, the Seventh Circuit explained that during the first trial, plaintiff's counsel attempt to "throw at the jury . . . alleged misconduct" and "leave it to the jury to sort out."[100] That conduct was irrelevant, vexatious, and prejudicial.[101]

"Therefore," the Seventh Circuit concluded, plaintiff's counsel "should not receive attorney's fees or costs for the first trial."[102] "We simply do not think it appropriate to award a litigant attorney's fees for a trial that was voided by her unreasonable strategy."[103] This was particularly true because the conduct of Plaintiff's counsel "confused the jury" and "prejudiced [the defendant]."[104] The panel in *Shott* relied on its earlier decision in *Jaffee v. Redmond*, in which it

---

[98] *Id.* at 738–39.

[99] *See id.* at 741–43.

[100] *Id.* at 741.

[101] *See id.*

[102] *Id.* at 742.

[103] *Id.*

[104] *See id.*

concisely explained that if counsel's conduct "necessitates further proceedings," such misconduct "may justify denying compensation for those proceedings."[105]

The rule set forth by the Seventh Circuit in *Shott* has been universally adopted by other appellate courts—and for obvious reasons. For example, in *Gierlinger v. Gleason*, the United States Court of Appeals for the Second Circuit set forth a rule authorizing district courts to deny requests for fees attributable to mistrials in the event that the offending attorney "bore significant responsibility for the mistrial."[106] And in *O'Rourke v. City of Providence*, the United States Court of Appeals for the First Circuit similarly held that the key question in such fee disputes is whether plaintiff's counsel "was responsible for the introduction of irrelevant and highly prejudicial evidence that resulted in a voiding of that trial result."[107] "The question is who should pay for the mistake" and whether the mistake was "caused by plaintiff."[108] Finally, in *Abner v. Kansas City S. Ry. Co.*, the United States Court of Appeals for the Fifth Circuit echoed that a key factor for district courts to consider when parsing fee requests is whether the defendant shows "that Plaintiffs caused or contributed to the first mistrial."[109]

---

[105]   *See* 142 F.3d 409, 416 (7th Cir. 1998).

[106]   *See* 160 F.3d 858, 878 (2d Cir. 1998).

[107]   *See* 235 F.3d 713, 737 (1st Cir. 2001).

[108]   *See id.*

[109]   *See* 541 F.3d 372, 383 (5th Cir. 2008). *See also Masimo Corp. v. Tyco Health Care Grp., L.P.*, No. CV02-4770MRP(AJWX), 2007 WL 5279897, at *3 (C.D. Cal. Nov. 5, 2007)

At least one district in the Third Circuit's vicinage has adhered to this principal in denying a fee request. That case was *Daniels v. Hawkins*, before the United States District Court for the District of Delaware.[110] The plaintiff in *Daniels* failed to comply with the deadline to retain an expert witness on DNA, the key piece of evidence in this alleged sexual assault case.[111] Thus, the district court ruled that the DNA would be inadmissible at trial to prove paternity of a resultant child.[112] At trial, the plaintiff attempted to introduce the DNA evidence for alternative purpose.[113] On appeal, the Third Circuit wrote that "as used here, the DNA evidence was not relevant and was not admissible."[114] Thus, because the evidence was prejudicial, the Third Circuit granted the defendant a new trial.[115]

On remand and following a subsequent jury trial, the district court declined to award plaintiff's counsel fees associated with the first trial and a related motion in limine.[116] Indeed, the trial court noted that plaintiff's counsel "did not comply with the Court's deadline for identifying expert witnesses for the admission of

---

("Generally, a party may receive fees for a retrial so long as the mistake that made the retrial necessary is not attributable to unreasonable conduct by the party.").

[110] No. CIV.A. 96-009 JJF, 2004 WL 1375298 (D. Del. June 15, 2004).

[111] *See id.* at *1.

[112] *Daniels v. Delaware*, No. 01-3954, 2002 WL 31716422 (3d Cir. Dec. 4, 2002).

[113] *See id.*

[114] *See id.*

[115] *See id.*

[116] 2004 WL 1375298, at *2.

DNA evidence, and Defendant moved in limine to exclude this evidence."[117] Thus, because the defendant lacked "adequate notice" of the evidence and was improperly "confronted" with it at trial, such conduct did not warrant an award of fees.[118]

Ms. Pollick's misconduct at the first trial here was arguably more brazen than any of those examples just recounted. Judge Kane held that Ms. Pollick's misconduct at the first trial was sufficient to warrant a mistrial and described her behavior as follows:

> The Court finds that Plaintiff's counsel did engage in improper conduct during the course of trial by persistently asking questions that had been ruled improper for the purpose of characterizing, or mischaracterizing, evidence.
>
> . . .
>
> Unprompted and in the presence of the jury, Plaintiff's counsel exclaimed:
>
> MS. POLLICK:   I'm going to show his nakednews.com, what he showed the children, which absolutely goes to hostile educational atmosphere because of the fact that these girls had thongs, and he shows this to children that are 16 years old—
>
> THE COURT:   Counsel.
>
> MS. POLLICK:   —in their bras and thongs.
>
> . . .

---

[117] *Id.* at *1.

[118] *See id.* & nn.1–2.

The Court went on to explain to Plaintiff's counsel, that "unless Mr. Smith can testify as to Plaintiff's perceptions that she did perceive [additional items alleged to be part of Plaintiff's hostile educational environment], I think we need to hear from Plaintiff."

Immediately after this instruction, which took place outside the presence of the jury, the jury was returned to the courtroom and the following exchange occurred:

Q.     Mr. Smith, you remember talking about breast size of women in class; correct?

A.     I do remember speaking about that, yes.

Q.     You said that more than a handful would be too much, right?

MR. FREUND:    Your Honor, I'm going to make the same objection.

THE COURT:    Sustained.

BY MS. POLLICK:

Q.     You talked about swapping girlfriends, and if the one girlfriend—

MR. FREUND:    Objection.

THE COURT:    Sustained.

The Court then reminded counsel that "as to each specific item, you are going to need to ask the witness as to Plaintiffs' presence on the day these things were mentioned." Plaintiff's counsel then went on for several minutes characterizing evidence in an inflammatory way preceded by a perfunctory "was Meagan there when." In response to nearly every question, Defendant Smith testified that he did not know if Plaintiff was present, and Plaintiff ultimately did not testify to having seen or heard many of the items about which Plaintiff's counsel inquired.

Plaintiff's counsel later repeated this tactic when questioning the school board president, asking repeatedly whether, in her opinion, conduct which counsel characterized in an inflammatory way was "appropriate." After counsel asked, "Are you familiar with what he testified to, that he made comments about banging the cheerleader, talked about masturbation, female masturbation? Is that appropriate for a 16–year–old in a public school environment?" the Court called the parties for a sidebar. At sidebar, the Court instructed counsel: "Don't ask any more questions concerning whether items that were testified to as having been presented in class were appropriate in the eyes of the witness, because every single question you've asked, you've characterized the testimony and then you ask the witness, was this appropriate." Shortly after the sidebar was concluded, counsel asked the same witness, "And [the school board policy] talks about sexually explicit material is not appropriate. Let me ask you this, is sexually explicit material, is it appropriate—can you show it in the classroom?"

Plaintiff's counsel employed this tactic again during trial when questioning Detective Bentzoni Serfass, asking:

Q.     But you were concerned about what was going on [in Defendant Smith's classroom], that you didn't think it was appropriate. Correct?

MR. FREUND:     Objection. Leading.

THE COURT:     Sustained.

BY MS. POLLICK:

Q.     What was your opinion of the material?

MR. FREUND:     Objection. No foundation, relevance.

THE COURT:     Sustained.

BY MS. POLLICK:

Q.     Do you believe that Bruce Smith should have shown headless, naked females hanging?

MR. FREUND:    Objection.[119]

Judge Kane went on to summarize Ms. Pollick's improper conduct as

follows:

> That Plaintiff's counsel's conduct was improper is obvious.
> Throughout the course of trial counsel alternatively asked about
> evidence that had been ruled inadmissible, asked for lay opinion
> testimony, and asked for testimony without foundation. The purpose
> of this tactic was apparently to inflame the jurors by repeating
> outrageous conduct that is alleged to have occurred as fact enough
> times so the jurors would believe it did occur—even if no evidence
> was introduced that would support such a finding. To cite just one
> example, the Court notes that counsel asked various witnesses about
> Defendant Smith discussing "masturbation" a total of seven times
> during trial in addition to mentioning it in her closing argument.
> However, there is no evidence in the record that Defendant Smith ever
> even used the word in Plaintiff's presence. The effect of counsel's
> conduct is obvious: the jury was inflamed and misled into believing
> there was evidence that Defendant Smith discussed masturbation with
> Plaintiff.

On appeal, the Third Circuit affirmed Judge Kane's decision, noting that she

"cataloged an extensive record of misconduct by the Young's counsel throughout

the First Trial."[120] Indeed, the panel observed that by engaging such misconduct,

Ms. Pollick "attempted to inflame the jury by repeatedly asking improper questions

and characterizing the evidence."[121] "We agree that such misconduct permeated the

---

[119] *Young v. Pleasant Valley Sch. Dist.*, 2012 WL 1827194, at *27–29 (M.D. Pa. May 18, 2012) (internal footnotes omitted), *aff'd*, 601 F. App'x 132 (3d Cir. 2015) (Fisher, J.).

[120] *Young v. Pleasant Valley Sch. Dist.*, 601 F. App'x 132, 135 (3d Cir. 2015) (Fisher, J.).

[121] *Id.*

trial," the panel wrote, "making it 'reasonably probable' that the misconduct prejudicially influenced the verdict.[122]

All of the above authorities and judicial censures existed at the time Ms. Pollick submitted her fee petition, and the latter scoldings were well known to the parties here. That she nevertheless ignored those authorities and submitted an unrefined list of all her billable entries ever documented in connection with this matter, including those corresponding to misconduct, vexatious multiplication, new trials, and trials at which she did not prevail, provides an independent justification for denial of fees altogether and imposition of sanctions. As discussed more fully in the next section, this practice permeates Ms. Pollick's fee petition, which is rife with vague, duplicative, and other improper entries.

**C.    Although The Court Has Attempted To Engage In A Line-By-Line Review Of Ms. Pollick's Fee Bill And Reduce It Accordingly, The Deficiencies It Exhibits Are So Widespread And Fundamental That Line-By-Line Reduction Would Be Infeasible, Inaccurate, And Would Further Waste The Public's Resources.**

Our Court of Appeals has made clear on numerous occasions that "it *is* necessary that the [district court] go *line, by line, by line* through the billing records supporting the fee request."[123] My line-by-line review of Ms. Pollick's fee bill appears below. The fee bill is a morass to navigate—both in terms of its

---

[122]  *Id.* (quoting *United States v. Riley,* 621 F.3d 312, 339 (3d Cir.2010)).

[123]  *Evans v. Port Auth. of N.Y. & New Jersey*, 273 F.3d 346, 362 (3d Cir. 2001) (internal quotation marks omitted) (second emphasis added) (Mansmann, J.). *See also Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 713 (3d Cir. 2005) (Becker, C.J.).

inconsiderate formatting of microscopic text and its having been larded over with more inadmissible entries than appropriate ones. Although I initially attempted a line-by-line review, I found myself eliminating such a high proportion of Ms. Pollick's entries and guessing at the propriety of the remaining ones that outright denial became the only feasible outcome. Indeed, these observed deficiencies permeate Ms. Pollick's fee petition to the core, in such a way that line-by-line reductions prove futile and wasteful.

In addition to those principles set forth above, the following guided my inquiry—and should have guided Ms. Pollick's submission. That Ms. Pollick neglected this establish authority offers an independent ground warranting the imposition of sanctions, as discussed more fully below.

"Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."[124] "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."[125] Thus, district courts should view fee petitions as "[i]f

---

[124] *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[125] *Id.*

plaintiffs were fee-paying clients,"[126] excluding those entries "normally charged to a fee-paying client."[127]

"Of course," and quite pertinent here, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."[128] "It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available." Such non-legal work may command a lesser rate or may be eliminated altogether.[129] "Its dollar value is not enhanced just because a lawyer does it."[130]

Thus, "[a] claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable."[131] "Many of these tasks are effectively performed by administrative assistants, paralegals, or secretaries," and "to claim the same high reimbursement rate for the wide range of tasks

---

[126] *Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs*, 842 F.2d 1436, 1454 (3d Cir. 1988).

[127] *Planned Parenthood of Cent. New Jersey v. Attorney Gen. of State of New Jersey*, 297 F.3d 253, 267 (3d Cir. 2002).

[128] *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

[129] *See id.*

[130] *Id.*

[131] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001).

performed is unreasonable."[132] "Having prevailed in the litigation is not cause to overwhelm the losing party with unreasonable fees and costs."[133]

In addition, "hours chargeable to the claims against defendants who are found not liable" cannot be recovered if those defendants or claims are "sufficiently separable from the rest of the litigation."[134] Claims or defendants are "sufficiently separable" where some survive and some are disposed of on a single motion or appeal or where the time expended as to one theory "did not further successful claims [but] was spent solely on unsuccessful claims."[135]

In addition, Ms. Pollick has not edited her records to reflect time spent on evidence or witnesses that were completely excluded or were wholly irrelevant to the third trial. In fact, she has billed time corresponding to one expert who whose opinions were excluded as early as the first trial. Fees corresponding to expert witnesses or evidence that has been completely excluded are, for obvious reasons, typically not recoverable.[136] This is particularly true where the evidence did nothing to aid the plaintiff on the claims on which she prevailed and therefore

---

[132] *Id.*

[133] *Id.*

[134] *Rode v. Dellarciprete*, 892 F.2d 1177, 1185 (3d Cir. 1990).

[135] *See id.*

[136] *See, e.g.*, *Catapult Commc'ns Corp. v. Foster*, No. 06 C 6112, 2010 WL 659075, at *2 (N.D. Ill. Feb. 19, 2010).

"manifest injustice would result from awarding them."[137] Accordingly, as one court has quipped, "Time spent dealing with a retained expert whose planned testimony would be recognized as inadmissible by any reasonable attorney is simply not time well-spent."[138]

With that background in mind, I now turn to my line-by-line review of Ms. Pollick's fee bill for the first three years of this litigation (2007–2009). That review confirms that line-by-line reductions would be improper and that the fee bill must be denied in full.

### Table 1. Line-by-Line Fee Bill Revisions as Attempted by the Court

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 5/7/2007 | 1.80, comprised of five "telephone conferences with Patti . . . regarding situation"; "regarding representation"; and "regarding more information" | 0.25 (-1.55) | Vague and ambiguous; unreasonable |
| 5/8/2007 | 2.50, comprised of meeting with clients "to discuss situation" | 1.00 (-1.50) | Vague and ambiguous; unreasonable |

---

[137] *See id.*

[138] *Foley v. Huppe*, No. 10-CV-335-JL, 2012 WL 5467527, at *6 (D.N.H. Nov. 9, 2012).

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 5/9/2007 | 3.00, comprised of "Preparation of PHRA complaint for Jane Doe 2." | 0.00 (-3.00) | Vague and ambiguous; irrelevant; no "Jane Doe 2" involved in this action |
| 5/9/2007 | 0.80, comprised of "TC with Patty about filings and other issues" | 0.00 (-0.80) | Vague and ambiguous; unreasonable; duplicative of proximate entries |
| 5/10/2007 | 0.20, comprised of "TC from reporter regarding case, no comment." | 0.00 (-0.20) | Irrelevant; not billable time |
| 5/10/2007 | 0.80, comprised of "TC with Patty regarding issues." | 0.00 (-0.80) | Vague and ambiguous; unreasonable and duplicative of proximate entries |
| 5/10/2007 | 3.00, comprised of "Discussion of case with staff regarding issues." | 0.50 (-2.50) | Vague and ambiguous; unreasonable |
| 5/11/2007 | 5.00, comprised of "Reviewed case and developments"; "Reviewed additional documents sent by Patti" and "Reviewed comments by students regarding what Smith did during class." | 1.25 (-3.75) | Unreasonable; Block-billing; entries lack sufficient detail to substantiate the extent of time billed |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/12/2007 | 1.90, comprised of "TC from Patty regarding issues and concerns"; "TC with Patty regarding meeting"; "TC with Patti regarding appointment and developments"; "TC with Patti regarding developments and her status"; and "TC with Patti regarding situation and what will happen next." | 0.00 (-1.90) | Vague and ambiguous; duplicative of proximate entries; unreasonable; Block-billing; entries lack sufficient detail to substantiate the extent of time billed |
| 5/12/2007 | 0.20, comprised of "Correspondence from reporter regarding article." | 0.00 (-0.20) | Irrelevant; not billable time |
| 5/13/2007 | 2.00, comprised of "Discussion with staff about blogging comments and publicity." | 0.00 (-2.00) | Irrelevant; unreasonable; not billable time |
| 5/14/2007 | 0.10, comprised of "TC from Pocono record regarding lawsuit" | 0.00 (-0.10) | Irrelevant; not billable time |
| 5/14/2007 | 0.60, comprised of "TC from Patti regarding situation." | 0.00 (-0.60) | Vague and ambiguous; unreasonable; duplicative of prior entries |
| 5/14/2007 | 0.10, comprised of "TC from TV13 regarding case" | 0.00 (-0.10) | Irrelevant; not billable time |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/14/2007 | 2.00, comprised of "discussion with staff about media affects [*sic*] on case" | 0.00 (-2.00) | Irrelevant; not billable time |
| 5/14/2007 | 6.10, comprised of "TC from Expert Judith Reisman regarding case"; "Receipt and review of Judith Resiman's bio"; "Receipt and review of articles from Judith Reisman"; "Additional discussion with staff on expert and her opinions about case."; "TC from Judith Reisman regarding on working on the case" and four separate correspondences to Ms. Reisman, all purportedly occurring on the same date | 0.00 (-6.10) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entries lack sufficient detail to substantiate the extent of time billed |
| 5/14/2007 | 2.00, comprised of "Researched SESAME and other information about exploitation" | 0.00 (-2.00) | Irrelevant; vague and ambiguous; entry lacks sufficient detail to substantiate the extent of time billed |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/14/2007 | 1.00, comprised of "Receipt and review of 'therapists'" | 0.00 (-1.00) | Vague and ambiguous; entries lack sufficient detail to substantiate the extent of the time billed or the relevance to this action |
| 5/15/2007 | 0.10, comprised of "TC from Reporter regarding update – Pocono Record" | 0.00 (-0.10) | Irrelevant; not billable time |
| 5/15/2007 | 2.00, comprised of "Reviewed blogs on Pocono Record." | 0.00 (-2.00) | Unreasonable; irrelevant; vague and ambiguous; entry lacks sufficient detail to substantiate the extent of time billed and the relevance to this action |
| 5/15/2007 | 0.10, comprised of "Correspondence from Shaun Mullein regarding 'doe.'" | 0.00 (-0.10) | Irrelevant; not billable time; entry lacks sufficient detail; unidentified individuals "doe" and "Mullein" |
| 5/15/2007 | 0.90, comprised of "TC with Patty regarding situation" and "TC from Patti regarding situation" | 0.25 (-0.65) | Unreasonable; vague and ambiguous; duplicative of proximate entries |
| 5/16/2007 | 1.00, comprised of "Reviewed discussions on blogs." | 0.00 (-1.00) | Unreasonable; vague and ambiguous; entry lacks sufficient detail to substantiate the extent of time billed or relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/16/2007 | 0.30, comprised of "Receipt and review of additional document" | 0.00 (-0.30) | Entry lacks sufficient detail to substantiate extent of time billed or relevance to this action |
| 5/18/2007 | 0.30, comprised of "TC with Patti checking in to see how Meagan is doing." | 0.00 (-0.30) | Irrelevant; not billable time (Although it was kind of Ms. Pollick to check in on her client, it was undoubtedly less so to bill her for the curtesy.) |
| 5/23/2007 | 0.20, comprised of "TC from Patti regarding updated information" | 0.00 (-0.20) | Entry lacks sufficient detail to substantiate extent of time billed or relevance to this action |
| 5/25/2007 | 0.50, comprised of "TC with Patti discussing threat of lawsuit by Smith" | 0.00 (-0.50) | Vague and ambiguous; Entry lacks sufficient detail to substantiate relevance to this action; no counterclaims were filed in this lawsuit |
| 5/25/2007 | 1.00, comprised of "Legal research for reply letter to threat of defamation action" | 0.00 (-1.00) | Entry lacks sufficient detail to substantiate relevance to this action; no counterclaims were filed in this lawsuit; irrelevant to § 1983 fee petition |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 5/25/2007 | 0.40, comprised of "Correspondence with Swetz advising what law is on defamation." | 0.00 (-0.40) | Entry lacks sufficient detail to substantiate extent of time billed or relevance to this action; irrelevant to § 1983 fee petition; unidentified individual "Swetz" |
| 5/30/2007– 6/1/2007 | 1.00, comprised of "TC from Patty regarding updates"; "Correspondence with Patti regarding original documents"; "TC with Patti regarding developments"; and "TC from Patti regarding newspaper article" | 0.25 (-0.75) | Duplicative of proximate entries; entries lack sufficient detail to substantiate extent of time billed, propriety of billing, and relevance to action |
| 5/31/2007 | 0.10, comprised of "TC from morning call regarding case." | 0.00 (-0.10) | Irrelevant; not billable time |
| 6/1/2007 | 2.50, comprised of "Researched blogs to find threats | 0.60 (-1.90) | Unreasonable; duplicative |
| 6/5/2007 | 2.50, comprised of "Researched blogs to find threats for use in motion" | 0.00 (-2.50) | Irrelevant to § 1983 fee petition; Entry lacks sufficient detail to substantiate extent of time billed, propriety of entry, or relevance to Smith/§ 1983 claim |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/6/2007 | 2.00, comprised of "Reviewed blogs to recent news article." | 0.00 (-2.00) | Unreasonable; irrelevant; duplicative of proximate entries; lacks sufficient detail to substantiate extent and propriety of billing and relevance to Smith/§ 1983 claim |
| 6/8/2007 | 0.60, comprised of "TC from Patti regarding issues." | 0.00 (-0.60) | Vague and ambiguous; entry lacks sufficient detail to substantiate extent of time billed and relevance to this action |
| 6/12/2007– 6/13/2007 | 1.30, comprised of "TC from Dr. Reisman regarding case"; "Correspondence with Dr. Reisman regarding her calling me"; "Correspondence from Dr. Reisman regarding her testimony"; and "Receipt and review of Dr. Reisman's California protective parents association testimony." | 0.00 (-1.30) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entries lack sufficient detail to substantiate the extent of time billed |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/14/2007 | 1.80, comprised of "TC with Expert Reisman regarding case and help"; "Correspondence from Dr. Reisman regarding study"; "Correspondence from Dr. Reisman regarding brain science data"; "Correspondence from Dr. Reisman regarding sex crime of teacher – 2nd offense"; "Correspondence from Dr. Reisman regarding Supreme Court brief that Dr. Reisman is cited in."; "Receipt and review of Supreme Court brief that Dr. Reisman is cited in." | 0.00 (-1.80) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entries lack sufficient detail to substantiate the extent of time billed |
| 6/14/2007 | 0.60, comprised of "Correspondence from Patti regarding school board policies" and "Correspondence from Patti regarding additional policies that are implicated" | 0.25 (-0.35) | Duplicative of proximate entries; entries lack sufficient detail to substantiate time expended |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/15/2007 | 0.60, comprised of "Receipt and review of Study by Andreas Keil" | 0.00 (-0.60) | Irrelevant; vague and ambiguous; unidentified individual "Keil"' entry lacks sufficient details establishing relevance to this action |
| 6/15/2007 | 0.30, comprised of "Receipt and review of article on Detroit 'teacher of the year' getting sentenced for porn" | 0.00 (-0.30) | Irrelevant; entry lacks sufficient details establishing relevance to this action |
| 6/15/2007 | 0.50, comprised of "Correspondence from Dr. Reisman regarding teacher of the year" and "Correspondence from Dr. Reisman regarding stores on teachers" | 0.00 (-0.50) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entries lack sufficient detail to substantiate the extent of time billed |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/15/2007–6/19/2007 | 1.10, comprised of "Receipt and review of 2 additional policies provided by Doe"; "Correspondence with Patti advising will call her on Monday"; "TC with Patti regarding update"; "TC from Patti regarding expert"; "TC with Patti regarding expert" | 0.25 (-0.85) | Duplicative of proximate entries; vague and ambiguous; administrative tasks; not billable time; entries lack sufficient detail substantiating hours expended and relevance to action |
| 6/18/2007–6/21/2007 | 0.30, comprised of "TC from PHRC, David Kozemchak regarding docketing"; "TC with David advising that if he needs additional information to call me."; and "TC from PHRC advising will be docketing complaint today." | 0.00 (-0.30) | Administrative tasks; duplicative; not billable time |
| 6/27/2007 | 0.30, comprised of "Correspondence from Swetz regarding letters between each other" | 0.00, (-0.30) | Vague and ambiguous; entry lacks sufficient detail substantiating time expended, propriety of billing, and relevance to case; unidentified individual "Swetz" |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/27/2007 | 0.10, comprised of "TC from Patti regarding new address" | 0.00 (-0.10) | Administrative task; not billable time; entry lacks sufficient detail substantiating propriety of billing decision or relevance to this action |
| 6/28/2007–6/30/2007 | 0.20, comprised of "Correspondence from Judith regarding emails" and "Correspondence with Judith regarding call to her next week to discuss case" | 0.00 (-0.20) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entry lacks sufficient detail to substantiate the extent of time billed; duplicative of proximate entries |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 7/9/2007–7/13/2007 | 0.90, comprised of "TC from Patti regarding updated information"; "Correpsondence from Patti regarding other case"; "Correspondence from Patti regarding article on student's mom"; and "receipt and review of article about another person being retaliated against after complaining" | 0.00 (-0.90) | Duplicative of proximate entries; entries lack sufficient detail to substantiate extent of time billed and relevance to this action; not billable time |
| 7/20/2007; 7/23/2007 | 1.20, comprised of "TC with Dr. Reisman regarding case" and 6 entries of "Correspondence with/from Reisman regarding case" | 0.00 (-1.20) | Proposed expert excluded under *Daubert* framework and Fed. R. Evid. 403 as irrelevant, unreliable, and unduly prejudicial. *See* ECF Nos. 148 & 626; redundant of entries on same date; unreasonable and duplicative; entries lack sufficient detail to substantiate the extent of time billed; unreasonable; duplicative of proximate entries |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 8/2/2007 | 0.80, comprised of "TC with Patti regarding Judge's decision requiring us to reveal identity"; "TC from Patti regarding situation and how she wants to proceed"; and "TC from Patti regarding case and how it will proceed" | 0.25 (-0.55) | Unreasonable, duplicative |
| 8/2/2007 | 1.00, comprised of "receipt and review of documentation from PHRC" | 0.00 (-1.00) | Entry lacks sufficient detail to substantiate extent of time billed and relevance to case; unreasonable |
| 8/3/2007 | 0.20, comprised of "TC from Chris Monnegeall regarding decision on case" | 0.00 (-0.20) | Vague and ambiguous; irrelevant; unidentified individual "Monnegeall" |
| 8/3/2007 | 0.20, comprised of "Preparation of acknowledgment for Meagan to sign" | 0.00 (-0.20) | Administrative; not billable time |
| 8/8/2007 | 0.20, comprised of "Correspondence with Tarone regarding judge's decision" and "Correspondence with Tarone regarding Judge's decision and respect judge fully" | 0.00 (-0.20) | Vague and ambiguous; irrelevant; unidentified individual "Tarone" |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 8/9/2007 | 0.10, comprised of "Correspondence with Patti regarding acknowledgments" | 0.00 (-0.10) | Administrative; not billable time; entry lacks sufficient detail to substantiate relevance to this action |
| 8/9/2007 | 0.30, comprised of "Receipt and review of Article in Standard Speaker" | 0.00 (-0.30) | Not billable time; entry lacks sufficient detail to substantiate the extent of time billed or relevance to this action |
| 8/10/2007 | 0.50, comprised of "TC with Patti discussing case" and "TC from Patti regarding acknowledgment" | 0.00 (-0.50) | Unreasonable; duplicative of proximate entries; vague and ambiguous |
| 8/14/2007 | 0.10, comprised of "TC from Dan Barett Pocono Record regarding case" | 0.00 (-0.10) | Not billable time |
| 8/15/2007 | 0.20, comprised of "TC from Patty regarding article and blogs." | 0.00 (-0.20) | Irrelevant; entry lacks sufficient detail to substantiate the extent of time billed |
| 8/15/2007 | 0.10, comprised of "Correspondence from Judith regarding case" | 0.00 (-0.10) | Expert excluded as irrelevant and highly prejudicial. |
| 8/20/2007 | 0.40, comprised of "Review blogs on moderate for use in case" | 0.00 (-0.40) | Vague and ambiguous; entry lacks sufficient detail substantiating relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 8/23/2007–10/4/2007 | 5.10, comprised of 28 entries to client's mother: "TC from Patti re status of case"; "TC from Patti re update"; "Correspondence from Patti re policies and procedures"; "Correspondence with Patti thanking her for information"; "Correspondence with Patti thanking her for update"; "Correspondence with Patti re article"; "Correspondence from Patti thanking me for work on brief"; "Correspondence from Patti re morning news article"; "Correspondence from Patti advising what to do"; "Correspondence from Patti re article"; "Correspondence with Patti thanking her fort article."; "Correspondence with Patti re rape case in Allentown"; etc. | 0.50 (-4.60) | Duplicative of proximate entries; Administrative tasks; unreasonable; Irrelevant; Vague and ambiguous; Entries lack sufficient detail substantiating claimed time and relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 9/7/2007 | 7.60, comprised of "Additional preparation to 2nd Motion to Dismiss" | 2.50 (-5.10) | Duplicative of proximate entries; unreasonable as overstated; Block billing |
| 9/15/2007 | 0.30, comprised of "Reviewed article on Smith coming back to classroom" | 0.00 (-0.30) | Entry lacks sufficient detail substantiating relevance to this action |
| 9/25/2007 | 0.40, comprised of "Receipt and review of new policy on abuse versus old version" | 0.00 (-0.40) | Entry lacks sufficient detail substantiating relevance to this action |
| 10/4/2007 | 0.20, comprised of "Correspondence from PHRC cancelling FFC" | 0.00 (-0.20) | Administrative task; not billable |
| 10/8/2007 | 0.20, comprised of "Correspondence with PHRC regarding unavailability for FFC" | 0.00 (-0.20) | Administrative task; not billable; redundant/duplicative of proximate entries |
| 12/16/2007 | 0.30, comprised of three separate entries of correspondence with "Patti" | 0.10 (-0.20) | Unreasonable and excessive; duplicative of proximate entries |
| **2007 TOTAL** | **114.80** | **-68.05 (59%)** | **TOTAL AFTER DEDUCTIONS: 46.75** |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 2/7/2008 | 0.20, comprised of "Correspondence from Patti regarding article in paper" and "Correspondence with Patti advising her about details or oral argument" | 0.00 (-0.20) | Duplicative of proximate entries; administrative task; not billable time; entries lack sufficient detail substantiating propriety of billable time |
| 2/14/2008 | 0.30, comprised of "TC from Erin of Times regarding case" and "TC with reporter regarding what case is about" | 0.00 (-0.30) | Irrelevant; not billable time |
| 2/14/2008– 2/28/2008 | 1.1, comprised of "TC from Patti regarding case status"; "TC from Patti regarding questions on case"; "TC from Patti regarding case"; and "TC from Patti regarding call and new information" | 0.25 (-0.85) | Duplicative of proximate entries; entries lack sufficient detail substantiating propriety of billing and extent of time billed; administrative tasks |
| 2/28/2008 | 0..10, comprised of "TC from Morning Call regarding order" | 0.00 (-0.10) | Irrelevant; not billable time |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 2/28/2008–3/5/2008 | 1.30, comprised of "Correspondence from Patti advising case was reported"' "Correspondence with Patti thanking her for update"; "Correspondence from Patti regarding article in Pocono Record"; "Correspondence with Patti thanking her for providing update"; "Correspondence from Patti regarding news article about on-line school"; "Correspondence from Patti summarizing blogs"; "Correspondence with Patti advising can't use as evidence need her to send me copies of blogs."; "Correspondence with Patti regarding documents"; "Correspondence with Patti thanking her for her outstanding cooperation" | 0.00 (-1.30) | Duplicative of proximate entries; irrelevant; administrative tasks; not billable time; entries lack sufficient detail substantiating propriety of billing, extent of time billed, and relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 3/20/2008– 3/28/2008 | 1.90, comprised of "Correspondence from Patti regarding issues about homebound"; "Correspondence with Patti thanking her for information"; "Correspondence from Patti regarding details of situations"; "Correspondence with Patti thanking her for information"; "Correspondence from Patti regarding information on spiral notebook"; "Correspondence from Patti regarding spiral notebook"; "Correspondence with Patti advising need to send"; and "Correspondence from Patti advising thank you for update" | 0.00 (-1.90) | Duplicative of proximate entries; irrelevant; administrative tasks; not billable time; entries lack sufficient detail substantiating propriety of billing, extent of time billed, and relevance to this action |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 3/26/2008 | 9.00, comprised of "Preparation of Answers to Interrogatories-Finalized"; "Preparation of Responses to RPDs."" "Finalization of Answers to Interrogatories"; and "Finalization of Responses to RPDs" | 2.00 (-7.00) | Duplicative; unreasonable; block billing; entries lack sufficient detail substantiating propriety of extent of time billed |
| 4/8/2008 | 0.10, comprised of "Correspondence with Tami advising can't change pdf" | 0.00 (-0.10) | Administrative task; not billable time |
| 4/24/2008 | 2.00, comprised of "Preparation of JCM" | 1.00 (-1.00) | Unreasonable in light of proximate entries; Entry lacks sufficient detail substantiating extent of time billed |
| 5/3/2008 | 0.20, comprised of "Correspondence from Patti regarding new rule" and "Correspondence with Patti thanking her for update" | 0.00 (-0.20) | Duplicative of proximate entries; entries lack sufficient detail substantiating time billed and relevance to this action |
| 5/6/2008 | 0.20, comprised of "Correspondence with OP regarding documents" | 0.00 (-0.20) | Entry lacks sufficient detail substantiating propriety of time billed and relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/9/2008 | 1.00, comprised of "Reviewed documents that needed to be turned over in response to discovery requests" | 0.25 (-0.75) | Entry lacks sufficient detail substantiating propriety of time billed |
| 5/12/2008– 5/13/2008 | 0.60, comprised of "Correspondence from Judy Price regarding mediation session"; "Correspondence from Judy price advising need dates for mediation"; and "Correspondence with Judy Price advising June 20 is good for us" | 0.00 (-0.60) | Administrative tasks; not billable attorney time |
| 5/13/2008 | 1.10, comprised of "TC from Patti regarding mediation and other items"; "TC from Patti regarding more questions about mediations; trial; settlement – addressed various conc"; and "Correspondence with Patti advising need dates they can come up" | 0.25 (-0.85) | Duplicative of proximate entries; administrative task; not billable attorney time |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/15/2008 | 2.50, comprised of "Legal research on disclosure of electronic data" and "Preparation of Brief in Support of Production of Electronic Data" | 0.00 (-2.50) | Unreasonable; entries lack sufficient detail substantiating propriety of time billed and relevance to this action |
| 5/19/2008– 6/11/2008 | 2.10, comprised of "Correspondence from Mediator asking if 20th was good for Freund"; "Correspondence from OP advising June 20th is good for him"; "Correspondence from Mediator advising she will confirm June 20th @ 11am"; "Correspondence with Mediator, OP medication [*sic*] at Mediator's office good"; "Correspondence from Judy Price confirming date and time for mediation"; "Correspondence with Patti advising of mediation date."; | 0.00 (-2.10) | Administrative tasks; not attorney billable time; duplicative of proximate entries; unreasonable; redundant |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 5/19/2008–6/11/2008 *Continued* | "Correspondence from Patti advising she will be her [*sic*] by 10:30 and advising of her demand"; "Correspondence with Patti advising okay, but we will talk more when we meet"; "Correspondence from Patti regarding demand"; "Correspondence with Patti advising details of mediation process"; "TC from Judy Price regarding TC about mediation"; "TC with Dorothy of Judy Price's office regarding TC before mediation"; "TC from Judy Price, OP regarding mediation extension" | | |
| 6/2/2008 | 3.00, comprised of "Preparation of BIO to OP's Motion to Compel" | 1.00 (-2.00) | Entry lacks sufficient detail substantiating extent of time billed |
| 6/11/2008 | 0.40, comprised of "TC with Patti regarding mediation" and "TC from Patti regarding status" | 0.10 (-0.30) | Duplicative of proximate entries; lacks sufficient detail |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/11/2008 | 0.20, comprised of "TC from Bill regarding mediation" | 0.00 (-0.20) | Entry lacks sufficient detail to substantiate extent of time billed and relevance to case; unidentified individual "Bill" |
| 6/30/2008–7/8/2008 | 1.20, comprised of "Correspondence with Patti regarding MTC"; "Correspondence from Patti regarding youtube"; "Correspondence from Patti – 2nd letter on you tube issues"; "Correspondence from Patti regarding reviewing box of documents"; "Correspondence with Patti advising can review box any time"; "Correspondence from Patti regarding deposition for Meagan"; "Correspondence from Patti regarding news article" | 0.00 (-1.20) | Duplicative of proximate entries; unreasonable; entries lack sufficient detail substantiating time billed, propriety of time billed, and relevance of billed time to this action |
| 7/7/2008 | 0.20, comprised of "TC with Jenn regarding case" | 0.00 (-0.20) | Entry lacks sufficient detail to substantiate extent of time billed and relevance to case; unidentified individual "Jenn" |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 7/10/2008–7/17/2008 | 2.20, comprised of "TC from OP regarding dates for deposition"; "TC from OP advising free on 23th to do depos"; "Preparation of Notice of Deposition for Smith"; "Preparation of Amended 30(b)(6) deposition notice"; "Correspondence with Patti advising of depo dates"; "Correspondence from Patti regarding youtube and other items"; "Correspondence with Patti advising that we will talk more during prep session"; "Correspondence with Patti advising I will do what I can to get date in August."; "Correspondence with OP regarding waver [*sic*] of service"; "Preparation of Waiver of Service for both Defendants"; | 0.25 (-1.95) | Administrative tasks; not billable as attorney time; duplicative of proximate entries |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 7/10/2008–7/17/2008 *Continued* | "Correspondence from OP regarding waiver of service"; "Correspondence from PHRC regarding on-going investigation"; "TC from PHRC, Vivian requesting copy of lawsuit" | | |
| 7/30/2008 | 0.50, comprised of "Correspondence with Detective Bentzoni" and "Preparation for Subpoena for deposition-Bentzoni" | 0.00 (-0.50) | Witness excluded as prejudicial and irrelevant to this action, particularly as to third trial (Smith). *See* ECF No. 626; also administrative task; not billable as attorney time |
| 8/4/2008–8/8/2008 | 0.60, comprised of "Correspondence from Patti regarding meeting on Sunday"; "Correspondence with Patti advising she is correct on both items; and will see her at new office at"; and "TC with Patti regarding addresses; and discussed depos scheduled for Monday" | 0.00 (-0.60) | Administrative task not billable as attorney time; duplicative of proximate entries |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 8/8/2008 | 0.40, comprised of "Correspondence from Floyd regarding customer service survey" and "Correspondence from Floyd regarding letter to Freund" | 0.00 (-0.40) | Irrelevant; lacks sufficient detail |
| 8/8/2008– 8/12/2008 | 9..00, comprised of "Meeting with clients in preparation of depositions"; "Preparation for deposition of clients and 30(b)(6)"; "Additional preparation for 30(b)(6) deposition"; "Reviewed file to pull out documents for 30(b)(6) deposition"; "Additional preparation for 30(b)(t) deposition and Smith, Detective" | 2.00 (-7.00) | Overstated and unreasonable; lacks sufficient specificity to justify amount of time billed; block billing; administrative task; witness excluded prior to third trial |
| 8/11/2008– 8/12/2008 | 3.40, comprised of "Travel to Bethlehem for depositions" and "Travel from Bethlehem after 30(b)(6) deposition" | 2.50 (-0.90) | Travel time overstated |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 8/13/2008–8/15/2008 | 2.30, comprised of "Correspondence from Patti regarding policy violations"; "Correspondence with court reporter requesting she bold answers"; "Correspondence with Patti regarding blogs she found"; "Correspondence from Patti regarding depositions and other information for case."; "TC from Patti regarding case"; "TC with Patti regarding depositions; several issues and concerns; medical releases; upcoming dpeosi"; "Correspondence from Patti regarding list of doctors"; "Receipt and review of list of doctors that family has seen"; "Correspondence with Patti thanking her for getting list of doctors to me"; "Correspondence from Patti advising she is putting stuff behind her"; | 0.00 (-2.30) | Not billable time; administrative tasks; duplicative; irrelevant |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 8/13/2008–8/15/2008 *Continued* | "Correspondence with Patti telling her glad she's giving herself a break"; and Correspondence from Patti regarding "information on history teacher resigning" | | |
| 8/15/2008 | 0.20, comprised of "Correspondence with Expert Reisman regarding her expertise along with testimony" | 0.00 (-0.20) | Witness excluded as irrelevant and prejudicial |
| 8/15/2008–8/20/2008 | 0..80, comprised of "Preparation of subpoena for Bill Watson"; "Correspondence with Bill Watson regarding subpoena"; "TC from Bill Watson regarding subpoena"; and "TC with Bill Watson explaining what I'm looking for" | 0.00 (-0.80) | Administrative task; not billable as attorney time; unidentified individual "Bill Watson"; entries lack sufficient detail to establish relevance to case |
| 8/15/2008–8/18/2008 | 0.70, comprised of six separate correspondences to/from Ms. Pollick and Ms. Reisman | 0.00 (-0.70) | Witness excluded as irrelevant and prejudicial |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 8/20/2008 | 1.00, comprised of preparation of 5 deposition notices | 0.00 (-1.00) | Administrative task; not billable time; most noticed witnesses excluded as irrelevant for third trial |
| 8/21/2008 | 0.90, comprised of three correspondences with Dr. Reisman | 0.00 (-0.90) | Witness excluded as irrelevant and prejudicial |
| 8/21/2008 | 0.20, comprised of "TC with Jess advising 25 26 bad for Freund" and "TC with Jess regarding dates good for him" | 0.00 (-0.20) | Administrative tasks; not billable as attorney time; duplicative |
| 8/21/2008 | 1.50, comprised of "Reviewed 2 DVDs with clips" | 0.00 (-1.50) | Entry lacks sufficient detail substantiating relevance to the case; unreasonable time expended |
| 8/21/2008 | 0.10, comprised of "Correspondence from Judith regarding news article" | 0.00 (-0.10) | Expert excluded as prejudicial and irrelevant. |
| 8/22/2008 | 0.40, comprised of four correspondences with Patti | 0.00 (-0.40) | Duplicative of proximate entries; insufficient detail |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 8/25/2008 | 0.30, comprised of "Correspondence from Gallagher regarding depositions"; "Correspondence with Gallagher regard depositions"; "Correspondence from Gallagher attaching PDF" | 0.00 (-0.30) | Administrative tasks; not billable attorney time; unidentified individual "Gallagher" |
| 8/25/2008 | 0.20, comprised of "Correspondence from court reporter regarding transcripts"; "Correspondence with court reporter advising that I requested condensed pdf" | 0.00 (-0.20) | Administrative task; not billable as attorney time |
| 8/26/2008 | 0.10, comprised of "Correspondence from Patti regarding article on PVSD" | 0.00 (-0.10) | Irrelevant; lacks sufficient detail to substantiate propriety of billed time |
| 8/27/2008 | 0.10, comprised of "Correspondence from Judith regarding additional article" | 0.00 (-0.10) | Expert excluded as irrelevant and prejudicial |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 8/28/2008–9/2/2008 | 0.50, comprised of "Correspondence from Patti regarding blogs"; "Correspondence with Patti regarding blogs"; "Correspondence with Patti advising depos are off"; "Correspondence from Patti advising okay and to keep her updated"; "Correspondence with Patti regarding invoice" | 0.00 (-0.50) | Entries lack sufficient detail to substantiate relevance; administrative tasks; not billable as attorney time |
| 9/11/2008 | 0.20, comprised of "Correspondence from Atty Berry docs from Pocono Records" | 0.00 (-0.20) | Entry lacks sufficient detail to substantiate relevance; irrelevant; not billable time |
| 9/15/2008 | 0.10, comprised of "TC with Jessica confirming will take 26, 27" | 0.00 (-0.10) | Administrative; not billable as attorney time |
| 9/15/2008 | 0.70, comprised of "Correspondence with OP regarding revised deposition notices" and "Preparation of revised deposition notices for smith, pullo, saba, seiler, and yozwiak" | 0.00 (-0.70) | Administrative; not billable as attorney time; most witnesses excluded as irrelevant or prejudicial as to third trial |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 9/15/2008–9/16/2008 | 0.70, comprised of "Correspondence from Patti regarding new address"; "Correspondence with Patti regarding scheduling of depositions, etc."; "Correspondence from Patti regarding payment of deposition fee"; "Correspondence from Patti regarding Seller and questions to ask"; "Correspondence from Patti regarding new information"; and "Correspondence from Patti regarding additional information" | 0.00 (-0.70) | Duplicative of proximate entries; administrative tasks not billable as attorney time; entries lack sufficient detail to substantiate propriety of entries |
| 9/18/2008 | 0.10, comprised of "Correspondence with Judith regarding information on case" | 0.00 (-0.10) | Expert excluded as irrelevant and prejudicial well before third trial; any reference to expert's testimony later excluded in subsequent motion in limine; vague and ambiguous entry lacking sufficient detail |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 9/19/2008 | 0.10, comprised of "Correspondence with Patti regarding 30(b)(6) transcript" | 0.00 (-0.10) | Lacks sufficient detail establishing relevance and propriety of billing; administrative task not billable as attorney time |
| 9/23/2008–10/1/2008 | 0.30, comprised of "Correspondence from Patti regarding additional emails"; "Correspondence from Patti regarding article and blog"; and "Correspondence from Patti regarding article – 2nd email" | 0.00 (-0.30) | Entries lack sufficient detail to substantiate relevance and propriety of time billed; duplicative of proximate entries |
| 9/23/2008 | 0.20, comprised of "Correspondence with reporter regarding depositions in January" and "Correspondence from reporter advising she can handle job in Jan." | 0.00 (-0.20) | Administrative tasks not billable as attorney time; duplicative of proximate entries |
| 9/25/2008–10/1/2008 | 0.50, comprised of "TC from reporter from Morning Call-Kevin"; "TC with Kevin from Morning Call regarding case"; and "Receipt and review of article in morning call" | 0.00 (-0.50) | Irrelevant; not billable time; duplicative in light of proximate entries |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 10/9/2008 | 0.10, comprised of "TC with Jessica rescheduling depositions – one more time" | 0.00 (-0.10) | Administrative task; not billable as attorney time |
| 10/14/2008 | 0.20, comprised of "Correspondence from Patti and review of news article sent by her" and "Correspondence from Patti regarding medical releases" | 0.00 (-0.20) | Duplicative of proximate entries; entries lack sufficient detail substantiating propriety and extent of billed time |
| 10/21/2008 | 0.10, comprised of "Correspondence with Patti regarding update on depos" | 0.00 (-0.10) | Duplicative of proximate entries; entry lacks sufficient detail substantiating relevance |
| 11/26/2008 | 1.20, comprised of "Preparation of revised subpoena for Detective Bentzoni'" "Preparation of revised deposition notice for Connie Saba"; "Preparation of revised deposition notice for Donna yozwiak"; "Preparation of revised deposition notice for IT-Mr. Sieler"; "Preparation of revised deposition notice for Bruce Smith"; "Preparation of revised deposition notice for Dr. Pullo" | 0.00 (1.20) | Administrative tasks not billable as attorney time; most witnesses cited were excluded as irrelevant and prejudicial well before third trial |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 12/4/2008 | 0.20, comprised of "Correspondence with OP regarding revised notice" | 0.00 (-0.20) | Administrative task not billable as attorney time |
| 12/6/2008– 12/9/2008 | 0.20, comprised of "Correspondence from Patti regarding updates on Meagan" and "Correspondence with Patti thanking her for update and advising still on for Jan depos." | 0.00 (-0.20) | Duplicative of proximate entries; entries lack sufficient detail substantiating relevance and propriety of billing |
| 12/31/2008 | 0.20, comprised of "Correspondence with Lori regarding her coverage of depositions in Jan." and "TC from Lori advising she can't cover that date" | 0.00 (-0.20) | Administrative task not billable as attorney time |
| **2008 TOTAL** | **99.00** | **-49.60 (50%)** | **TOTAL AFTER DEDUCTIONS: 49.40** |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 1/20/2009 | 0.10, comprised of "Preparation of Revised Notice of Deposition for Smith" | 0.00 (-0.10) | Administrative task; not billable as attorney time |
| 1/20/2009 | 0.20, comprised of "Correspondence with OP regarding new start time; and cancellation of Pullo's deposition" | 0.00 (-0.20) | Administrative task; not billable as attorney time; plaintiff did not prevail as to witness, and witness not involved in third trial |
| 1/20/2009 | 0.20, comprised of "Correspondence from Patti regarding additional information to use at depositions" and "Correspondence with Patti advising that had to move deposition to noon b/c have court in morning" | 0.00 (-0.20) | Entries lack sufficient detail substantiating propriety of time billed and relevance to the action; administrative task not billable as attorney time |
| 1/22/2009 | 0.70, comprised of "Meeting clients to discuss depositions" | 0.50 (-0.20) | Unreasonable; lacks sufficient detail to substantiate time billed and relevance to third trial |
| 1/26/2009 | 0.10, comprised of "TC from Patti regarding last weeks [*sic*] deposition" | 0.00 (-0.10) | Entry lacks sufficient detail to substantiate propriety of time billed and relevance to third trial |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 1/26/2009 | 0.10, comprised of "Correspondence from reporter regarding coverage and student observing" | 0.00 (-0.10) | Irrelevant; administrative task; not billable as attorney time |
| 1/27/2009– 2/11/2009 | 1.50, comprised of eight entries of correspondence with Patti | 0.00 (-1.50) | Duplicative of proximate entries; administrative tasks not billable as attorney time; entries lack sufficient detail substantiating propriety and extent of billed time |
| 1/27/2009 | 0.60, comprised of confirmation of dates with opposing counsel and preparation/service of subpoena for "ESU" | 0.00 (-0.60) | Administrative tasks; not billable time; irrelevant to this action |
| 2/11/2009– 2/12/2009 | 0.30, comprised of "Correspondence with case manager apologizing for not filing on system" and TC with ESU regarding subpoena/extension | 0.00 (-0.30) | Administrative tasks; not billable as attorney time |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 2/13/2009 | 1.20, comprised of "receipt and review" of various depositions | 0.00 (-1.20) | Witnesses excluded as irrelevant or prejudicial early in litigation; witnesses not relevant to third trial; entries lack sufficient detail substantiating propriety of time billed |
| 2/13/2009 | 0.20, comprised of "Correspondence with rose regarding PDFs of transcripts" and "Correspondence from Rose reporter regarding PDFs of transcripts" | 0.00 (-0.20) | Administrative task not billable as attorney time; duplicative of proximate entries |
| 2/22/2009– 2/23/2009 | 0.40, comprised of "Correspondence from Patti regarding stuff that might help" and "Correspondence from Patti regarding information on witness" | 0.00 (-0.40) | Irrelevant; duplicative of proximate entries; entries lack sufficient detail |
| 2/25/2009 | 0.20, comprised of "Correspondence from Patti regarding schedule for Monday" and "Correspondence with Patti regarding time starting on Monday" | 0.00 (-0.20) | Administrative tasks not billable as attorney time |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 1/2/2009–2/28/2009 | 4.10, comprised of various entries corresponding solely to proposed expert Reisman | 0.00 (-4.10) | Expert excluded as irrelevant and prejudicial well before third trial; any reference to expert's testimony later excluded in subsequent motion in limine; vague and duplicative entries |
| 3/2/2009 | 0.60, comprised of "Preparation for depositions" | 0.00 (-0.60) | Entry lacks sufficient detail substantiating relevance to this action or propriety of time billed |
| 3/6/2009 | 0.60, comprised of "Correspondence with Patti advising of her schedule of depositions on Friday"; "Correspondence from Patti regarding her health, depositions next Friday; "Correspondence with Patti regarding depositions"; and "Correspondence with Patti advising haven't received paperwork yet" | 0.00 (-0.60) | Administrative tasks not billable as attorney time; duplicative of proximate entries; irrelevant to third trial |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 3/13/2009 | 8.00, comprised of "Travel to and from Leigh for deposition of Kim Dalmas and Karen Verhage" and "attendance" at said depositions | 0.00 (-8.00) | Overstated travel time; witnesses excluded well prior to third trial and irrelevant to ultimate action; block billing |
| 3/16/2009 | 0.40, comprised of four entries scheduling TC with Judge Munley's Chambers and opposing counsel | 0.00 (-0.40) | Administrative task; not billable time; lacks sufficient detail establishing relevance and propriety of billing |
| 3/17/2009 | 0.70, comprised of "Meeting with Patti to discuss issues" | 0.25 (-0.45) | Entry lacks sufficient detail substantiating relevance and propriety of time billed |
| 3/18/2009– 3/25/2009 | 1.90, comprised of "Preparation of motion to compel – video stuff"; "Finalized and filed motion to compel – video stuff"; "Preparation of brief in support of motion to compel videos" and motion regarding related adverse instruction | 0.00 (-1.90) | Entry lacks sufficient detail substantiating relevance to this action and propriety of extent of time billed; duplicative of proximate tasks; administrative task in part, not billable as attorney time |
| 3/19/2009 | 1.10, comprised of four entries of correspondence with opposing counsel relating to subpoenas for Best Buy and Lowe's | 0.00 (-1.10) | Entries lack sufficient detail substantiating extent of time billed, propriety of billed time, or relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 4/1/2009–4/17/2009 | 1.90, comprised of four entries related to above depositions of Dalmas and Verhage | 0.00 (-1.90) | Witnesses excluded well prior to third trial; witnesses irrelevant to third trial; entries lack sufficient detail to substantiate relevance; duplicative of proximate entries |
| 3/1/2009–4/6/2009 | 7.60, comprised of various entries corresponding solely to proposed expert Reisman, related deposition, and receipt/review of said report | 0.00 (-7.60) | Expert excluded as irrelevant and prejudicial well before third trial; any reference to expert's testimony later excluded in subsequent motion in limine; vague and duplicative entries |
| 4/8/2009 | 0.20, comprised of "Correspondence with OP regarding extension" and "Correspondence with OP's paralegal advising concur in 30 day extension" | 0.00 (-0.20) | Administrative task, not billable as attorney time |
| 4/23/2009 | 0.50, comprised of "Receipt and review of employment records from Lowes" | 0.00 (-0.50) | Entry lacks sufficient detail substantiating time billed and relevance to this action |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 5/5/2009–5/11/2009 | 11.80, comprised of "Reviewed videos produced by OP" (3.00); "Reviewed DVDs for discovery brief and case" (5.00)' "Preparation of Reply Brief to Motion to Compel Videos" (1.30); "Reviewed video clips and thumbnails on most discs" (1.00); "Receipt and review of Best Buy Records produced by OP"; and "Correspondence from OP regarding Best Buy records" | 0.00 (-11.80) | Block billing; entries lack sufficient detail substantiating propriety of time billed, extent of time billed, or relevance to this action; duplicative of proximate entries; vague and ambiguous; irrelevant |
| 5/19/2009 | 0.20, comprised of "Correspondence from Tami regarding word extension" and "Correspondence with Tami advising I don't have a problem with all briefs extending to 7k" | 0.00 (-0.20) | Administrative correspondence; not billable as attorney time |
| 5/22/2009 | 1.00, comprised of "Receipt and review of Exhibits attached to MSJ" | 0.00 (-1.00) | Entry lacks sufficient detail substantiating propriety of time billed or relevance to this action |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 5/22/2009 | 0.10, comprised of "Correspondence from the Youngs regarding case" | 0.00 (-0.10) | Entry lacks sufficient detail substantiating propriety of time billed or relevance to this action |
| 5/28/2009 | 0.20, comprised of "Correspondence from Mediator regarding case" | 0.00 (-0.20) | Entry lacks sufficient detail substantiating propriety of time billed or relevance to this action; administrative task not billable as attorney time |
| 5/28/2009 | 0.10, comprised of "Correspondence from OP advising where to find exhibit J" | 0.00 (-0.10) | Administrative task not billable as attorney time |
| 6/3/2009 | 3.00, comprised of "Additional preparation of Brief in Support of PMSJ" | 1.00 (-2.00) | Entry lacks sufficient detail substantiating propriety and extent of time billed and relevance to this action; duplicative of proximate entries; block billing |
| 6/6/2009–6/8/2009 | 0.80, comprised of "TC from Patti regarding receipt of email"; "TC with Patti regarding issue"; "TC from Patti regarding issue"; "TC with Patti regarding issue and information she gathered" | 0.00 (-0.80) | Entries lack sufficient detail substantiating propriety of time billed and relevance to this action; duplicative entries |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/15/2009–6/17/2009 | 15.00, comprised of "Additional preparation of BIO to Motion for Summary Judgment included review of Meagan's deposition" (3.00); "Additional preparation of BIO to MSJ included reviewing Patricia's deposition. Smith's" (7.00); and "Additional preparation of BIO to MSJ" (5.00) | 3.00 (-12.00) | Block billing; entries lack sufficient detail substantiating propriety of time billed; duplicative of proximate entries |
| 6/17/2009 | 0.10, comprised of "TC with Hampton regarding room reservation" | 0.00 (-0.10) | Administrative task not billable as attorney time |
| 6/18/2009–6/19/2009 | 0.80, comprised of "TC with Patti regarding case"; "TC from Patti regarding case"; "TC with Patti regarding case and statement of facts in dispute"; and "TC from Patti about statement of facts, etc." | 0.25 (-0.55) | Duplicative of proximate entries; excessive billing; entries lack sufficient detail substantiating propriety of time billed |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 6/19/2009 | 8.00, comprised of "Preparation of Response to Statement of Facts in Dispute" (5.00) and "Additional preparation and finalization of Brief in Opposition to MSJ, including finalization of Ta" (3.00) | 2.00 (-6.00) | Entries lack sufficient detail substantiating propriety of time billed and relevance to action; block billing; duplicative of proximate entries |
| 7/27/2009–7/30/2009 | 0.70, comprised of "Correspondence from Patti regarding Memoir"; "Correspondence with Patti thanking her for information"; "Correspondence from Patti regarding movie"; "Correspondence from Patti regarding update to policies" | 0.00 (-0.70) | Duplicative of proximate entries; information referenced excluded as irrelevant and prejudicial; excessive billing |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 6/22/2009–6/26/2009 | 1.40, comprised of "TC from Patti regarding affidavit"; "Correspondence from Patti regarding information that may be useful"; "TC from Patti regarding paperwork"; "Correspondence and attachment from Patti regarding Bruce"; "Correspondence from Patti regarding information about Connie Saba"; "Correspondence with Patti thanking her for new information"; "Receipt and review of news article sent by Patti" | 0.25 (-1.15) | Duplicative of proximate entries; Entries lack sufficient detail; excessive billing |

| Date | Entry | Revision | Justification |
|---|---|---|---|
| 4/30/2009–5/1/2009 | 0.60, comprised of "Correspondence from Patti regarding update"; "Correspondence with Patti advising her of update"; "Correspondence from Patti thanking me for my work"; "Correspondence with Patti regarding deposition transcripts"; and "Correspondence with Patti thanking her for compliments" | 0.00 (-0.60) | Irrelevant; entries lack sufficient detail; |
| 4/7/2009–5/21/2009 | 2.10, comprised of various entries corresponding solely to proposed expert Reisman | 0.00 (-2.10) | Expert excluded as irrelevant and prejudicial well before third trial; any reference to expert's testimony later excluded in subsequent motion in limine; vague and duplicative entries |
| 8/5/2009–10/27/2009 | 0.30, comprised of various entries corresponding solely to proposed expert Reisman | 0.00 (-0.30) | Expert excluded as irrelevant and prejudicial well before third trial; any reference to expert's testimony later excluded in subsequent motion in limine; vague and duplicative entries |

| Date | Entry | Revision | Justification |
|------|-------|----------|---------------|
| 8/16/2009–12/20/2009 | 5.30, comprised of 38 entries of correspondence between clients and Ms. Pollick | 0.30 (-5.00) | Duplicative of proximate entries; administrative tasks not billable as attorney time; excessive and redundant billing; irrelevant entries |
| 8/16/2009–12/20/2009 | 3.20, comprised of 29 entries scheduling mediation and communicating with mediator's office | 0.50 (-2.70) | Entries lack sufficient detail substantiating propriety of time billed and relevance to fee petition; duplicative of proximate entries; excessive/redundant billing |
| 11/3/2009 | 1.00, comprised of "Travel to and from Scranton for oral argument" | 0.67 (-0.33) | Inflated travel time. |
| **2009 TOTAL** | **116.00** | **-80.38 (69%)** | **TOTAL AFTER DEDUCTIONS: 35.62** |

That Ms. Pollick's fee petition ought to be denied in full undoubtedly follows from the vast revisionism her entries must undergo. In fact, having reviewed the first three years of Ms. Pollick's own submitted entries, my determination is that the line-by-line adjustments are so numerous, that I am essentially forced to rewrite her entire fee bill on her own behalf. The defects and revisions are so widespread, duplicative, and unreasonable that the entire fee bill must be discarded.

As the above exercise demonstrates, line-by-line reduction of Ms. Pollick's fee bill is futile. For each of the three first years, I am forced to deduct at least 50% and as high as 70% of her submitted entries. Further, because Ms. Pollick's entries are so vague, my line-by-line review of her fee bill necessitates exceptional creativity and imagination on my part. I too often am required to read between the lines and guess about what tasks might correspond to each of Ms. Pollick's entries. What claims and which defendants each entry pertains to requires similar guesswork. I cannot in good conscious assess fees based upon a petition as flawed as this one.

To that end, a glaring defect with Ms. Pollick's fee bill is that the vast majority of the entries lack sufficient detail substantiating the propriety of the time billed and its relevance to the instant prevailing claim. In other words, the fee bill's entries are exceptionally vague and ambiguous. This is fatal to the fee bill's acceptance because, on the face of the fee bill alone, I am unable to discern (1) whether the time is properly billable on this motion and (2) whether the extent of the time billed for each entry is reasonable.

Tellingly, I orated a few examples for Ms. Pollick during the show cause hearing. For instance, what did she discuss on the May 2007 phone call? What was

the purpose of a "correspondence" from another date?[139] As it turned out, Ms. Pollick had no memory whatsoever of what transpired during those meetings or correspondences, including what procedural device or which defendant(s) or claim(s) to which those communications pertained. Ms. Pollick explained that she could perhaps review her case file and her personal notes and provide some explanation, but that is precisely the problem with her fee petition: the relevance and propriety of a given entry must be clear from its face; that is all that the Court has at its disposal.

The same is true of Ms. Pollick's submissions for various "legal assistants" and "legal researchers." Undoubtedly, the entries pertaining to "legal assistants" are almost wholly duplicative of Ms. Pollick's entries or entries pertaining to other "legal assistants." Those administrative entries encompass time not properly billable to the client, redundancy in effort, and overstaffing beyond reasonable

---

[139] Before admitting that she had no idea what transpired during those meetings, Ms. Pollick contended that she could not reveal to me the subject of those conversations. That argument is inadequate. First of all, as Judge Caputo emphasized in *Souryavong*, Ms. Pollick need not reveal privileged communications to state with appropriate specificity acceptable billing entries. Tellingly, Judge Caputo illustrated a number of alternative phrasings that would have sufficed in his *Souryavong* decision. For example, a single entry that states "TC with client regarding documents opposing motion to dismiss" is entirely more appropriate than fifty mysterious ones that state "TC with client regarding issue." Second, Ms. Pollick herself has put the propriety of those communications at issue after the litigation had already concluded by submitting them as billable time on this fee petition. To that end, some general purpose of the conversation ought to be revealed to ensure those entries were not improperly submitted. Ms. Pollick contended at oral argument that *Dee, Carey, Carroll, Lohman,* and *Souryavong* have nothing to do with the instant fee petition. I disagree—they have everything to do with Ms. Pollick's being on notice of her impermissible and excessive fee petitions.

proportions. Neither does Ms. Pollick submit any supporting documentation as to the identity, qualifications, and expertise of her "legal researcher." I do not know who this individual is, whether, for instance, they are a paid employee or an intern. Neither can I discern what issues they researched or what claims and defendants to which that purported research pertained. For those reasons, I would deny Ms. Pollick's entries for "legal assistants" and "legal researchers" in full as well.

Complete denial of a fee petition is appropriate where the submitted fees are so excessive, unreasonable, or vague that line-by-line revisions would be fruitless. I note that this opinion follows within a week's time of Judge Mannion's in *Clemens v. New York Central Mutual Fire Ins. Co.* In *Clemens*, Judge Mannion denied *in toto* a fee petition in a civil rights case seeking one million dollars in fees and costs for a $125,000.00 judgment.[140] As the Third Circuit has stated, "If, after following the proper procedures, the Court remains convinced that [the] hourly rate and hours billed are outrageously excessive, it retains the discretion to award whatever fee it deems appropriate, including no fee at all."[141] "When an award of fees is permissible, denial is an appropriate sanction for requesting an award that is

---

[140]   2017 WL 3724236, at *2 (M.D. Pa. Aug. 29, 2017).

[141]   *M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 (3d Cir. 2010) (Hardiman, J.).

not merely excessive, but so exorbitant as to constitute an abuse of the process of the court asked to make the award."[142]

For instance, when a plaintiff's counsel submits a claim that is "so intolerably inflated," district courts may "depart[ ] from the usual practice" and "react vigorously to prevent such abuse."[143] Several courts of appeals have recognized that district courts may deny a fee request *in toto* if the amount requested is so excessive that it "shocks the conscience" of the court.[144] Moreover, courts have found the requisite special circumstances in cases where a party exhibited "obstructive behavior" at trial;[145] and where a party "burdened" defense counsel and "disregarded the court's instruction."[146] Denial of fees *in toto* was also appropriate when "[f]rom the very beginning of this case, Plaintiffs' counsel conducted this litigation in a manner calculated to increase the opposing party's

---

[142] *Budget Rent-A-Car Sys., Inc. v. Consol. Equity LLC*, 428 F.3d 717, 718 (7th Cir. 2005) (Posner, J.).

[143] *Brown v. Stackler*, 612 F.2d 1057, 1059 (7th Cir. 1980).

[144] *See Brown*, 612 F.2d at 1057; *Lewis v. Kendrick*, 944 F.2d 949, 957-58 (1st Cir.1991); *Fair Hous. Council of Greater Washington v. Landow*, 999 F.2d 92, 97 (4th Cir. 1993). Our Court of Appeals has noted that although it has applied this rule in prior cases, it recently explained that it has not had occasionally to formally adopt it. *See M.G. v. E. Reg'l High Sch. Dist.*, 386 F. App'x 186, 189 n.2 (3d Cir. 2010) (Hardiman, J.) (citing *Hall v. Borough of Roselle,* 747 F.2d 838 (3d Cir.1984)).

[145] *Wiercinski v. Mangia 57, Inc.*, 125 F. Supp. 3d 445, 447 (E.D.N.Y. 2015) ("If there ever was a plaintiff who deserved no attorney's fees at all that plaintiff is Adam Wiercinski.") (citing *Farrar v. Hobby*, 506 U.S. 103, 120 (1992) ("Just as a Pyrrhic victor would be denied costs under Rule 54(d), so too should it be denied fees under § 1988.").

[146] *Mahoney v. Kesery*, 778 F. Supp. 1002, 1004 (E.D. Wis. 1991).

costs—and, at the same time, to increase the bases for Plaintiff's own fee

petition."[147]

This is not the first time in recent memory that an outlandish fee petition of

Ms. Pollick's was denied in full. In fact, the Third Circuit in *Carroll v. Clifford*

*Township* denied fees altogether in a case litigated by Ms. Pollick before Judge

Mannion. Ms. Pollick's client in *Carroll* rejected an offer of judgment of

$10,000.00 and ultimately recovered $1 in nominal damages at trial.[148] Ms. Pollick

then requested over $111,000.00 in fees and costs.[149] Judge Mannion held that

Plaintiff's counsel was entitled to no fees pursuant to § 1988(b), reasoning that the

ultimate award was "a minute fraction" of that which was sought.[150] The

Honorable Thomas I. Vanaskie, writing for the unanimous panel in *Carroll*,

affirmed, as the district court "applied the correct standard" and "did not abuse its

discretion."[151]

In another chapter of the remarkably thick body of case law birthed from

Ms. Pollick's own matters, our Court of Appeals has also held that rejected

settlement demands "can be relevant when comparing what a plaintiff 'requested'

---

[147]  *Countryman Nevada, LLC v. DOE*, 193 F. Supp. 3d 1174, 1182 (D. Or. 2016).

[148]  625 F. App'x 43, 46 (3d Cir. 2015) (Vanaskie, J.).

[149]  No. 3:12-cv-00553, ECF No. 78 at    11.

[150]  *Id.*

[151]  *Id.*

to what the plaintiff was ultimately 'awarded.'"[152] Ms. Pollick's client in *Lohman* turned down a $75,000.00 offer of judgment and was eventually awarded just over $12,000.00 at trial based on a single claim.[153] The Third Circuit affirmed Judge Caputo's reducing to $30,000.00 Plaintiff counsel's nearly $115,000.00 fee request.[154] The unanimous panel cited directly from Judge Caputo's discussion, noting that Ms. Pollick "may have achieved a much greater level of success if [she] had settled."[155] As the court explained, Ms. Pollick's results "do not justify an award of over sixty-thousand dollars ($60,000.00) as calculated by the lodestar, and surely does not justify the requested fees of over one-hundred thousand dollars ($100,000.00)."[156]

Moreover, "[t]he concept of having reduced fees awarded based on partial success is not a new one," the *Lohman* court wrote.[157] To the contrary, it is a "well settled" facet of this Circuit's fee-setting jurisprudence. In fact, it was a logical extension from prior reductions for "limited success."[158] From the Third Circuit's perspective, "the thought that settlement discussions will not now occur because an

---

[152] *Lohman v. Duryea Borough*, 574 F.3d 163, 167 (3d Cir. 2009).

[153] *Id.* at 165.

[154] *Id.* at 164.

[155] *Id.* at 166.

[156] *Id.*

[157] *Id.* at 168.

[158] *Id.* at 167

attorney could be penalized if he or she achieves less than was demanded makes little sense."[159] In fact, such a rule is calculated to "encourage reasonable and realistic settlement negotiations."[160] As discussed more fully in the subsequent section, however, Ms. Pollick's fee submission makes no effort to separate time spent on successful claims from unsuccessful ones. Neither does it acknowledge that her "success" must be measured against her rejecting a $150,000.00 offer of settlement.[161]

Taking all of these factors into consideration, it is my determination that line-by-line reduction is inadvisable and that Ms. Pollick's fee petition should be denied in full. Her entries are vague and ambiguous and lack the requisite detail to substantiate the propriety of her billed time. Her entries fail to establish their relevance and do not make clear which defendants or claims that they correspond to. They are also exceptionally duplicative of one another. Moreover, no effort was made to filter out non-billable or non-recoverable time, and no adjustment was made in light of Ms. Pollick's limited nuisance-value recovery after turning down a settlement many multiples greater. Instead, Ms. Pollick presented the Court with a

---

[159] *Id.* at 168.

[160] *Id.*

[161] Ms. Pollick contests the existence of this settlement offer. Mr. Freund testified that he made the verbal offer after speaking with Judge Kane during an earthquake break in the first trial. Several witnesses recall this occurrence, it follows the pattern and paper trail of opposing counsel's written offers, and Ms. Pollick's examination of Mr. Freund did nothing to smudge his credibility. Accordingly, to the extent that a factual finding is even required, I find that Ms. Pollick did in fact reject a $150,000.00 settlement offer earlier in this litigation.

blatantly improper fee bill, after having been admonished for such conduct in the past, and told the Court that it was its job to sort things out. Because my view is that her fee bill is entirely improper, it will be denied in full. I now turn to the imposition of sanctions.

### D.    IMPOSITION OF SANCTIONS

**1.    The Court Will Sanction Ms. Pollick Pursuant To Federal Rule Of Civil Procedure 11 And 28 U.S.C. § 1927 Because Her Fee Petition Seeks In Excess Of $727,000.00 For Portions Of The Litigation That Were Necessitated By Her Own Vexatious Conduct, As Against Defendants That She Did Not Prevail, For Time Previously Held Unrecoverable By Judges Of This Court And The Third Circuit, All Relative To A Nuisance-Value Settlement Of $25,000.00.**

That Ms. Pollick's excessive fee petition merits sanctioning follows *ipso facto* from its above-noted improprieties and the barefaced repetition of this very type of unreasonable, unsupported, and vexatious conduct before this Court. Nevertheless, I will now discuss imposition of sanctions under both Rule 11 and § 1927. Federal Rule of Civil Procedure 11 provides in pertinent part that:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are

warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

. . .

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation.

. . .

(3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

The Supreme Court and the Third Circuit have developed a consistent jurisprudence as it pertains to Rule 11 Sanctions. "It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."[162] "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose."[163] "[T]he rule emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no

---

[162] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[163] *Id.* (internal quotations omitted).

longer tenable."[164] "The word 'sanctions' in the caption . . . stresses a deterrent orientation in dealing with improper pleadings, motions or other papers."[165] "[T]he intended goal of Rule 11 is accountability."[166]

"The standard for testing conduct under Rule 11 is reasonableness under the circumstances."[167] "The rule imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"[168] "It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation."[169] "These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently."[170]

"To comply with these requirements, counsel must conduct 'a reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'"[171] "This standard is more stringent than the original

---

[164] *Ellis v. Beemiller, Inc.*, 287 F.R.D. 326, 347 (W.D. Pa. 2012) (internal citations and quotations omitted).

[165] *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

[166] *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (Weis, J.).

[167] *Teamsters Local Union No. 430 v. Cement Exp., Inc.*, 841 F.2d 66, 68 (3d Cir. 1988).

[168] *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986) (Weis, J.).

[169] *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987) (Weis, J.).

[170] *Id.*

[171] *Mary Ann Pensiero, Inc.*, 847 F.2d at 94 (quoting *Lieb*, 788 F.2d at 157).

good faith formula and thus it is expected that a greater range of circumstances will trigger its violation."[172] "In applying this standard, the court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted."[173] Rule 11 Sanctions are appropriate, for instance, "when the claimant exhibits a deliberate indifference to obvious facts."[174]

"Rule 11 sanctions should not be viewed as a general fee shifting device. By and large federal courts are bound by the 'American Rule,' requiring parties to shoulder their own legal expenses."[175] "Litigants misuse the Rule when sanctions are sought against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment. Restated, Rule 11 sanctions awarding counsel fees do not automatically or usually follow an adverse judgment or ruling. Substantially more is required."[176] "Rule 11 is instead reserved for only exceptional circumstances."[177] "Similarly, just as mere failure to prevail does not trigger a

---

[172] *Lieb*, 788 F.2d at 157.

[173] *CTC Imports & Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991) (Nygaard, J.).

[174] *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998).

[175] *Gaiardo*, 835 F.2d at 483 (citing Alyeska Pipeline Serv. Co. v. Wilderness Society, 421 U.S. 240 (1975)).

[176] *Gaiardo*, 835 F.2d at 483.

[177] *Morristown Daily Record, Inc. v. Graphic Commc'ns Union, Local 8N*, 832 F.2d 31, 32 (3d Cir. 1987) (Weis, J.).

sanction award, neither does advocating new or novel legal theories."[178] Courts

should not apply Rule 11 "to inhibit imaginative legal or factual approaches to

applicable law or to unduly harness good faith calls for reconsideration of settled

doctrine."[179] "The Rule seeks to strike a balance between the need to curtail abuse

of the legal system and the need to encourage creativity and vitality in the law."[180]

Above all else, "[g]reater attention by the district courts to pleading and

motion abuses and the imposition of sanctions when appropriate, should

discourage dilatory or abusive tactics and help to streamline the litigation process

by lessening frivolous claims or defenses."[181] The Third Circuit and the Advisory

Committee Notes to Rule 11 have set forth certain factors useful in determining

whether an attorney's conduct has violated Rule 11. Those factors include:

> [H]ow much time for investigation was available to the signer;
> whether he had to rely on a client for information as to the facts
> underlying the pleading, motion, or other paper; whether the
> pleading, motion, or other paper was based on a plausible view of
> the law; [ ] whether he depended on forwarding counsel or another
> member of the bar; [and] whether [one] is in a position to know or
> acquire the relevant factual details.[182]

---

[178]  *Gaiardo*, 835 F.2d at 483.

[179]  *Id.*

[180]  *Id.* at 483–84.

[181]  Fed. R. Civ. P. 11 Advisory Committee Notes to 1983 Amendment.

[182]  Fed. R. Civ. P. 11 Advisory Committee Notes to 1983 Amendment; *CTC Imports & Exports*, 951 F.2d at 578.

Once a violation of Rule 11 has been established, a district court "has discretion to tailor sanctions to the particular facts of the case."[183] "The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities . . . , etc."[184] "The basic principle governing the choice of sanctions is that the *least severe* sanctions *adequate* to serve the purpose should be imposed."[185] Thus, the appropriate sanction must still achieve Rule 11's central purpose: "deterrence of frivolous lawsuits."[186] To that end, federal courts in the Third Circuit's venire and the Advisory Committee Notes to Rule 11 have also set forth certain factors useful in determining the appropriate sanction for a violation of Rule 11. They include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in

---

[183] *Doering*, 857 F.2d at 194.

[184] Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment ("Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty.").

[185] *Doering*, 857 F.2d at 194.

[186] *See id.* at 193.

the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.[187]

A similar decision framework, which seeks to punish and deter vexatious behavior, is set forth at Title 28 United States Code, Section 1927. That section provides as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

To that end, the trial court "has broad discretion in managing litigation before it," and "the principal purpose of imposing sanctions under 28 U.S.C. § 1927 is the deterrence of intentional and unnecessary delay in the proceedings."[188] "As is evident from the text of the statute, § 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[189] "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known

---

[187] Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment. *See also In re Cendant Corp. Derivative Action Litig.*, 96 F.Supp.2d 403, 407–08 (D.N.J. 2000). Because it will impose monetary sanctions, the Court must also consider the *Doering* factors as set forth at 857 F.2d at 195–97. Those factors are considered throughout this Memorandum.

[188] *Zuk v. Eastern Pennsylvania Psychiatric Institute*, 103 F.3d 294, 297 (3d Cir.1996).

[189] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (citing *Williams v. Giant Eagle Markets, Inc.* 883 F.2d 1184, 1191 (3rd Cir.1989)).

this, and that the motive for filing the suit was for an improper purpose such as harassment."[190] Because § 1927 addresses the impact conduct has on the proceedings, sanctions that are imposed under § 1927 should correspond to the costs and expenses resulting from the vexatious conduct.[191]

That sanctions are warranted for prosecuting this fee petition in a vexatious manner is the only conclusion supported by the facts. Indeed, this litigation has lingered in excess of an additional year since Ms. Pollick accepted the Defendant's Rule 68 offer of judgment. That interim time was expended on briefing extensions and the work of defense counsel and this Court in parsing out Ms. Pollick's 44-page, thousand-entry fee petition. I regret that this matter has persisted so long, but our system rather prefers justice delayed over justice denied, and whatever delay Ms. Pollick has suffered was entirely a setback of her own making. Although I was taken aback by Ms. Pollick's initial demands, I deemed it appropriate to review her entire fee petition, her history of fee petition cases, and the procedural history of this matter before a show cause hearing was scheduled. As the transcript reveals, an important purpose of that hearing was to question Ms. Pollick on the record in light of her flaunting the above-referenced authorities.

---

[190] *In re Prudential*, 278 F.3d at 188 (quoting *Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed. of Teachers, AFL–CIO,* 829 F.2d 1370, 1375 (6th Cir.1987)).

[191] *See Martin v. Brown,* 63 F.3d 1252, 1264 (3d Cir.1995).

It is uncontroverted that "counsel multiplies the proceedings vexatiously when [her] conduct requires the court to spend a considerable amount of time dealing with the consequences of that conduct, including in an evidentiary hearing regarding sanctions."[192] That is precisely the case here. Despite giving every benefit of the doubt to Ms. Pollick, including allowing her an opportunity to file an amended fee petition, to allow her an opportunity to explain herself at a show cause hearing, and first attempting to conduct a line-by-line review of her entries, Ms. Pollick has chosen to reject those opportunities and sap the resources of this Court and taxpayer dollars by placing the burden on the Court to mine through her thousands of cumbersome entries to discover those gems that could properly be billed. Indeed, she took this path knowing that I intended to sanction her if she did not submit an amended petition.

Truth be told, it is difficult to envision hypothetical conduct more vexatious in federal court than that exhibited here by Ms. Pollick. Her conduct has given rise to a malignant chapter of this already-prolonged litigation. Not only that, but it has also drained the resources of opposing counsel, John E. Freund, III, Esquire, whose submissions have been exceedingly helpful to this Court and who has exhibited nothing but the highest levels of professionalism in response to Ms. Pollick's unstable behavior.

---

[192] *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1266 (11th Cir. 2007).

That Ms. Pollick's conduct exhibited the level of "bad faith" required to impose sanctions under § 1927 is also evident. In fact, the disputed fee petition was submitted exactly five months after another member of this Court reprimanded her and cut all vague and cryptic entries from a proposed petition, less than a year after the Third Circuit affirmed a complete denial of her fees as disproportionate to her recovery, and within a few years following a similar affirmance of a district court's order that cut her fees as disproportionate in light of rejected settlement offers. Neither should it surprise Ms. Pollick that substantial authority existed on the impropriety of billing for time that her own misconduct necessitated. This is plainly a situation where counsel knew what she was about to do was wrong, but she went ahead and did it anyway. Therefore, this case and conduct fall squarely within the crosshairs of § 1927 and Rule 11.

The argument for sanctions under Rule 11 is equally as strong as that under § 1927. In one sentence, I would summarize that Ms. Pollick is being sanctioned under Rule 11 because she plopped a dog's-breakfast fee petition on this Court's doorsteps, and she knew what she was trying to extort did not rightly belong to her. How did she know her representations to the Court were unsupported by law or fact? Of course, the record indicates the Ms. Pollick is responsible for generating her own fee bill jurisprudence, in which this Court and the Third Circuit has

repeatedly shrunk her fee bills or denied them all together, warning on several occasions that her requests were imaginative and unsupported by her performance.

As referenced earlier, perhaps the most troubling facet of this petition is that Ms. Pollick submitted it approximately five months having been sternly reprimanded by Judge Caputo in a distinct action before this Court for submission of entries that were vague, duplicative, and impermissible. Several of the entries in this case corresponded word-for-word with those stricken by Judge Caputo. I now delve more deeply into the details of the warnings that Ms. Pollick previously disregarded. For example, Judge Caputo included an entire paragraph in *Souryavong* devoted to "Cryptic and Vague Entries." After citing a body of case law from the Third Circuit, Judge Caputo explains as follows:

> Here, Plaintiffs' bare-boned entries are too vague for a court to fairly determine if the hours claimed are reasonable for the work performed. Plaintiffs could have added a general description of the work performed without going into great detail and divulging attorney-client privilege so that this Court could fairly determine whether the corresponding number of hours billed were reasonable. For example, instead of submitting pages and pages of time entries stating "TC from Nelson regarding case," or "Legal research for case," Plaintiffs could have submitted entries such as "TC from Nelson regarding MTD," or "Legal research for FLSA claim." Neither of these entries reveal attorney-client privilege, yet would be specific enough for me "to determine if the hours claimed are unreasonable for the work performed."[193]

---

[193] *Souryavong*, 159 F. Supp. 3d at 533. That *Souryavong* is presently on appeal does not alter my decision in any way. To the contrary, I simply feature *Souryavong* because it is one of the most recent of several prominent decisions concerning denial or ratchetting back of Ms.

Judge Caputo also cited to several prior cases in which he had "deducted time from Attorney Pollick's submitted entries based on lack specificity," included his decision in *Dee v. Borough of Dunmore*.[194] He also quoted from *Wales v. Jack M. Berry, Inc.*[195] Judge Caputo described that case—indeed quoted from it— as follows "sustaining any objection to an entry referring to a conference, a telephone call, or the like . . . if the entry does not identify the subject of the communication, because while it is not expected that discussions or other messages should be particularized in detail, it is easy enough to add a couple of words regarding the subject matter of the communication in order to show that it is compensable—if it is."[196]

Despite that lengthy explanation by Judge Caputo, several of Ms. Pollick's preliminary entries in this case could be taken verbatim from her petition in *Souryavong*, save for the names of each client:

> 5/7/2007: "TC from Patti regarding situation"
>
> 5/10/2007: "TC with Patty regarding issues"
>
> 5/11/2007: "TC from Patty regarding situation"
>
> 5/14/2007: "TC from Patty regarding situation"
>
> 8/10/2007: "TC with Patti discussing case"

---

Pollick's fee petitions. So too does it appear that the appellate disputes in *Souryavong* center on merits issues on not on Judge Caputo's discretionary fee determinations.

[194] *See id.*

[195] *See id.* (citing 192 F.Supp.2d 1313, 1318–19 (M.D.Fla.2001)).

[196] *See id.*

I asked Ms. Pollick whether she had read Judge Caputo's decision (and a number of other decisions pertaining to these type of cryptic and vague entries, including *Lohman*, *Dee*, *Carroll*, and *Carey*), and she admitted that she had. So, I asked why she submitted these improper entries yet again, and quite strikingly, she answered that she could she submit any entries, regardless of their propriety and that it was opposing counsel's and the Court's job to challenge and trim those entries back. If they failed to do so, Ms. Pollick apparently believed that she would be entitled to a $727,000.00 windfall.

That is not how either civil rights cases or Rule 11 works. Civil rights cases are not sweepstakes tickets, and Rule 11 requires that all motions submitted for the Court's consideration be grounded in good law and truthful facts, not pure imagination or wishful thinking. That Ms. Pollick submitted the instant petition without even revising her own entries and that she did so after having been warned and placed on notice several times by members of this Court or the Third Circuit of the impropriety of such conduct—and after other Rule 11 and sanctions motions had previously been brought against her—establishes that monetary sanctions are the minimum possible penalty necessary for deterring future misconduct by Ms. Pollick. Obviously, verbal warnings have no effect on Ms. Pollick's vexatious

behavior. I repeat: "Suffice it to say, [Ms. Pollick] is simply not getting the message."[197]

So too are sanctions warranted for Ms. Pollick seeking compensation for portions of this case that were necessitated by her own misconduct at trial and for time spent prosecuting her case against defendants and for claims upon which she did not prevail. "Case law is clear that where an attorney, for an improper purpose, disregards applicable law and pushes a claim in the absence of supporting facts, bad faith is evident and sanctions are appropriate."[198] The rule set forth in *Shott* and followed by every circuit court to have addressed the issue is crystal clear: counsel may not recover for additional time necessitated by her own misconduct. The justification for this rule, which seeks to prevent perverse incentives, is obvious: should courts rule to the contrary, counsel would be misbehaving and causing mistrials all along, with the cockeyed hope that an eventual fee bill might include time for three trials instead of one.

The same is true of time spent on unsuccessful claims or as to defendants against whom the Plaintiff did not prevail. In *Rode v. Dellarciprete*, a decision from 1990, the Third Circuit made clear that such hours are properly excluded

---

[197] *Keister v. PPL Corp.*, 318 F.R.D. 247, 254 (M.D. Pa. 2015) (imposing $116,000.00 sanction for Rule 11 violation), *aff'd*, *Keister v. PPL Corp.*, 677 F. App'x 63 (3d Cir. 2017) (Fisher, J.).

[198] *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 454 (D.N.J. 2005).

when they are "sufficiently separable from the rest of the litigation."[199] The panel in *Rode* upheld the exclusion of such time where "[t]he hours worked on those motions did not further successful claims; rather, the time was spent solely on unsuccessful claims."[200] Those are precisely the circumstances that Ms. Pollick faces here, and her flaunting these authorities establishes the improper purposes of her outlandish fee petition. That she failed to conduct an inquiry into the facts and the law as required by Rule 11 is apparent. Not only did she neglect as much, but she willfully ignored these authorities with which she had been confronted numerous times in the past.

At bottom, the remaining claim is a unique hostile educational environment claim brought against a lone teacher. As I reiterated at numerous pretrial junctures while disposing of the eleven motions in limine occasioned by Ms. Pollick's prior trial conduct, "[t]he sole remaining claim, creation of a hostile educational environment based upon sex, is an exceedingly narrow one."[201] As such, in excluding numerous pieces of evidence, I emphasized that the elements of the present claim were neither furthered or countered by the conduct of the other Defendants or the disposition of the other claims—most of which related to a distinct First Amendment retaliation against the school district and certain of its

---

[199]  892 F.2d 1177, 1186 (3d Cir. 1990).

[200]  *Id.*

[201]  *Young v. Smith*, No. 3:07-CV-00854, 2016 WL 3522965, at *1 (M.D. Pa. June 28, 2016).

officials. Those claims where wholly unrelated, and they therefore well surpass the "sufficiently separable" test.

Quite plainly, I would also point out that the Third Circuit has previously affirmed a grant of summary judgment, a grant of a new trial, and my instructions at trial involving all other defendants and claims. In the same decision, the Third Circuit reversed my grant of summary judgment as to the only remaining defendant and the only remaining claim. Those decided claims and prevailing Defendants must have been "sufficiently separable," as the Third Circuit's decisional pattern confirms that the remaining claim's survival was not legally or factually dispositive as to any of those previously decided or vice versa. Otherwise, a final trial on each of those claims and as against all of the Defendants would have been necessary—not just this exceptionally limited one.

The same is true of the bounty of administrative tasks for which Ms. Pollick has billed, her billing of time associated with excluded experts and stricken evidence, as well as her inflated and duplicative costs associated with researchers and other staff. These entries are all inadmissible under established law, and these entries have all been deemed inadmissible in prior fee decisions involving Ms. Pollick. It was Ms. Pollick, not defense counsel or the Court, who chose to look the other way.

One might respond that outright denial of her petition is a sufficient penalty and that I should give Ms. Pollick a stern warning before sending her on her way. I could not disagree more, and I suspect that other current and former judges of this Court who have presided over cases involving Ms. Pollick (some of whom presently sit on our Court of Appeals) would hold a similar perspective. Disapproving warnings have been tried before. So too have outright denials of her fee petitions. The outcome was a disappointing one: perhaps the most improper of all of Ms. Pollick's fee petitions has ended up before me after the remedial efforts of my colleagues in *Carroll* and *Souryavong*. I am thus assured that monetary sanctions are proper, and it was Ms. Pollick who, through her own disrespectful and vexatious conduct, confirmed as much.

Contrary to Ms. Pollick's protestations, sanctions beyond outright denial of fees are available to redress excessive fee petitions, especially where the offending counsel was previously put on notice of the unreasonableness of her conduct. In *TMF Tool Co. v. Muller*, for example, the Seventh Circuit confirmed that "conduct in submitting the fee petition" could fall "independently within the scope of the provisions of Rule 11."[202] Indeed, Rule 11 sanctions in such circumstances are appropriate so long as the district court makes "some conclusive finding that the

---

[202]  913 F.2d 1185, 1192 (7th Cir. 1990).

fees requested *are* in fact excessive to a point which warrants the imposition of sanctions."[203]

Accordingly, with all of those considerations in mind, I will impose $25,000.00 in monetary sanctions under both § 1927 and Rule 11. Because those sanctions stem from the same violative conduct, I will set them to run concurrently, for a total penalty of $25,000.00. I select that number because it is a reasonable approximation of the billable time and costs that a defense firm would expend to challenge Ms. Pollick's fee petition and to prepare and appear for the show cause hearing, beyond those costs that reasonably would be incurred on a standard fee motion, together with the value of the time that the Court and its staff have devoted to this portion of the litigation.[204] The $25,000.00 sanction will be paid to the Clerk of Court.[205]

---

[203] *See id.*

[204] *See, e.g., Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996) (affirming $25,000 sanction under Rule 11 where "the person who signed the pleadings should have been aware that they were frivolous"); *MHC Inv. Co. v. Racom Corp.*, 323 F.3d 620, 623 (8th Cir. 2003) (affirming *sua sponte* imposition of $25,000 sanction under Rule 11 where counsel "violated Rule 11 by pursuing frivolous defenses and claims with the purpose of delaying [resolution]"); *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 856 (E.D. Tex. 2017) (imposing $25,000 sanction under rule 11 where counsel's argument was "divorced from the specification and claim language, ignored the file history, contravened [prevailing] law, relied heavily on extrinsic evidence to the exclusion of the intrinsic evidence, and asked the Court to adopt a construction that simply did not make any sense").

[205] I have taken into account that Ms. Pollick is a sole practitioner and that consideration does not alter my determination in any way. As I explained in *Keister*, a decision affirmed by the Third Circuit, sole practitioner status, as described in *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191 (3d Cir. 1988), "cannot be wielded by sole practitioners as immunity against Rule 11 sanctions *ad infinitum.*" *Keister v. PPL Corp.*, 318 F.R.D. 247, 272

2.   **Ms. Pollick's Objections Regarding Notice And The** ***Pensiero*** **Supervisory Rule Are Meritless On These Facts, Are Unsupported By Prevailing Third Circuit Law, And Are Therefore Overruled.**

When given the opportunity to raise additional points of argument in supplemental briefing, Ms. Pollick submitted a stream-of-consciousness response comprised of approximately 15 distinct arguments. Because most of those arguments relate to simple lodestar issues and have already been discussed in the prior sections, I focus on two procedural objections. The first is Ms. Pollick's contention that fee petitions in civil rights actions can never be the subject of Rule 11 sanctions because they necessarily are filed after the entry of judgment. The second argument is that Ms. Pollick lacked sufficient notice as to the reasons that motivated my decisions to impose sanctions. Neither argument is availing on the facts of this case.

---

(M.D. Pa. 2015). In fact, *Keister* and *Young* suggest that sole practitioners may lack partners because other lawyers are uncomfortable building professional associations with the offending lawyer. As the Third Circuit explained in its affirmance, distinguishing *Doering*:

> This Court has held that monetary sanctions are meant to serve as a deterrent and are inappropriate if they are so great that they are punitive. Given Russo's history of sanctions for similar conduct and the court's previous "leniency because of his status as a sole practitioner," the District Court concluded that Russo's "alleged financial circumstances simply do not outweigh the need for adequate deterrence in this case." On appeal, Russo reasserts the same bare statement he made to the District Court—namely, that he is a sole practitioner. We do not find that the awards amount to an abuse of discretion, especially where Russo failed to present evidence of actual inability to pay or that the sanctions would cause him to suffer undue hardship.

*Keister v. PPL Corp.*, 677 F. App'x 63, 69 (3d Cir. 2017) (Fisher, J.). The same reasoning prevails here.

Ms. Pollick contends that sanctions based on a vexatious fee petition are never proper, as judgment will often have already been entered in such cases. That argument not only leads to the apparently absurd result that federal judges lack the power to redress vexatious fee petitions, but so too does it misperceive the Third Circuit's *Pensiero* rule and its non-application to sanctions levied pursuant to § 1927.

First, Ms. Pollick's argument conflates the difference between entry of judgment on the merits and subsequent disposition of collateral matters, such as fee petitions, sanctions, or contempt hearings. By way of illustration, a key premise underlying the Third Circuit's decision in *Pensiero* was that district courts retained jurisdiction "even after an appellate affirmance on the merits, to award attorney's fees under Rule 11 and other statutory fee provisions."[206] This was true because "a Rule 11 motion is 'uniquely separable' and collateral from the decision on the merits."[207]

In fact, the Third Circuit in *Pensiero* heavily relied upon the Supreme Court's decision in *White v. New Hampshire Dep't of Employment Sec.*, as just quoted, which decision makes clear that consideration of a post-judgment fees or sanctions motion is reserved to the sound discretion of the district court and is

---

[206] *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 98 (3d Cir. 1988).

[207] *Id.* (quoting *White v. New Hampshire Dep't of Employment Sec.*, 455 U.S. 445, 452 (1982)).

procedurally defunct only if it "unfairly surprises or prejudices the affected party."[208] The United States Court of Appeals for the Fourth Circuit, interpreting *White*, observed that "[i]n the absence of an applicable local rule in the district court, the only time limitation arises out of those equitable considerations that a district judge may weigh in his discretion."[209] The Third Circuit's decision in *Pensiero* also placed significant emphasis on the Fourth Circuit's decision in *Hicks*.

Just as importantly, concerns over piecemeal review that animate the *Pensiero* rule dissipate entirely where, as here, the underlying action is resolved by way of a settlement before sanctions are imposed. In such cases, pre-settlement rulings unrelated to sanctions are unappealable, because "[s]imply stated, a case is moot when the issues presented are no longer 'live.'"[210] Thus, no threat of piecemeal review exists: either the post-settlement fee ruling will be appealed or it won't—nothing more.

The leading case on point is *In re Schaefer Salt Recovery, Inc.*, an opus written by the Honorable Maryanne Trump Barry confirming that the *Pensiero* rule, which encourages the filing of sanctions motions prior to the entry of final judgment, is inapplicable to sanctions under § 1927 and nevertheless is not violated

---

[208]   455 U.S. at 454.

[209]   *Hicks v. S. Maryland Health Sys. Agency*, 805 F.2d 1165, 1167 (4th Cir. 1986).

[210]   *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

in the absence of piecemeal appeals.[211] Joining its sister circuits, the panel in

*Schaefer Salt* explained, "We, too, conclude that, to the extent the supervisory rule

remains viable, it does not apply where sanctions are sought under § 1927."[212]

Thus, not only did the panel make clear that the *Pensiero* rule did not apply to

sanctions under § 1927, but it also called that supervisory rule's continued

existence into question.

   This was the case, Judge Barry wrote, because the supervisory rule "was

justified to eliminate piecemeal appeals" and therefore only applied "where

[sanctions] motions arise out of conduct that occurred prior to the final

judgment."[213] In other words, where, as here, sanctionable conduct occurs after the

entry of final judgment and with no threat of piecemeal review, it would be absurd

for the supervisory rule to shield that counsel's improprieties from retribution.

   The Third Circuit again took this exact stance in *Schering Corp. v. Vitarine*

*Pharmaceuticals, Inc.*[214] A preliminary question in *Schering* was "whether the

district court had jurisdiction to impose Rule 11 sanctions after the plaintiffs had

voluntarily dismissed the action."[215] "We hold the district court had jurisdiction to

entertain and decide the Rule 11 motion after defendants suffered a voluntary

---

[211]  542 F.3d 90 (3d Cir. 2008).

[212]  *Id.* at 102.

[213]  *Id.* at 97.

[214]  889 F.2d 490 (1989) (Cowen, J.).

[215]  *Id.* at 494.

dismissal."[216] To hold otherwise would "emasculate Rule 11," the court reasoned.[217]

In reaching that conclusion, the panel noted that "the majority of circuit courts that have examined the issue" were in agreement.[218] A key consideration for the Third Circuit in *Schering* was that voluntary dismissals removed all but collateral issues from the district court's jurisdiction, thereby eliminating the risk of piecemeal merits and collateral appeals.[219] It wrote as follows: "Nonetheless, a district court, after entry of a final judgment and filing of a notice of appeal, retains the power to adjudicate collateral matters such as applications for counsel fees, *West v. Keve,* 721 F.2d 91, 95 n. 5 (3d Cir.1983), and motions for sanctions under Rule 11, *Mary Ann Pensiero, Inc. v. Lingle,* 847 F.2d 90, 98 (3d Cir.1988)."[220]

When Judge Barry later discussed *Schering* decision in her *Schaefer Salt* opinion, she again emphasized that because such cases presented no risk of piecemeal appeals, the imposition of post-judgment sanctions did not run afoul of the *Pensiero* rule:

> In *Schering,* we did not even mention the supervisory rule and the prudential reasons underlying that rule, much less did we find that sanctions were barred even though the motion for sanctions was filed

---

[216] *Id.* at 496.

[217] *Id.*

[218] *Id.* at 494.

[219] *See id.* at 494–95.

[220] *Id.* at 495.

almost one and one-half months after the filing of the notice of dismissal. Presumably we did not find the supervisory rule worthy of mention because where there is a voluntary dismissal, there is no danger of piecemeal appeals and no future conduct to deter, the predominant justifications for the rule.[221]

So too are the following decisions in accordance: *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119 (3d Cir. 2009) (where parties settled underlying class action, only district court's sanctions decision was appealable, and panel therefore saw "no basis to remand"); *Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.*, 947 F.2d 49 (3d Cir. 1991) (review of district court's rulings post-settlement requires "an exception to the general mootness rule" because resolution of appeal would "have no direct, practical effect on the parties"). Plaintiff's scattershot briefing fails to explain the inapplicability of these authorities. Rather, despite my citing them at oral argument and in docketed Orders, they appear in her papers with disappointing infrequency, if at all.

The decision by our Court of Appeals in *Simmerman v. Corino* does not contradict this established line of authority.[222] *Simmerman* is as much a case about avoiding piecemeal appeals as it is about a *sua sponte* sanctions decision. In fact, the sanctions order at issue in *Simmerman* was entered *after* the underlying grant of

---

[221]  542 F.3d at 89.

[222]  27 F.3d 58 (3d Cir. 1994).

summary judgment had already been appealed.[223] The Third Circuit therefore was forced to enter two piecemeal decisions within six months of one another in *Simmerman*: one affirming the district court's summary judgment decision in December 1993 and a second in June 1994 evaluating the propriety of its entry of sanctions.[224] In the *Simmerman's* court's own words, the *Pensiero* rule is "aimed at eliminating piecemeal review."[225] Thus, because of the "the undesirability of separate appeals concerning merits and fee questions," the sanctions in *Simmerman* were vacated.[226]

*Simmerman* was decided on an additional ground not applicable here. There, the court recognized that "[a]t the time that the court decided the motions for summary judgment and dismissal, it had before it the identical information that it relied upon three months later in imposing the sanctions. Nothing was to be gained by delay."[227] That could not be farther from the truth here. The propriety of Ms. Pollick's fee petition was not evident to the Court (or defense counsel) prior to my entering judgment under Federal Rule of Civil Procedure 68 pursuant to the parties' settlement agreement—of course, her fee petition did not even exist at that time. As Judge Barry reiterated in *Schaefer Salt*, cases like *Pensiero* and

---

[223] *See id.* at 60–61.

[224] *Id.* at 60–61.

[225] *Id.* at 63.

[226] *Id.*

[227] *Id.*

*Simmerman* only bar sanctions that "arise out of conduct that occurred *prior to the final judgment*."[228] Otherwise, post-judgment conduct such as excessive fee petitions, contemptuous conduct, or willful breaches of settlement agreements would always be shielded.[229]

So too do the law and the facts belie Ms. Pollick's notice argument. The normative thread that runs through the Third Circuit's notice case law centers on a worthy objective: it "(1) must be reasonably calculated to inform recipients of the availability of a hearing, and (2) must offer recipients the opportunity to prepare adequately for that hearing."[230]

For example, in a decision captioned *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, the Third Circuit upheld a district court's imposition of monetary sanctions under § 1927 where counsel received written notice that

---

[228]  542 F.3d at 97.

[229]  Certain assumptions critical to its holding may call *Simmerman* into question. For one, the panel in that case noted that "*sua sponte* imposition of sanctions cannot serve the intent of Rule 11." I find it difficult to square that observation with the clear text of Rule 11's most recent amendment, which expressly provides at subpart (3), entitled "On the Court's Initiative," that "[o]n its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Moreover, the court acknowledged in a footnote that one defendant actually had filed a Rule 11 motion prior to the entry of judgment. *Id.* at 61 n.3 ("Defendant Dr. Anne Burgess filed a motion for fees and Rule 11 sanctions on August 14, 1992, two months prior to the court's dispositive ruling."). It also acknowledged that other defendants submitted a fee petition pursuant to 42 U.S.C. § 1988. *Id.* at 61. Thus, it is further unclear that the reasoning contained in *Simmerman* would survive the Third Circuit's "same conduct" notice holdings in *Schaefer Salt*, *Prudential*, and *Keister*, to which I now turn.

[230]  *Mayhew v. Cohen*, 604 F. Supp. 850, 856 (E.D. Pa. 1984) (citing *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 13 (1978)).

sanctions were sought "for unreasonably and vexatiously multiplying the proceedings in this matter, and seeking payment . . . of the excess costs, expenses and attorneys' fees reasonably incurred."[231] In fact, the Third Circuit in *Prudential* reasoned that "all parties were given ample notice of what behavior was in dispute," because "the questions posed at oral argument afforded to the parties an inkling of the Court's concerns about what behavior might be objectionable," and "each party was able to listen at oral argument to the concerns voiced by the other."[232] "Surely," the court concluded, "each side was on particularized notice of what behavior and actions were at issue."[233] As was the case here, counsel in *Prudential* "were also given at least four opportunities to be heard," including formal and letter briefing, oral argument and rebuttal, and supplemental briefing following the argument.[234]

More recently, in *Keister v. PPL Corp.*, the Honorable D. Michael Fisher, writing for a Third Circuit panel that included the Honorable Thomas I. Vanaskie and the Honorable Cheryl Ann Krause, expressly rejected for a second time the argument that imposition of sanctions under either of two provisions for "the same conduct" prejudices the respondent where an initial scheduling order identifies that

---

[231] 278 F.3d 175, 191 (3d Cir. 2002).

[232] *Id.*

[233] *Id.*

[234] *Id.*

conduct and lists only one of the two provisions.[235] In particular, the court in

*Keister* rejected an attorney's argument that sanctions in the form of could be

imposed under Federal Rule of Civil Procedure 54, even though an initial

scheduling order only mentioned Federal Rule of Civil Procedure 11.[236] "First," the

panel explained, "the same conduct gave rise to the Rule 11 and Rule 54

motions."[237] "Second," it continued, "during the Rule 11 hearing, Russo

affirmatively opted to respond to the Rule 54 motion."[238] By extension, then, the

offending attorney "cannot plausibly argue that he was prejudiced by his own

consent to address the Rule 54 motion during the Rule 11 hearing."[239]

　　　The Third Circuit's reasoning in *Keister* applies with equal force here. In my

view, not even the slightest ray of light could cut between the arguments presented

by the attorney in *Keister* then and those that Ms. Pollick offers now. The Rule 11

and § 1927 sanctions undoubtedly stem "from the same conduct"—that is an

uncontested admission at this point. Even more, however, not only did Ms. Pollick

consent and respond to my § 1927 questions at the sanctions hearing, but she also

was afforded the opportunity to submit supplemental briefing, which she also

consented to and duly submitted.

---

[235]  677 F. App'x at 69.

[236]  *Id.* at 68–69.

[237]  *Id.* at 69.

[238]  *Id.*

[239]  *Id.*

Apart from all of the legal considerations, reasonable notice is also a know-it-when-you-see-it concept.[240] In light of the foregoing case law, I will therefore recount the notices and opportunities to be heard that were afforded to Ms. Pollick. On June 20, 2017, this Court scheduled a July 13, 2017 evidentiary hearing and oral argument on counsel for Plaintiff's Motion for Fees, and this Court's related *sua sponte* determination that sanctions might result following the Court's further review of this matter.[241] The Order provided Plaintiff's counsel with "particularized notice," because it included "the particular factors that [s]he must address if [s]he is to avoid sanctions."[242] Specifically, that Order stated as follows at Paragraph 4:

> In addition, at the time of the hearing, both parties should be prepared to address whether counsel for Plaintiff's fee request in excess of $727,000.00, which seeks fees and costs for portions of the litigation that were necessitated by her own vexatious conduct, as against defendants that she ultimately did not prevail, for certain expenses previously held unrecoverable by judges of this Court, and relative to a total settlement of $25,000.00, violates Federal Rule of Civil Procedure 11.

---

[240] *See, e.g.*, *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990) (contrasting scenario where counsel was not put on notice "until he received the court's order . . . actually imposing sanctions" with that in which counsel "prior to sanctioning" is provided "notice and some occasion to respond").

[241] ECF No. 652. As discussed briefly in a prior section, I note that Ms. Pollick has strenuously objected to my holding of that hearing, which would appear to cut against the logic of her due process argument.

[242] *Jones v. Pittsburgh Nat. Corp.*, 899 F.2d 1350, 1357 (3d Cir. 1990).

In addition to citing Rule 11, that Order made clear sanctions may be imposed for Plaintiff counsel's "vexatious conduct," which conduct is the cornerstone of any sanctions determination under 28 U.S.C. § 1927.

During the oral argument and evidentiary hearing, I heard approximately a half-day of testimony and argument. At several junctures, Ms. Pollick consented to my questions about the imposition of sanctions pursuant to § 1927 for vexatious conduct. In fact, counsel for Plaintiff contested on numerous occasions throughout her oral argument that her conduct was vexatious as contemplated by § 1927. And at one point, we even read through the text of the pertinent sanction provisions for the record.

Moreover, contrary to Ms. Pollick's misrepresentations at oral argument, my June 20, 2017 Order was not the first occasion upon which the issue of sanctions for Plaintiff counsel's meritless and vexatious fee petition was raised. Indeed, despite not filing a separate Rule 11 motion, defense counsel highlighted the propriety of sanctions in its responsive papers to Plaintiff counsel's fee petition, devoting a full section of its argument to the following contention:

> Plaintiff's demand for fees for the second trial, where Defendant Smith was not a party, should be the basis for sanctions, a denial of fees, or an overall reduction in fees.[243]

---

[243] ECF No. 642 at 21–22.

That section specifically states that "[u]nder Fed. R. Civ. P. 11(b), by presenting a paper to this Honorable Court, Plaintiff's counsel certifies that, to the best of her knowledge, the legal contentions are warranted under existing law."[244] In fact, counsel for the Defendant in its opposition brief to Plaintiff counsel's fee petition quoted directly from my 2016 decision imposing Rule 11 sanctions, in which I stated that such sanctions may be appropriate to deter "vexatious conduct" on the part of an attorney who "is simply not getting the message."[245]

Moreover, in a July 10, 2017 Order granting a motion to quash one of Plaintiff counsel's subpoenas, I again reiterated that the issues to be considered at the July 13 show cause hearing included the propriety of sanctions as to counsel for Plaintiff's vexatious conduct and excessive fee petition, using the same language excerpted above.[246]

Again, during the course of that hearing, I ensured for what was then at least the third time that Plaintiff's counsel was aware that the sanctionable conduct at issue was her submitting a fee petition that sought costs and fees for portions of the litigation that were necessitated by her own vexatious conduct, as against defendants from whom she ultimately did not prevail, for certain expenses

---

[244] *Id.* at 21.

[245] ECF No. 642 at 20 (citing *Keister v. PPL Corp.*, — F. Supp. 3d. —, No. 4:13-CV-00118, 2016 WL 688031, at *2 (M.D. Pa. Feb. 19, 2016), *aff'd*, 677 F. App'x 63 (3d Cir. 2017)).

[246] ECF No. 660 ¶ 4.

previously held unrecoverable by judges of this Court, and relative to a total settlement of $25,000.00. I also reviewed specific entries with Ms. Pollick and compared them against prior ones rejected by my colleagues in earlier cases. Ms. Pollick was also provided with the opportunity to submit an amended fee petition, which she rejected.

On the record, I confirmed that Ms. Pollick understood that Rule 11 applies if an attorney submits papers "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" or if an attorney's "claims, defenses, and other legal contentions" are not "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." I also confirmed that Ms. Pollick understood that Section 1927 "requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct."[247] We read that provision together, and she answered my questions affirmatively. With all of that background information preserved on the record, I thereafter also confirmed that Plaintiff's counsel understood that penalties could be imposed pursuant to Rule 11 or § 1927 and could include monetary sanctions. Ms. Pollick answered those questions in the affirmative as well.

---

[247] *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008) (Barry, J.).

Nevertheless, out of an abundance of caution, I allowed Ms. Pollick a subsequent opportunity to be heard. Thus, in a subsequent Scheduling Order issued that same date, I again recited for the record that "the sanctions issue presently under consideration is whether counsel for Plaintiff should be sanctioned for submission of a fee request in excess of $727,000.00, which seeks fees and costs for portions of the litigation that were necessitated by her own vexatious conduct, as against defendants from whom she ultimately did not prevail, for certain expenses previously held unrecoverable by judges of this Court, and relative to a total settlement of $25,000.00."[248] I also wrote that "[t]he Court may sanction Plaintiff's counsel under either (or both) of Federal Rule of Civil Procedure 11 or 28 U.S.C. § 1927," and that "[t]he penalties imposed may include monetary sanctions."[249] In addition, I stated, "Moreover, counsel for Plaintiff is afforded an additional opportunity to respond and be heard on the sanctions issue presently under consideration."[250] Ms. Pollick did in fact consent to responding by filing a supplemental brief two weeks later.[251]

In sum, Ms. Pollick was fully aware of the conduct that formed the basis of my sanctions hearing. Undoubtedly, she should have known in her heart-of-hearts

---

[248]   ECF No. 664 at 6–7.

[249]   *Id.* at 7.

[250]   *Id.* at 7.

[251]   ECF No. 669.

that this conduct was improper from the moment she clicked the "submit" button. Because she consented to the hearing and supplemental briefing, because she received ample notice and opportunity to respond, and because sanctions under Rule 11 and § 1927 stem "from the same conduct," this objection is also overruled.

## IV.   CONCLUSION

This litigation has persisted for all of the wrong reasons, and it ends today. "A request for attorney's fees should not result in a second major litigation."[252] Unfortunately, a second major litigation has transpired here, spawned by the vexatious conduct of Cynthia L. Pollick, Esquire. Although holding a hearing and reviewing the pertinent documentation has taken substantial time, my hope is that this time was well spent and that none of my colleagues will deal with such an improper fee petition in the future. This is the result that justice commands—the result that public faith in our judicial system requires.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge


---

[252] *Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 539 (3d Cir. 1997).